Case 1:26-cv-02557   Document 1-11   Filed 03/27/26   Page 1 of 36

<p style="text-align:center"><span style="color:red">**EMERGENCY REPAIRS REQUESTED**</span></p>

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX: HOUSING PART H
-------------------------------------------------------------------X

1915 BILLINGSLEY TENANT ASSOCIATION
ENILDA MOREL, LETICIA ORTIZ, CARMEN
MARTINEZ, MIRIAM RODRIGUEZ, MELIDA
OLAVARRIA, BERTHA ORTIZ, PEDRO RODRIGUEZ,
NARCISO TEJADA, FRANCISCO RODRIGUEZ
MARIA BARE, MONICA CHRISTIAN, SOBEIDA
RODRIGUEZ, JOSE TORIBIO-GOMEZ, ROSA DIAZ,
YUDERCA MORA, AMPARO SUERO, JOHNY JIMENEZ,
RAZA CHAUDHRY, YURITZA RIVERA, EVANGELISTA
SUAREZ, DINA ACOSTA, LILIANA PAREDES,
JACQUELINE TOMLINSON, ROYER ALEXANDER,
ANA RODRIGUEZ, FELIX CADENA, RENEE THOMAS,
PRISCILLA RIVERA

Petitioner-Tenants,

- against -

DAVID KLEINER, YONAH ROTH, 1915 REALTY LLC,
MOISHE "MO" DOE

Respondent-Owners,

NEW YORK CITY DEPARTMENT OF BUILDINGS,
NEW YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT,
NEW YORK CITY DEPARTMENT OF HEALTH
AND MENTAL HYGIENE

Respondents.
-------------------------------------------------------------------X

Index No. H.P. _____

**<u>VERIFIED PETITION</u>**

<u>Subject Premises</u>:
1915 Billingsley Terrace
Bronx, NY  10453

Petitioners alleges as follows through the undersigned counsel, Zoe Kheyman, of counsel to Adriene Holder, of The Legal Aid Society:

*** Preliminary Statement***

1. There was a structural collapse at the subject premises on December 11, 2023. Since that time, multiple violations were placed by various city agencies, including a partial vacate order from The New York City Department of Buildings ("DOB").

## EMERGENCY REPAIRS REQUESTED

2.      Petitioners now seek an order to correct for the conditions in their apartments and the common areas of the subject building including, but not limited to, lifting the building-wide partial vacate order, restoring cooking gas to the entire building, containing the construction dust in the common areas, and addressing the overall lack of janitorial services in the building.

3.      Petitioners also seek the implementation of integrative pest control in the building to address the infestations of cockroaches, rats, and mice in common areas and inside individual apartments.

4.      Upon information and belief, the basis of which is the New York City Department of Housing Preservation and Development ("HPD") public database records, there are 47 units at the subject premises.

5.      There are currently over 133 HPD violations at the subject premises, about 58 of which are classified as "Class C" or "immediately hazardous" to the tenants in the building.

6.      These violations are present in both common areas and individual Petitioners' apartments.

7.      In addition to these violations, the building also contains 5 DOB violations and 17 OATH-ECB violations.

8.      These violations demonstrate that Respondent-owners have neglected the building and created a dangerous living environment that affects each Petitioner and their families.

9.      Petitioners further seek an order finding that Respondent-Owners have harassed them, enjoining Respondent-owners from continuing the harassment, and imposing civil penalties and/or punitive damages for Respondent-owners' illegal conduct.

**EMERGENCY REPAIRS REQUESTED**

*Parties*

10.     The individual Petitioners set forth herein are tenants and/or lawful occupants of the subject premises 1915 Billingsley Terrace, Bronx, New York, 10453, and are entitled to enforce the Housing Maintenance Code, and other Administrative Codes including the DOB Construction Code.

11.     The term "resides" as used herein shall include, without limitation, those who reside by tenancy, co-tenancy, sublease, and/or license of the tenant.

12.     Upon information and belief, the basis of which is conversations with Petitioners and an examination of leases, the subject premises is leased to Petitioners pursuant to the Rent Stabilization Laws.

13.     Upon information and belief, the basis of which is publicly available data on https://whoownswhat.justfix.org/en/, there are 42 buildings in Respondent-owners' portfolio with a total of 1,984 units. Respondents are seasoned landlords who knew or should have known that the unsafe exterior wall conditions, left unabated, could lead to catastrophic consequences for their residents.

14.     Upon information and belief, Respondent 1915 REALTY LLC is the "Owner" of the subject premises, as they are listed as the owner and managing agent of the subject building on the Multiple Dwelling Registration Statement filed with Respondent DHPD pursuant to Section 27-2115(h)(1) of the Housing Maintenance Code.  See NYC Admin. Code § 27-2004(a)(45); MDL § 4(44).

15.     Upon information and belief, Respondent YONAH ROTH is identified as the "Head Officer" of the subject building on the most recent Multiple Dwelling Registration Statement filed with Respondent DHPD and is directly in control of the day-to-day operations at the subject

**EMERGENCY REPAIRS REQUESTED**

building. As such, Respondent ROTH is an "owner" of the subject building for purposes of Section 27-2115(h)(1) of the Housing Maintenance Code. See NYC Admin. Code § 27-2004(a)(45); MDL § 4(44); DHPD v. Livingston, 169 Misc. 2d 660 (App. Term 2d Dep't 1996).

16. Upon information and belief, Respondent DAVID KLEINER is listed as the "manager" of Respondent 1915 REALTY LLC, pursuant to various mortgage documents dated July 30, 2021, between Respondent 1915 REALTY LLC and JPMORGAN CHASE BANK, N.A. As such, Respondent DAVID KLEINER is also an "owner" of the subject building pursuant to NYC Admin. Code § 27-2004(a)(45). See Exhibit A.

17. Upon information and belief, Respondent MOISHE "MO" DOE is the "managing agent" of Respondent 1915 REALTY LLC. This individual has self-identified as the new managing agent of the subject building. On or about January 3, 2024, staff from NYC Councilwoman Pierina Sanchez's office and staff from The Legal Aid Society toured the premises, where they encountered this Respondent at the subject premises. This person introduced himself as "Mo" and claimed he was the managing agent for the building. He declined to provide a last name and is thus referred to as "DOE" in this filing. A legal search for his last name and address for service was not successful, but this individual stated they were in direct control of the repairs at the subject premises. As such, this individual is an "owner" of the subject building for purposes of Section 27-2115(h)(1) of the Housing Maintenance Code. See NYC Admin. Code § 27-2004(a)(45); MDL § 4(44).

18. Upon information and belief, the basis of which is conversations with the Petitioners, tenants at the subject building identified this Respondent MOISHE "MO" DOE as the main managing agent and tenants refer to this individual as "Mo" or "Moishe." Upon information and belief, the basis of which is speaking to residents, this Respondent is at the subject premises almost every day, directing repairs. This individual has refused to provide his last name to tenants, telling

**EMERGENCY REPAIRS REQUESTED**

the tenants that they can instead refer to him as "Mo the Manager." As such, this individual is an "owner" of the subject building for purposes of Section 27-2115(h)(1) of the Housing Maintenance Code. See NYC Admin. Code § 27-2004(a)(45); MDL § 4(44).

19. Upon information and belief, the basis of which is conversations with the Petitioners, this Respondent MOISHE "MO" DOE has a direct phone line which was distributed to tenants at the subject premises. Petitioner-tenants report that they can reach MOISHE "MO" DOE for repairs and other building related issues (a legal people search for this phone number was not successful). Tenants report that MOISHE "MO" DOE answers this phone line. Since MOISHE "MO" DOE distributed his number as a resource for repair and occupancy related issues, he is thus an "owner" of the subject building for purposes of Section 27-2115(h)(1) of the Housing Maintenance Code. See NYC Admin. Code § 27-2004(a)(45); MDL § 4(44).

20. Upon information and belief, the basis of which is conversations with the Petitioners, this Respondent MOISHE "MO" DOE is frequently seen touring apartments with named Respondent David Kleiner. Respondent MOISHE "MO" DOE personally coordinated tenant re-occupancy and gave out new keys to tenants when the DOB vacate order was partially lifted. In addition, this individual has personally offered renewal leases to the tenants in the building. As such, he is an "owner" of the subject building for purposes of Section 27-2115(h)(1) of the Housing Maintenance Code. See NYC Admin. Code § 27-2004(a)(45); MDL § 4(44).

21. Further, Respondent MOISHE "MO" DOE has outwardly represented that he is direct in control of the day-to-day operations at the subject building. MOISHE "MO" DOE represented that he had personally hired a new superintendent in the building, introduced the new superintendent, and he was thereafter observed giving instructions to the new superintendent. MOISHE "MO" DOE was observed inside apartments at the subject building, inspecting damage

Case 1:26-cv-02557    Document 1-11    Filed 03/27/26    Page 6 of 36

**EMERGENCY REPAIRS REQUESTED**

and personally cleaning affected areas. This Respondent explained that some apartments were under construction, that he had timelines for repair, that he was frustrated with the permitting process, and that he was working on elevator service restoration. As such, he is an "owner" of the subject building for purposes of Section 27-2115(h)(1) of the Housing Maintenance Code. See NYC Admin. Code § 27-2004(a)(45); MDL § 4(44).

22.    Upon information and belief, the basis of which is conversations with elected officials and reporters, Respondent MOISHE "MO" DOE has publicly held himself out to be the managing agent of the building. As such, he is an "owner" of the subject building for purposes of Section 27-2115(h)(1) of the Housing Maintenance Code. See NYC Admin. Code § 27-2004(a)(45); MDL § 4(44).

23.    Respondents DOB and DHPD are New York City departments charged with, *inter alia*, enforcement of the Multiple Dwelling Law, the New York City Housing Maintenance Code, Building Code, Electrical Code, Health Code, Fire Code, and/or Air Pollution Control Code, and/or other housing standards, and therefore are proper parties. See NYC Civ. Ct. Act § 110(d).

### *Relevant Facts*

24.    On or about December 11, 2023, an entire corner of the subject premises collapsed.

25.    Respondent DOB issued a full vacate order that same day, under Order No. X320/2023. The order was thereafter partially rescinded on January 2, 2024, and 21 units were cleared for re-occupancy. On January 31, 2023, an additional 17 units were cleared for re-occupancy. Exhibit B – DOB Vacate Order and Subsequent DOB Vacate Order Rescissions.

26.    Although the vacate order was partially lifted, these units were not ready for re-occupancy. Tenants returned to their apartments to find that there was no heat or hot water, no

**EMERGENCY REPAIRS REQUESTED**

cooking gas, destroyed walls and floors, destroyed furniture and possessions, and large amounts of dust and debris.

27.     Petitioners who were restored to the premises after the Vacate Order was partially lifted were required to sign forms agreeing that the conditions in their apartments were fully repaired. These forms took tenants by surprise, the contents of the forms were blatantly false, and the requirement to sign the form was made under duress. Tenants were told they would not be receiving the keys to their apartments unless they signed off.

28.     Tenants were not given the opportunity to review these stipulations with family members or counsel. While some tenants vehemently disagreed that the repairs were completed, others did not even know the conditions of the apartments prior to signing off because they had not been in the building since the collapse.

29.     Despite the contents of these forms, the conditions of the individual apartments and the building common areas were deplorable, as evidenced by the numerous violations placed by city agencies.

30.     Although the collapse took the residents by surprise, DOB Summons No. 039101139K and Violation No. VIO23-03270 issued on December 11, 2023, by DOB reveals that this collapse was foreseeable. Summons No. 039101139K was placed for "failure to submit required evaluation Local Law 11." This summons references a violation from five (5) years ago, on May 18, 2018, for "failure to evaluate façade." See Exhibit C.

31.     When DOB placed this violation on May 18, 2018, inspectors determined that Respondent 1915 REALTY LLC had committed a violation of Section 28-302.4 of the NYC Construction Codes described as "FAILURE TO SUBMIT ACCEPTABLE 8TH ROUND REPORT OF CRITICAL EXAMINATION DOCUMENTING CONDITION OF EXTERIOR

Case 1:26-cv-02557    Document 1-11    Filed 03/27/26    Page 8 of 36

<span style="color:red">**EMERGENCY REPAIRS REQUESTED**</span>

WALLS AND APPURTENANCES REQUIRED BY 28-302.4" and issued the following remedy: "SUBMIT REQUIRED TECHNICAL REPORT". See Exhibit D - DOB Summons No. 37011074R.

32.     Local Law 11 imposes upon owners of buildings with more than six stories a requirement to submit to periodic inspections of exterior walls and appurtenances and then remediate as necessary based on the findings or be subject to civil penalties.

33.     Article 302 of the New York City Construction Codes, titled "Maintenance of Exterior Walls," requires that buildings greater than six stories shall comply with certain enhanced maintenance requirements. See NYC Admin. Code §28-302.1-§28-302.2.

34.     These sections mandate periodic inspections "under the direct supervision of a registered design professional with appropriate qualifications as prescribed by the department," "shall include a complete review of the most recently prepared report and an inspection" and "shall be conducted in accordance with rules promulgated by the commissioner."

35.     This registered design professional is further required to submit a written report to the commissioner, at least once during each five-year report filing cycle. These critical examination results are marked as either safe, unsafe, or safe with a repair and maintenance program. The report serves to document the condition of the exterior walls and appurtenances thereof and includes a record of all significant deterioration, unsafe conditions and movement observed as well as a statement concerning the watertightness of the exterior surfaces. Such report must be signed and sealed by such registered design professional. See NYC Admin. Code § 28-302.4.

36.     To protect New Yorkers, "[u]pon the notification to the department of an unsafe condition, the owner, the owner's agent or the person in charge shall immediately commence such repairs, reinforcements or other measures as may be required to secure public safety and to make

**EMERGENCY REPAIRS REQUESTED**

the building's exterior walls or appurtenances thereof conform to the provisions of this code", and "[a]ll unsafe conditions shall be corrected within 90 days of filing the critical examination report." NYC Admin. Code § 28-302.5(1).

37.     This law also mandates that "[t]he owner shall engage a registered design professional to reinspect the premises and file an amended report within two weeks after the repairs have been completed certifying that the unsafe conditions of the building have been corrected." NYC Admin. Code § 28-302.5(2).

38.     On February 1, 2020, more than a year after DOB found that Respondents had failed to submit a technical report, a report on the status of the exterior walls was finally prepared by Professional Engineer Richard Koenigsberg, of Koenigsberg Engineering. See Exhibit E - relevant documents from DOB Filing # TR6-812259-8A-l1.

39.     This report included the following determinations:

(a) "The following six (6) "Unsafe" conditions were identified: cracked brick, vertical cracks at sills and water tables, loose and damaged mortar, a slightly bowed section of parapet and cracks at the parapet interior."

(b) "During KEPC's inspections of the Building, we did not observe any maintenance that had been done on the Building since the previous report was filed", referring to the 7th cycle report filed in 2014, which had identified—in 2014—the following six unsafe conditions then existing at the subject building: "cracked brick, vertical cracks at sills and water tables, loose and damaged mortar, a slightly bowed section of parapet and cracks at the parapet interior."

Case 1:26-cv-02557   Document 1-11   Filed 03/27/26   Page 10 of 36

**EMERGENCY REPAIRS REQUESTED**

(c) "[T]he Building is considered administratively "Unsafe" since the 7th Cycle conditions have not been corrected and since there is significant masonry damage throughout the facade."

(d) "All of the conditions that were identified as "Unsafe" require repairs. The condition that was identified as "SWARMP" requires work that must be completed before the 9th Cycle Report can be filed."

See Exhibit E - DOB Filing # TR6-812259-8A-l1

40. In June 2020, the engineer on behalf of Respondent 1915 REALTY LLC applied to Respondent DOB for an extension, based on the allegation that "repair work… is scheduled to begin soon and expected to be completed within 9 months to 18 months", which was granted to the extent of extending the time for compliance to November 16, 2020. See Exhibit F - Filing# F1-812259-8A-001 Seeking Extension of Time

41. However, the owners did not comply with this deadline.

42. On March 25, 2021, a 9th cycle technical report was filed with Respondent DOB, again prepared by Professional Engineer Richard Koenigsberg, of Koenigsberg Engineering, PC, following an inspection of the subject building on March 23, 2021, which again concludes that "[t]he Building is considered "Unsafe" since the 7th Cycle conditions have not been corrected and since there is significant masonry damage throughout the facade." This report also acknowledges that no maintenance had been performed on the Building since the previous report was filed. See Exhibit G - DOB Filing # TR6-912259-9A-I1.

43. Then, on December 7, 2021, Respondent YONAH ROTH on behalf of Respondent 1915 REALTY LLC filed a letter in support of application filed with Respondent DOB seeking a *second* extension in their time for compliance with Local Law 11, wherein Respondent ROTH

**EMERGENCY REPAIRS REQUESTED**

"anticipate[s] the project to be completed within 12 months", which was granted by Respondent DOB to the extent of extending the deadline for compliance to March 9, 2022. See Exhibit H – Letter for Extension from Respondent Yonah Roth

44.     Nearly two years later, on December 11, 2023, an entire corner of the building collapsed onto the sidewalk below, even though Respondent-Owners were on notice since at least 2014 that the façade of the subject building was "unsafe" pursuant to Local Law 11.

45.     Upon information and belief, there are now numerous violations of housing standards existing in the subject apartment and in common areas leading to the subject apartment.

46.     Upon information and belief, the basis of which is conversations with Respondent-owner, MOISHE "MO" DOE there are no plans to rebuild the collapsed section of the building. Petitioners herein who occupied the collapsed section seek to return to their homes.

47.     Upon information and belief, Petitioners have not sought the relief requested herein.


*Legal Authority*

48.     Section 110 of the New York City Civil Court Act authorizes "proceedings for the… imposition of… violation[s]" of "state and local laws for the establishment and maintenance of housing standards, including, but not limited to, the multiple dwelling law and the housing maintenance code, building code and health code of the administrative code of the city of New York," §110(a)(7), "[p]roceedings for the issuance of injunctions and restraining orders or other orders for the enforcement of housing standards under such laws," §110(a)(4), and "[a]ctions for the imposition and collection of civil penalties for the violation of such laws". §110(a)(1). See also NYC Civ. Ct. Act §§ 203(k), (n), (o).

Case 1:26-cv-02557    Document 1-11    Filed 03/27/26    Page 12 of 36

**EMERGENCY REPAIRS REQUESTED**

49. Therein "the court may recommend or employ any remedy, program, procedure or sanction authorized by law for the enforcement of housing standards, if it believes they will be more effective to accomplish compliance or to protect and promote the public interest". NYC Civ. Ct. Act § 110(c). See also NYC Admin. Code § 27-2121.

50. For example, the Court may order agencies and departments of New York City and New York State to inspect a building. See NYC Civ. Ct. Act § 110(d); Schanzer v. Vendome, 7 Misc. 3d 1018(A) (Civ. Ct. N.Y. Cty. 2005). See also Garcia v. Adelfio, 12/23/91 N.Y.L.J. 23, col. 4 (App. Term 1st Dep't) (affirming Order issued by Hon. Klein, JHC, directing Department of Health to inspect subject premises for asbestos).

51. The Court should require The NYC DOHMH to inspect for lead paint in the subject building in the instant proceeding. The Court should presume there is lead dust in the subject building, given the age of the building, the existence of active lead violations, and a prior DHPD case for false lead certification. Lead paint can have a severe impact on minor children and pregnant residents in the building.

52. Pursuant to Section 27-2115(h)(1) of the Housing Maintenance Code:

> Should the department fail to issue a notice of violation upon the request of a lawful occupant… within thirty days of the date of such request, or if there is a notice of violation outstanding respecting the premises in which the lawful occupant… resides, … the lawful occupant or any group of lawful occupants, may individually or jointly apply to the housing part for an order directing the owner and the department to appear before the court. Such order shall be issued at the discretion of the court for good cause shown, and shall be served as the court may direct. If the court finds a condition constituting a violation exists, it shall direct the owner to correct the violation and, upon failure to do so within the time set for certifying the correction of such violation pursuant to subdivision (c) of this section, it shall impose a penalty in accordance with subdivision (a) of this section. Nothing in this section shall preclude any person from seeking relief pursuant to any other applicable provision of law.

Case 1:26-cv-02557    Document 1-11    Filed 03/27/26    Page 13 of 36

**EMERGENCY REPAIRS REQUESTED**

53.     It is now understood that the "notice provision is for DHPD's benefit and was waived by the Commissioner of DHPD on February 11, 1977, for all subsequent cases". <u>Various Tenants of 515 East 12th Street v. 515 East 12th Street, Inc.</u>, 128 Misc. 2d 235, 489 N.Y.S.2d 830 (Civ. Ct. N.Y. Cty. 1985).

54.     Rather, the "long-established practice of the court has been to request DHPD inspectors to visit the premises prior to the first court appearance; that inspection provides the court at an early opportunity with objective proof of whether 'a condition constituting a violation exists' in the premises, and after results in violations being placed on the building. If conditions or violations are proven to exist, whether by inspectors or by tenant testimony, the court may then order them corrected." <u>Chan v. 60 Eldridge Corp.</u>, 129 Misc. 2d 787, 494 N.Y.S.2d 284 (Civ. Ct. N.Y. Cty. 1985).

***As and For a First Cause of Action***

55.     Based on the facts set forth *supra*, Petitioners seek an Order from the Court finding the conditions in the subject premises and common areas of the subject building described herein and/or determined to be violations of housing standards by Respondents DHPD and DOB—including but not limited to the conditions underlying Vacate Order #X320/2023 issued by Respondent DOB on December 11, 2023—constitute violations of the Multiple Dwelling Law, the New York City Housing Maintenance Code, Building Code, Electrical Code, Health Code, Fire Code, and/or Air Pollution Control Code, or any other applicable housing standard, and designating a hazard class for each violation.

**EMERGENCY REPAIRS REQUESTED**

56.      Petitioner ENILDA MOREL in Apartment 63 alleges the following conditions in their unit: there is a vacate order. Petitioner seeks repairs so that the vacate order is rescinded and they can return to their home.

57.      Petitioner LETICIA ORTIZ in Apartment 11 alleges the following conditions in their unit: Bedroom heater is defective, kitchen ceiling leaks, kitchen walls are cracked, kitchen fridge is defective, bathroom ceiling leaks, bathtub/shower defective, toilet does not flush properly, inadequate water pressure in the bathroom, bathroom window is defective, mold in the bathroom, living room floors are warped, mold throughout apartment, roaches, mice, insufficient hot water throughout apartment, inadequate heat throughout apartment, electrical issues throughout apartment, building intercom defective, lack of cooking gas, rodents in common areas, roaches in common areas, roof leaks, building lobby ceiling defective.

58.      Petitioner CARMEN MARTINEZ in Apartment 12A alleges the following conditions in their unit: Floors throughout the apartment are defective, windows throughout the apartment are defective, walls and ceilings have cracks throughout the apartment, the apartment needs to be painted, lack of cooking gas, mold in the bathroom, kitchen floor is uneven, mice, roaches, insufficient hot water, insufficient heat, rats and roaches throughout building, building lacks janitorial services, frequent elevator outages.

59.      Petitioner MIRIAM RODRIGUEZ in Apartment 15 alleges the following conditions in their unit: All windows in the three bedrooms are defective, kitchen ceiling plaster is defective, kitchen sink faucets are defective, kitchen water pressure insufficient, kitchen window is defective, kitchen floor is defective, bathroom wall tiles are missing and broken, bathroom water pressure is insufficient, bathroom door is broken, living room floor is defective, living room window glass is

Case 1:26-cv-02557 Document 1-11 Filed 03/27/26 Page 15 of 36

**EMERGENCY REPAIRS REQUESTED**

broken, mold throughout, floor is uneven throughout, lack of hot water throughout, insufficient heat throughout, front doorframe is defective.

60. Petitioner MELIDA OLAVARRIA in Apartment 22 alleges the following conditions in their unit: Bedroom doors are broken, kitchen ceiling leaks, mold in kitchen ceiling, floors uneven/slanted throughout apartment, holes throughout apartment walls, wall paint peeling throughout apartment, lead paint in apartment, windows throughout apartment do not stay open, hot water faucet leaks steadily in the bathroom and kitchen, lack of cooking gas, insufficient hot water, inadequate heat throughout, mice, roaches, building elevator often out of service.

61. Petitioner BERTHA ORTIZ in Apartment 23 alleges the following conditions in their unit: there is a vacate order. Petitioner seeks unit repairs so that the vacate order is rescinded and they can return to their home.

62. Petitioner PEDRO RODRIGUEZ in Apartment 25 alleges the following conditions in their unit: Bedroom ceilings are falling in both bedrooms, radiator leaks bedroom, walls are cracked throughout the apartment, holes in bedroom walls, bedroom wall plaster is defective, bedroom windows are defective, exposed electrical wiring in both bedrooms and living room, wall paint is peeling throughout the apartment, bedroom outlets defective, bedroom light fixture is defective, defective bedroom light fixture, defective kitchen pipes, kitchen ceiling leaks, kitchen ceiling is falling, kitchen walls are cracked, kitchen windows are defective, kitchen light fixture is defective, exposed electrical wiring in the kitchen, kitchen cabinets are defective, missing wall tiles in the kitchen, bathroom ceiling is defective, bathroom walls are defective, bathtub is defective, toilet does not flush properly, defective bathroom window, defective bathroom door,  living room living room outlets defective, light fixture is defective, living room wall plaster is defective, mold throughout apartment, roaches and mice throughout apartment, lack of hot water throughout

FILED: BRONX CIVIL COURT - L&T 02/05/2024 08:58 AM INDEX NO. LT-306051-24/BX
NYSCEF DOC. NO. 1 RECEIVED NYSCEF: 02/05/2024

Case 1:26-cv-02557 Document 1-11 Filed 03/27/26 Page 16 of 36

**EMERGENCY REPAIRS REQUESTED**

apartment, inadequate heat throughout apartment, front door frame is defective, apartment front door lock is defective, building intercom is defective, the building public areas lack janitorial services.

63. Petitioner NARCISO TEJADA in Apartment 26 alleges the following conditions in their unit: lack of heat, lack of cooking gas, leak in living room, roaches, mice, and dirty common areas.

64. Petitioner FRANCISCO RODRIGUEZ in Apartment 31 alleges the following conditions in their unit: Bedroom floor is sloping, bedroom doorframe defective, bedroom walls are cracked, bedroom needs to be painted, bedroom outlets are defective, bedroom light fixture is defective, kitchen walls are cracked, kitchen sink faucet leaks, kitchen window is defective, kitchen outlet is defective, kitchen cabinets are defective, kitchen floor is uneven, bathroom toilet is loose, bathroom window is defective, bathroom outlets are defective, bathroom door is defective, bathroom door lock is defective, bathroom air vent/fan is defective, holes in the living room walls, living room window defective, living room outlets defective, living room walls are cracked, roaches, insufficient heat, apartment entrance door is broken, apartment needs to be painted, light fixtures in the building lobby are defective, building front door lock is defective, walls in common areas need to be painted, ceiling leak in building lobby, garbage in the basement, rats and mice throughout building, building elevator service is often defective.

65. Petitioner MARIA BARE in Apartment 32 alleges the following conditions in their unit: Stove is defective, bathroom ceiling leaks, bathroom walls are cracked, bathroom toilet is clogged, bathroom toilet defective, bathtub defective, living room walls are cracked, roaches throughout apartment, lack of cooking gas and dirty common areas.

**EMERGENCY REPAIRS REQUESTED**

66.     Petitioner MONICA CHRISTIAN in Apartment 35A alleges the following conditions in their unit: Bedroom window glass is broken, bedroom wall paint is peeling, defective plaster on bedroom walls, kitchen pipes leak, kitchen walls are cracked, kitchen drain clogged, stove is defective, kitchen cabinets are defective, kitchen wall tiles are defective, bathroom pipes leak, bathroom ceiling leaks, bathroom ceiling is falling, bathroom toilet is obstructed, bathtub drain is obstructed, bathroom window is defective, bathroom wall tiles are broken, bathroom door is broken, living room walls are cracked, living room windows are defective, living room radiator leaks, living room ceiling leaks, broken/missing smoke detector, mold throughout apartment, roaches throughout apartment, apartment needs to be painted, cracks in walls/ceiling throughout apartment, apartment entrance door is broken, apartment door is not self-closing, light fixtures defective throughout apartment, inadequate lighting in common area hallways and stairways, lack of janitorial services in the common areas of the building, common area lobby/hallways have defective paint, common area hallways have dust and construction material, common area hallways have garbage and debris, garbage pileup in the basement results in vermin infestation.

67.     Petitioner SOBEIDA RODRIGUEZ in Apartment 42 alleges the following conditions in their unit: Bedroom walls are cracked, bedroom window doesn't close completely, mold in the bathroom, bathroom showerhead leaks water, mice, roaches, floors uneven throughout apartment, insufficient heat throughout apartment, insufficient hot water throughout apartment, cracks throughout the floors going up to the walls, rats in building - in garbage disposal area and on the fire escapes, elevator is frequently out of order.

68.     Petitioner JOSE TORIBIO-GOMEZ in Apartment 44 alleges the following conditions in their unit: Holes in kitchen ceiling, kitchen floor tiles are lifting, holes around the kitchen sink on the floor, bathroom window is broken, mold on bathroom walls, broken bathtub

**EMERGENCY REPAIRS REQUESTED**

tiles, bedroom windows are broken, leak in bedroom ceiling, bedroom plaster is defective (bubbling), living room has broken windows, hallway has uneven floors, roaches, mice, heat is inadequate, no cooking gas, dirty common area conditions and poor air quality.

69.    Petitioner ROSA DIAZ in Apartment 45B alleges the following conditions in their unit: Bedroom walls are defective, floors are defective in the bedroom, the ceilings are defective in the bedrooms, windows are defective in the bedrooms, paint and/or plaster needed throughout the apartment, fridge is defective, floors are unlevel in the kitchen, pipes in the kitchen are leaking, concealed leak in the kitchen, leak in the bathroom ceiling, bathroom walls are cracked, toilet is obstructed, insufficient water pressure in the bathroom sink, the bathroom door is defective, floor tiles in the bathroom are defective, cracks in the floors of the living room, the living room floor is sloping, defective lights in the living room, lead paint on the walls, mold throughout the apartment, roaches, the floors throughout the apartment are sloping, lack of hot water, lack of cold water, lack of heat, the ceilings and walls throughout the apartment are defective.

70.    Petitioner YUDERCA MORA in Apartment 46 alleges the following conditions in their unit: Bedroom walls are cracked, all windows in the apartment are defective, all the ceilings in the apartment are cracked, kitchen walls are cracked, kitchen cabinets are defective under the sink, kitchen faucet is defective, bathroom faucet is defective, bathroom floor is defective, bathroom walls cracked, hallway closet door is defective, roaches, mold in the bathroom, lead in the walls, uneven floors in living room, sloping floors in the bedroom, and a lack of hot water.

71.    Petitioner AMPARO SUERO in Apartment 47 alleges the following conditions in their unit: Bedroom wall plaster defective, bedroom walls need to be painted, bedroom window is defective, living room wall plaster defective, living room walls need to be painted, kitchen floor tiles are uneven/defective, lack of cooking gas, kitchen floor tiles are broken, kitchen cabinets are

**EMERGENCY REPAIRS REQUESTED**

broken, kitchen outlets defective, dining room outlets are defective, rats in the basement, rats in the common areas, intercom defective, defective building elevator is unreliable.

72. Petitioner JOHNY JIMENEZ in Apartment 51 alleges the following conditions in their unit: Petitioner seeks to be returned to his unit; he has not received the keys for his apartment from Respondents.

73. Petitioner RAZA CHAUDHRY in Apartment 55B alleges the following conditions in their unit: Windows do not open or close throughout the entire apartment, bathroom ceiling leak, inadequate hot water in bathroom, water pressure insufficient in shower, living room floor is slanted, living room wall defective, bedroom floor has slope, lack of cooking gas, kitchen floor is uneven, defective intercom, building door is defective, hole in lobby ceiling, lack of janitorial services, elevator is dirty, loose steps on public stairwell.

74. Petitioner YURITZA RIVERA in Apartment 62 alleges the following conditions in their unit: Bedroom window frames defective, kitchen fridge is defective, kitchen stove is defective, kitchen sink cabinet is defective, kitchen floor is uneven, kitchen floor is broken, no cooking gas, leaks near the kitchen window, mold in kitchen ceiling, mold in kitchen window, mold in kitchen wall, bathroom wash basin defective, bathtub surface defective, bathroom tiles broken, mold in bathroom ceiling, bathtub leaks cold water constantly, and lack of cooking gas.

75. Petitioner EVANGELISTA SUAREZ in Apartment 64 alleges the following conditions in their unit: Bedroom window defective, kitchen window defective, lack of cooking gas, kitchen floor is uneven, mice, roaches, insufficient hot water, insufficient heat, garbage in the building lobby and stairway, rats and roaches throughout building, building lacks janitorial services, frequent elevator outages.

## EMERGENCY REPAIRS REQUESTED

76. Petitioner LILIANA PAREDES in Apartment 66 alleges the following conditions in their unit: Windows are defective throughout the apartment, floors are unleveled throughout apartment, bathroom floor tiles are broken, bathroom wall tiles are broken, mold on walls in bathroom, bathtub surface needs to be reglazed, bathroom outlets are defective, exposed wiring in hallway, missing covers on ceiling light fixtures, roaches, and mice.

77. Petitioner JACQUELINE TOMLINSON in Apartment 67 alleges the following conditions in their unit: Bedroom window is defective, kitchen window glass is broken, bathroom ceiling leaks, inadequate water pressure in bathroom, bathroom window defective, mold in the bathroom, living room walls defective, electrical issues throughout the home, heater is leaking in each room, living room window glass is broken, mold throughout apartment, roaches, apartment needs painting, inadequate lighting in building common area hallways and stairways hallways/stairways, lack janitorial services in common area hallways, rats/mice/roaches throughout building common areas, and building roof leaks.

78. Petitioner ROYER ALEXANDER in Apartment 54 alleges the following conditions in their unit: Entire apartment floor tiles are broken, bedroom door is broken, entire apartment needs to be painted, bathroom wall tiles are broken, bathroom sink is broken, toilet is broken, bathroom light cover is broken, apartment door is broken and not self-closing, lack of cooking gas.

79. Petitioner ANA RODRIGUEZ, in Apartment 43 alleges the following conditions in their unit: there is a vacate order. Petitioner seeks repairs to the unit such that the vacate order is rescinded and they are allowed to return to their home.

80. Petitioner FELIX CADENA in Apartment 41 alleges the following conditions in their unit: Floors defective in the kitchen, defective floors in the bedroom, walls and ceilings have cracks throughout the apartment, the apartment needs to be painted, lack of cooking gas, mold in

Case 1:26-cv-02557    Document 1-11    Filed 03/27/26    Page 21 of 36

**EMERGENCY REPAIRS REQUESTED**

the bathroom, mice, roaches, insufficient heat, rats and roaches throughout building, building lacks janitorial services.

81.     Petitioner RENEE THOMAS in Apartment 61 alleges the following conditions in their unit: the unit needs to be painted, roaches, the bathroom door is broken, the bathroom door frame is broken, mold in the bathroom, cracks in the walls throughout the home, cracks in the ceilings throughout the home, lack of cooking gas, pipes in the kitchen are rusty and need to be painted.

82.     Petitioner PRISCILLA RIVERA in Apartment 55A alleges the following conditions in their unit: the floors are broken in the bedroom, the bedroom radiator leaks, the walls are cracked in the bedroom, the windows are defective in the bedroom, light fixture defective in the bedroom, paint needed throughout the entire apartment, cracks in the kitchen walls, inadequate water pressure in the kitchen, outlets in the kitchen are defective, kitchen light is defective, refrigerator is defective, kitchen cabinets are defective, floor tiles are broken in the kitchen, bathroom needs to be painted and plastered, toilet is obstructed, floors in the bathroom are defective, bathroom doors broken, exposed electrical wiring in the bathroom, living room has defective floors, defective light fixture in the kitchen, the radiators are defective in the kitchen, mold throughout the apartment, roaches, mice, inadequate heat, apartment entrance door is broken and not self-closing, a lack of cooking gas, the intercom is defective, lack of janitorial services in the building, rats and mice in the common areas, the garbage is exposed in the basement, the hallways are dirty/full of dust.

83.     Petitioner DINA ACOSTA in Apartment 53 alleges the following conditions in their unit: there is a vacate order. Petitioner seeks repairs to the unit such that the vacate order is rescinded and they are allowed to return to their home.

**EMERGENCY REPAIRS REQUESTED**

84.     In addition to these individual apartment conditions, the following conditions exist in the common areas at the subject premises: light fixtures defective in building lobby, light fixtures defective in stairway, building front door is defective building front door is not self-closing, building inspection card missing, building lobby walls and stairways need to be painted, unsecured garbage in building in the basement, rats/mice/roaches in building, lack of cooking gas in every apartment, construction materials in the common areas, defective fire escapes, inadequate lighting in some hallways, building pavement is cracked, trash in front of the building, lack of heat, building elevator is frequently out of service, trash in building's backyard, lack of janitorial services, part of the roof is defective, dust in the hallways, broken tiles in the common areas, overall lack of janitorial services.

### As and For a Second Cause of Action

85.     Based on the facts set forth in *supra*, Petitioners seek an Order from the Court directing Respondent-owners to correct outstanding violations, as well as any violations that arise during the pendency of the proceeding, within periods of time corresponding to each respective hazard class and to cause Vacate Order #X320/2023 to be rescinded by a date certain or be subject to civil penalties.

### As and For a Third Cause of Action

86.     Petitioners seek an order requiring Respondent-owners rebuild the collapsed section of the building such that the units are restored to their original layouts and square footage.

**EMERGENCY REPAIRS REQUESTED**

### *As and For a Fourth Cause of Action*

87.     Petitioners have been restored to the premises seek functional hot plates or other appliances to replace the building wide lack of cooking gas.

### *As and For a Fifth Cause of Action - Harassment*

88.     Petitioners seek an order finding that Respondent-owners have harassed the tenants in the subject building, directing DHPD to place a Class C violation, assessing civil penalties for such harassment, and enjoining Respondent-owners from continuing to harass Petitioners.

89.     The first ground for a harassment finding is a long-term lack of repair and maintenance to the exterior and load-bearing walls of the building, as set forth *supra*. On information and belief, the basis of which is conversations with Petitioners and a review of the DOB violations at the subject premises, Respondent-owners' continuous refusal to secure the structural stability of the building has resulted catastrophic losses for Petitioners that caused or was intended to cause Petitioners to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy. See N.Y.C. Admin. Code § 27-2004(a)(48)(b)(b-2).

90.     As a second basis for a harassment finding, Petitioners allege that Respondent-owners failed to provide janitorial and extermination services in the subject building, leading to "Class C" immediately hazardous DHPD common area violations. Respondents allowed the rat infestation and garbage buildups in the building to continue unabated – this was intended to cause Petitioners to vacate their units or waive rights associated with their rent stabilized tenancies. Respondents have not secured overflowing trash with sufficient vermin-proof containers. Respondents have allowed vermin to proliferate at the subject premises, causing tenants to live in

Case 1:26-cv-02557    Document 1-11    Filed 03/27/26    Page 24 of 36

**EMERGENCY REPAIRS REQUESTED**

substandard conditions. Such action constitutes harassment. <u>See</u> N.Y.C. Admin. Code § 27-2004(a)(48)(b)(b-2).

91.     As a third basis for a harassment finding, Petitioners allege that Respondent-owners have allowed the accumulation of construction dust, dirt, and debris throughout the buildings' common areas. Respondents have not taken measures to protect residents from construction dust and debris, such as plastic sheets over construction areas, daily removal of construction material, or increased ventilation. The common areas are severely dusty, and tenants with health conditions are especially affected by the building's air quality. The issue of air quality is especially pressing here, where the dust may contain lead paint. The construction materials and dust have substantially interfered with and/or disturbed tenants' comfort, repose, peace or quiet, that such neglect was intended to cause Petitioners to vacate their units or surrender or waive rights associated with their occupancies, and such neglect constitutes harassment. The construction conditions in the building are forcing the residents to surrender possession of their rent-stable homes. <u>See</u> N.Y.C. Admin. Code § 27-2004(a)(48)(g).

92.     As a fourth basis for harassment, Petitioners allege that Respondents attempted to coerce, and in fact did coerce, residents into signing forms with false representations. Respondent-owners refused to allow access to the apartments until tenants who were previously vacated from their units signed these forms agreeing the apartments were fully repaired. Some of these forms went so far as to state that there were no longer any violations, a claim contradicted by the numerous active violations on DOB and HPD public databases. Petitioners vehemently disagreed with Respondent-owner's statements on these forms but signed off under duress. These unconscionable agreements were proffered at a time when Petitioners and their families were in dire need of shelter, and they signed these agreements without the benefit of counsel. These

Case 1:26-cv-02557    Document 1-11    Filed 03/27/26    Page 25 of 36

**EMERGENCY REPAIRS REQUESTED**

agreements were intended to cause Petitioners to waive rights associated with their occupancy, namely the right to repairs and the right to commence a housing court proceeding. The court should punish this fraudulent behavior and find that Respondent-owners harassed each Petitioning tenant who was required to sign the agreement. See N.Y.C. Admin. Code § 27-2004(a)(48)(g).

93.    As a fifth basis for a harassment finding, Petitioners allege that Respondent-owners' long-term neglect of subject building, both in the common areas and Petitioners' apartments, has substantially interfered with and/or disturbed their comfort, repose, peace or quiet, that such neglect was intended to cause Petitioners to vacate their units or surrender or waive rights associated with their occupancies, and such neglect constitutes harassment. The building has had scaffolding for about five years, leading to security concerns, a fire hazard, janitorial problems, and a vermin infestation, as the tops of the scaffolding has accumulated garbage. There were also frequent elevator service outages over the years. Petitioning tenants are ready and able to testify about the deplorable conditions in the building and how these conditions are forcing rent stabilized tenants out of their homes. These long-term conditions substantially interfered with tenant's lives and such neglect of building conditions was intended to cause Petitioners to vacate their units or surrender or waive rights associated with their occupancies, and such neglect constitutes harassment. See N.Y.C. Admin. Code § 27-2004(a)(48)(b).

94.    As a sixth basis for a harassment finding, Petitioners allege that Respondent-owners repeatedly refused to honor valid succession claims in the building, locking tenants out or starting frivolous cases against them. Tenants who have lived in the building for generations with their parents, spouses, children, or siblings have found that they were brought to court erroneously and even locked out after asserting succession claims. Some tenants were prevented from re-entering the premises after their vacate order was lifted even when they had irrefutable rights to

**EMERGENCY REPAIRS REQUESTED**

return. Prior to the collapse, the superintendent denied valid succession claims and threatened to lock out any tenant who failed to vacate within 4 weeks. Respondents have commenced baseless holdover cases to remove tenants with valid succession claims. This lack of compliance with NYC Rent Stabilization law, frivolous lawsuits, verbal threats of lockout, and at least one lockout, was intended to cause Petitioners to surrender their units or waive rights associated with their occupancy and such actions constitute harassment. See N.Y.C. Admin. Code § 27-2004(a)(48)(d); N.Y.C. Admin. Code § 27-2004(a)(48)(f).

95.     As a seventh basis for a harassment finding, Petitioners allege that Respondent-owners, through their agent, the superintendent, demanded substantial cash payments with receipts to move into the building. Some tenants were allowed to move in after making these substantial cash payments, but they were not offered leases. Instead, tenants were told that if they paid their rent on-time, they would receive a lease at a future date. The superintendent accepted the cash payments and allowed tenants to move in but placed the vacant units in his own family members' names, then proceeded to rent them out illegally, profiteering from these tenancies and circumventing Rent Stabilization Law. The tenants who moved into the building under this scheme continued to pay rent, but never received a lease in their names. This lack of compliance with NYC Rent Stabilization law, coupled with demands for cash payments, was intended to cause Petitioners to waive rights associated with their occupancy and, therefore, that such failures constitute harassment. See N.Y.C. Admin. Code § 27-2004(a)(48)(a-1).

96.     As an eighth basis for a harassment finding, Petitioners allege that Respondent-owners repeatedly failed to correct hazardous DOB violations in the building including the boiler, the façade, and other DOB violations of record within the time required for such corrections. There are presently 5 active DOB violations and 17 active OATH-DOB violations in the subject

**EMERGENCY REPAIRS REQUESTED**

building. This failure to comply with the NYC construction codes led to dangerous living conditions for Petitioners and their families. This lack of compliance with NYC Construction Codes was intended to cause Petitioners to surrender their units or waive rights associated with their occupancy and, therefore, that such failures constitute harassment. See N.Y.C. Admin. Code § 27-2004(a)(48)(b-2).

97.     As a ninth basis for a harassment finding, Petitioners allege that Respondent-owners failed to provide adequate security for the building. The vacated units remain locked, but due to Respondent's failure to provide security, Petitioners' personal belongings were looted. Looters gained access to these units, resulting in burglaries. Respondent-owners knew or should have known about this security breach because of the numerous police reports and because Petitioners were reporting the looting directly to Respondent-owners. This failure to secure these vacant apartments created a dangerous living condition that caused Petitioners to surrender their units or waive rights associated with their occupancy and, therefore, that such failures constitute harassment. See N.Y.C. Admin. Code § 27-2004(a)(48)(g).

98.     As a tenth basis for a harassment finding, Petitioners allege that Respondent-owners failed to lift the vacate order in the building. This failure to lift the vacate order caused Petitioners to surrender their units or waive rights associated with their occupancy and, therefore, that such failures constitute harassment. See N.Y.C. Admin. Code § 27-2004(a)(48)(c).

### As and For a Sixth Cause of Action

99.     In the event of failure to correct any violation recorded by Respondents DHPD, DOB, DOHMH, or the Court, within the time permitted by the Court. Petitioners seek an Order from the Court imposing civil penalties upon Respondents DAVID KLEINER, YONAH ROTH,

<p style="text-align:center; color:red; font-weight:bold;">EMERGENCY REPAIRS REQUESTED</p>

MOISHE "MO" DOE, and 1915 REALTY LLC.

### *As and For a Seventh Cause of Action*

100.    Petitioners also seek an Order from the Court granting such further relief as the Court deems just and proper.

**WHEREFORE**, Petitioners respectfully request that this Court grant the relief sought in the instant Petition, in its entirety.

Dated:  Bronx, New York
        February 5, 2024

Zoe Kheyman, Of Counsel
ADRIENNE HOLDER
Attorney In Charge-, Civil Practice
THE LEGAL AID SOCIETY
Bronx Neighborhood Office
260 East 161st St., 8th Floor
Bronx, New York 10451
(646) 689-5138
*Attorney for Petitioner-Tenants*

## VERIFICATION

STATE OF NEW YORK   )

COUNTY OF BRONX     ) ss.:

I am a tenant of 1915 Billingsley Terrace and am a Petitioner in this proceeding. I have reviewed my allegations and know the truth of the contents thereof, as they pertain to the building conditions as a whole and my individual apartment, except those matters alleged to be on information and belief, and as to those matters, I believe them to be true.

Dated: Bronx, New York
      January 31 2024

| NAME | SIGNATURE | APARTMENT NUMBER |
|---|---|---|
| Rafer-Alexander Martinez | Rafer Alexander Martinez | 54. |
| Ana Rodriguez | Ana R. Rodriguez | 43 |
| FELIX CADENA | Felix Cadena | 41 |
| Renee Thomas | Thomas | 61 |
| Priscilla Rivera | Priscilla Rivera | 55A |
|  |  |  |
|  |  |  |

Sworn to before me on this 31st day of January 2024

_Notary Public_

Zoe Kheyman
Notary Public, State of New York
NO. 02KH6359049
Qualified in Westchester County
My Commission Expires 5/22/2025

## VERIFICATION

STATE OF NEW YORK    )

COUNTY OF BRONX    ) ss.:

1. I am a tenant of 1915 Billingsley Terrace and am a Petitioner in this proceeding.

2. I have reviewed my allegations with my attorney and know the truth of the contents thereof pertaining to the building as a whole and my individual apartment, except as to those matters alleged to be on information and belief, and as to those matters, I believe them to be true.

Dated: Bronx, New York
January 24 2024

| NAME | SIGNATURE | APARTMENT NUMBER |
|------|-----------|------------------|
| Sobeida Rodriguez | *Sobeida Rodriguez* | # 42 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Sworn to before me on this 24 day of January 2024

Notary Public

Zoe Kheyman
Notary Public, State of New York
NO. 02KH6359049
Qualified in Westchester County
My Commission Expires 5/22/2025

## VERIFICATION

STATE OF NEW YORK      )

COUNTY OF BRONX        ) ss.:

I am a tenant of 1915 Billingsley Terrace and am a Petitioner in this proceeding. I have reviewed my allegations and know the truth of the contents thereof, as they pertain to the building conditions as a whole and my individual apartment, except those matters alleged to be on information and belief, and as to those matters, I believe them to be true.

Dated: Bronx, New York
      January 24 2024

| NAME | SIGNATURE | APARTMENT NUMBER |
|------|-----------|------------------|
| ENILDA MOREL | *Enilda morel* | 63 |
| Dina Acosta | *Acosta* | 53 |
| Liliana paredes | *Liliana Paredes* | 66 |
| Evangelista Suarez | *Evangelista Suarez* | 64 |
| Yuritza Rivera | *Rivera* | 62 |
| RAZA Chaudhry | *Raza* | 55B |
| Leticia Ortiz | *Leticia Ortiz* | 11 |

Sworn to before me on this 24th day of January 2024

_____
Notary Public

Zoe Kheyman
Notary Public, State of New York
NO. 02KH6359049
Qualified in Westchester County
My Commission Expires 5/22/2025

## VERIFICATION

STATE OF NEW YORK )

COUNTY OF BRONX ) ss.:

I am a tenant of 1915 Billingsley Terrace and am a Petitioner in this proceeding. I have reviewed my allegations and know the truth of the contents thereof, as they pertain to the building conditions as a whole and my individual apartment, except those matters alleged to be on information and belief, and as to those matters, I believe them to be true.

Dated: Bronx, New York
January 16 2024

| NAME | SIGNATURE | APARTMENT NUMBER |
|---|---|---|
| Monica Christian | *Monica Christian* | #35A |
| Jacqueline Tomlinsa | *Jacqueline Toml* | 67 |
| Bertha Ortiz | *Bertha* | #23 |
| Rosa Diaz Lopez | *Rosa Diaz* | #45B |
| Francisco Rodriguez | *Francisco A. Rodriguez* | #31 |
| | | |
| | | |
| | | |

Sworn to before me on this 16th day of January 2024

Notary Public

Zoe Kheyman
Notary Public, State of New York
NO. 02KH6359049
Qualified in Westchester County
My Commission Expires 5/22/2025

## VERIFICATION

STATE OF NEW YORK    )

COUNTY OF BRONX      ) ss.:

I am a tenant of 1915 Billingsley Terrace and am a Petitioner in this proceeding. I have reviewed my allegations and know the truth of the contents thereof, as they pertain to the building conditions as a whole and my individual apartment, except those matters alleged to be on information and belief, and as to those matters, I believe them to be true.

Dated: Bronx, New York
       January **24** 2024

| NAME | SIGNATURE | APARTMENT NUMBER |
|---|---|---|
| Pedro B Rodriguez | Pedro B. Rodriguez | 25 |
| JOHNY Jimenez | JOHNy Jimenez | 51 |
| Narciso Tejada | *(signature)* | 26 |
| | | |
| | | |
| | | |
| | | |

Sworn to before me on this **24** day of January 2024

_____
Notary Public

Zoe Kheyman
Notary Public, State of New York
NO. 02KH6359049
Qualified in Westchester County
My Commission Expires 5/22/20**25**

## VERIFICATION

STATE OF NEW YORK      )

COUNTY OF BRONX         ) ss.:

1. I am a tenant of 1915 Billingsley Terrace and am a Petitioner in this proceeding.

2. I have reviewed my allegations with my attorney and know the truth of the contents thereof pertaining to the building as a whole and my individual apartment, except as to those matters alleged to be on information and belief, and as to those matters, I believe them to be true.

Dated: Bronx, New York
January 24 2024

| NAME | SIGNATURE | APARTMENT NUMBER |
|---|---|---|
| Mélida Olavavria | Melida Olavaría | 22 |
| Carmen Martinez | Carmen Martinez | 12A |
| Miriam Rodriguez | Miriam Roduguez | 15 |
| Amparo Suero | Amparo Suero | 47 |
| Maria Bare | Maria D Bare c | 32 |
| Jose toRibio | | 44 |
| Ludurca mora | | 46 |

Sworn to before me on this 24th day of January 2024

Notary Public

Zoe Kheyman
Notary Public, State of New York
NO. 02KH6359049
Qualified in Westchester County
My Commission Expires 5/22/20 25

**ATTORNEY'S AFFIRMATION OF SERVICE**

The undersigned, an attorney admitted to practice law in New York, affirms under penalty of perjury that on

_____, I served the within papers upon _____

located at _____.

❑ **Personal Service**: by delivering a true copy of the within papers personally to the abovementioned person/corporation/firm.

❑ **Service by Mail**: by depositing true copies of the within papers by certified and/or regular mail in a post office or official depository under the exclusive care of the U.S. Postal Service within the State of New York.

Dated:
Bronx, New York

ATTORNEY'S CERTIFICATION - The undersigned, an attorney admitted to practice law in New York, certifies pursuant to C.P.L.R. 2105 that I compared the foregoing copy with the original and found it to be a true and complete copy.

Dated:
Bronx, New York

_____
**Zoe Kheyman**

ATTORNEY'S CERTIFICATION - The undersigned, an attorney admitted to practice law in New York, certifies pursuant to N.Y.C.R.R. § 130-1.1a that to the best of my knowledge, information and belief, formed after reasonable inquiry, the presentation of the foregoing papers and the contents there in are not frivolous as defined N.Y.C.R.R. § 130-1.1 (c).

Dated:  February 5, 2024
Bronx, New York

_____
**Zoe Kheyman**

| **AFFIDAVIT OF SERVICE - State of New York, County of Bronx** |
| --- |

The undersigned, being duly sworn, deposes and says:

I am not a party to this action, am over 18 years of age, and reside in the State of New York. On _____

I served the within papers upon _____

located at _____

❑ **Personal Service**: by delivering a true copy of the within papers personally to the abovementioned person/corporation/firm.

❑ **Service by Mail**: by depositing true copies of the within papers by certified mail in a post office or official depository under the exclusive care of the U.S. Postal Service within the State of New York.

_____
Signature

Sworn to before me on this

_____
Print Name

_____ day of _____

_____
NOTARY PUBLIC

**THE
LEGAL AID
SOCIETY
CIVIL**

**Zoe Kheyman, of counsel**

# THE LEGAL AID SOCIETY
**CIVIL PRACTICE
BRONX NEIGHBORHOOD OFFICE
260 East 161st Street, 8th Floor
Bronx, New York 10451
(646) 689-5138**

**ADRIENE HOLDER**
*Attorney-in-Chief
Civil Division*

**SHERVON SMALL**
*Attorney-in-Charge
Civil Practice*