No *Shepard's* Signal™
As of: June 10, 2026 8:17 PM Z

# *Bryant v. Casco Bay Realty Ltd. P'ship*

Supreme Court of New York, Westchester County

April 9, 2015, Decided; April 9, 2015, Filed

Index No. 69135/12

**Reporter**

2015 N.Y. Misc. LEXIS 13226 *; 2015 LX 60929

MELVELLA BRYANT and STEPHANIE GAINES, Plaintiffs, -against- CASCO BAY REALTY LIMITED PARTNERSHIP, Defendant.

**Notice:** THIS OPINION IS UNCORRECTED AND WILL NOT BE PUBLISHED IN THE PRINTED OFFICIAL REPORTS.

## Core Terms

rend, tenant, late fee, notice, lease, landlord, fault, attorney's fees, evict, court costs, nonpayment, ancillary, summary proceeding, late payment, rent payment, rental, partial payment, lump sum, household, demand for payment, deceptive, terminate, holdover, non-rent, adjudge, tenancy, noncompliance, chronic, realty, void

**Counsel:** [*1] For Plaintiffs: Marcie Kobak, Of Counsel, Legal Services of the Hudson Valley, Yonkers, New York.

For Defendant: Jeanne M. Frey, Esq., Somers, New York.

**Judges:** Hon. Nicholas Colabella, J.H.O.

**Opinion by:** Nicholas Colabella

## Opinion

### DECISION AND JUDGMENT

COLABELLA, J.H.O.

Pursuant to the stipulation of counsel, on the record during the proceeding held on October 30, 2014, the matter was referred to the undersigned to hear and determine the trial on stipulated facts.

In this action for a declaratory judgment and injunctive relief, plaintiffs, who are Section 8 tenants,[1] as limited by their memorandum of law, seek a judgment declaring, inter alia, that defendant's demands for certain payments contravene General Business Law § 349.

The parties have stipulated to the following facts: Defendant is the owner and landlord of 220-250 Yonkers Avenue (hereinafter Parkledge Apartments) in Yonkers, New York. At all relevant times, defendant received federal financial assistance under *Section 236 of the National Housing Act (12 USC 1715z-1*) to operate Parkledge Apartments. Pursuant to a lease agreement between plaintiff Melvella Bryant and defendant (hereinafter the Bryant lease), Bryant and her two adopted daughters have lived in a Parkledge Apartments unit since 2007. Pursuant to a lease agreement between plaintiff Stephanie [*2] Gaines and defendant (hereinafter the Gaines lease), Gaines, her husband, and her two sons have lived in a Parkledge Apartments unit as of 2004.

Throughout their tenancies, each plaintiff has resided within Parkledge Apartments as a participant in the federal "tenant-based" assistance program under *Section 8 of the Housing Act of 1937 (42 USC 1437f[o]*). Defendant receives a federal low-income housing tax credit under Section 42 of the Internal Revenue Code of 1986 (26 USC 42). The Bryant lease and Gaines lease are both United States Department of Housing and Urban Development (hereinafter HUD) Model Leases within the meaning of HUD Handbook 4350.3: Occupancy Requirements of Subsidized Multifamily Housing Programs, issued on June 23, 2009 and again

---

[1] "The Section 8 system (Tenant Based Assistance: Housing Choice Voucher Program) is a federal program that provides housing assistance to eligible low-income families by giving subsidies to landlords who rent apartments to them" (*Rosario v Diagonal Realty, LLC, 8 NY3d 755, 760 [2007]*;*see42 USC § 1437f*).

Christopher Lamb

on August 7, 2013.

In July 2011, Bryant's shelter allowance in the amount of $295 from the Westchester County Department of Social Services (hereinafter DSS) was discontinued because she allegedly failed to comply with work requirements. Accordingly, Bryant's household income consisted solely of an adoption subsidy until November 2011. At that point, her household income also included part-time employment income from one of her daughters. Both the adoption subsidy and Bryant's daughter's income were exempt as "income" for Section 8 purposes. From July 2011 until [*3] February 2012, Bryant and her household were not receiving food stamps under the Supplemental Nutritional Assistance Program. The value of food stamps is also exempt as "income" for Section 8 purposes.

In November 2011 and January 2012, Bryant tendered her $295 family share of the rent late because she was awaiting a fair hearing from DSS. Although Bryant was no longer receiving a shelter allowance at that time, her rent share remained the same since a rent share remains the same following a loss of income unless a tenant provides documentation for an interim recertification. In February 2012, Bryant abandoned attempts to have shelter allowance benefits restored by DSS and sought employment. In April 2012, Bryant tendered her $295 family share of the rent late because she was paying cancer treatment expenses incurred by her father, although she had no legal obligation to support her father.

On April 23, 2012, without providing an opportunity to comment on its management decision, defendant sent letters to all Parkledge Apartments tenants informing them of a new policy as to partial rent payments. More specifically, the letter stated in relevant part: "We will no longer accept partial rent payments. [*4] If a resident pays less than their balance due, the payment will be returned" (Ex. A to Summons and Complaint).

In June 2012, defendant refused Bryant's tender of her $295 family share of the rent because the tender did not represent the entire balance outstanding at that time. That same month, defendant served Bryant with a notice of termination purporting to terminate Bryant's tenancy for failure to comply with her lease by timely paying rent due, thereby forcing defendant to repeatedly serve demands. Defendant served the notice of termination pursuant to the terms of the Bryant lease.

During each time period mentioned in the notice of termination (namely, November 16, 2011, January 19,

2012, April 13, 2012, and June 13, 2012), Bryant either failed to pay or tendered late some portion of her $295 Section 8 family share of rent.[2] On each occasion, defendant made a three-day demand for payment under RPAPL 711(2). However, the three-day demands failed to specify the months for which defendant demanded payment of rent, and included non-rent charges such as unspecified late fees, legal fees, or other fees in the lump sum demanded. For example, the defendant's April 13, 2012 three-day demand merely listed a lump [*5] sum of $1,873 as the amount of "rent" due (Ex. C to Summons and Complaint).

Pursuant to the terms of the Bryant lease, by notice of petition and petition dated August 9, 2012, defendant commenced summary eviction proceedings against Bryant under RPAPL 711(1), based on the allegations set forth in the notice of termination. In the notice of petition and petition, defendant specified the months for which it was demanding rent. Since the commencement of the summary eviction proceedings, Bryant has tendered rent late or defendant has rejected Bryant's timely tender of rent because the tender did not include the entire arrearage outstanding at that time.

By Decision and Order dated October 25, 2013 and a post-trial, post-decision appearance on November 7, 2013, the Yonkers City Court held in *Casco Bay Realty L.P. v Bryant* (Index No. LT 4334-12/YO) that defendant failed to establish that Bryant's nonpayment was "willful, unjustified, without explanation, or accompanied by an intent to harass the landlord." The stipulated statement of facts provides: "The Yonkers City Court marked the matter on for an additional court date to address outstanding arrears and off the calendar without prejudice as to Defendant's [*6] claim for late fees pending further action." There is no reference as to when the City Court will hear or has heard the parties on these issues.

With respect to plaintiff Gaines, from the beginning of her tenancy of a certain Parkledge Apartment until March 2011, Gaines's household income consisted of her employment income, public assistance from DSS, her husband's employment income, or some combination thereof. Gaines's household income consisted solely of her husband's unemployment insurance benefits (hereinafter UIB) in the amount of $319 per week from March 2011 until June 2013 (hereinafter the UIB period). During the UIB period,

---

[2] The statement of stipulated facts does not provide specific information as to the amounts tendered.

Gaines's Section 8 family share of rent was $391 per month, and the defendant served eight three-day demands upon her pursuant to RPAPL 711(2). Six of the eight three-day demands directed Gaines to pay a lump sum that included non-rent charges such as late fees or other fees. In each month that was the subject of a three-day demand, Gaines tendered her section 8 family share of rent late.

In March 2011, Gaines fell into arrears due to a lost wallet, but eventually paid the balance due. Defendant demanded payment of $992.50 in January 2012, $742.50 in February 2012, and $464.50 in June [*7] 2012. On each occasion, Gaines did not recognize the entire amount as rental arrears. Accordingly, she tendered to defendant partial payment of what she thought was the actual rent due, which tender defendant rejected as partial payment. The parties in the stipulated facts do not indicate the amounts tendered. In addition, defendant rejected Gaines's tender of $400 in April 2012, because the amount did not represent payment in full of her total account balance. By notice of petition and petition dated June 21, 2012, defendant commenced a summary proceeding under RPAPL 711(2) against Gaines, based upon the June 13, 2012 three-day demand for $464.50.

From Gaines defendant demanded payment of $711 in August 2012, and $1,543 in October 2012. On each occasion, Gaines did not recognize the entire amount as rental arrears. Accordingly, she twice tendered to defendant payment in the amount of $413, in excess of her monthly Section 8 family share of rent, which tender defendant rejected as partial payment.

In its seventh three-day demand, which was dated January 22, 2013, defendant demanded from Gaines payment of $2,471, itemized as "August 2012 rent of $391 + August 2012 late fee of $25, September 2012 rent of $391 [*8] + September 2012 late fee of $25, October 2012 rent of $391 + October 2012 late fee of $25, November 2012 rent of $391 + November 2012 late fee of $25, December 2012 rent of $391 + December 2012 late fee of $25, and January 2012 [sic] rent of $391." At that time, Gaines had fallen into arrears due to her husband's mismanagement of the household's UIB. Upon receipt of the demand, Gaines informed defendant by letter dated January 31, 2013 of her husband's mismanagement and stated that she was working with DSS and other organizations to resolve the matter. By notice of petition and petition dated February 1, 2013, defendant commenced a summary proceeding against Gaines under RPAPL 711(2) based upon the

three-day demand "seeking a lump-sum of $2,471.00 as rent."

On March 13, 2013, defendant demanded payment of $391 as March rent. Gaines tendered the full payment shortly thereafter, Upon the expiration of her husband's UIB, Gaines applied for public assistance from DSS at the direction of her Section 8 caseworker. At the time of Gaines's application for public assistance from DSS, her only household income was her three-year-old son's supplemental security income. By letter dated July 5, 2013, Gaines informed [*9] defendant that she had applied for public assistance at her caseworker's direction and that she was waiting for DSS to open her case and provide rental assistance.

While Gaines was waiting for assistance from DSS, she received a notice from defendant's management team dated August 14, 2013, addressed to "all residents." The notice stated: "It has come to our attention that you have a balance remaining on your rental account. All past due rent, late fees, parking fees, and air conditioning fees must be paid in full. I will be here in the rental office until Friday, August 16, 2013 to discuss any rent issues you may have. Payment plans can be made at this time for late fees, and attorney fees. PLEASE DO NOT IGNORE THIS NOTICE. Legal action will follow if you do not respond. The next course of action will be to file for an eviction."

Parties' Contentions

Plaintiffs' Contentions

Plaintiffs posit that tenants are required to pay as rent only the Section 8 approved share of the rent pursuant to federal law, that other charges such as late fees cannot properly be characterized as rent charges, and that a possessory judgment cannot include non-rent charges. They further contend that a rent demand must [*10] (1) indicate the periods for rent allegedly due and the amount due for each period, and (2) differentiate non-rent charges. In addition, plaintiffs assert that a landlord engages in a deceptive act or practice within the meaning of General Business Law § 349 when it demands a lump sum as rent without putting the tenant on notice that the sum includes non-rent charges. Accordingly, plaintiffs seek a judgment declaring that defendant's three-day demands contravene General Business Law § 349, declaring void any attorney's fees, court costs, or late fees currently

2015 N.Y. Misc. LEXIS 13226, *10

assessed against them based on three-day demands that violate General Business Law § 349, and enjoining defendant from serving three-day demands that similarly contravene that provision.[3]

In addition, plaintiffs contend that defendant's late rent policy conditions acceptance of rent on payment of the "balance due," without limitation to rent for the month or rent to date. They reason that under the late rent policy that went into effect on April 23, 2012, a tenant can timely tender her share of rent for the month, defendant can reject that tender on the ground that failure to include non-rent charges renders it an impermissible partial payment, and defendant can thereafter commence a nonpayment proceeding. **[*11]** Accordingly, plaintiffs seek a declaration that the late rent policy is void.

Lastly, plaintiffs argue that in the context of federally subsidized tenancies, absence of fault is a defense to a summary proceeding under RPAPL 711(1) predicated upon nonpayment. They seek a judgment declaring that (1) absence of fault is a defense to a summary proceeding, and (2) any attorney's fees, court costs, or late fees currently assessed against them that were based on late payments where plaintiffs showed an absence of fault are null and void.

### Defendant's Contentions

Defendant contends that so long as late fees are set forth in the lease as part of the tenant's obligation, such fees may be included in a three-day demand and are recoverable as obligations under the lease. It asserts that it did not seek an unauthorized higher rent from plaintiffs in violation of federal law, but merely demanded payment of late fees when plaintiffs failed to pay their rent when it became due, in accordance with the lease terms. Defendant complains that plaintiffs are seeking an option to pay rent whenever they choose to pay it and without the imposition of any late fees or other consequences, even though no such option exists under **[*12]** the lease terms.

Defendant further contends that it is under no legal duty to itemize every charge in its three-day demands; rather, itemization is merely a suggestion. It argues that

it did not violate any existing laws or engage in any deceptive acts simply by including ancillary charges in the rent demand and failing to itemize those charges. According to defendant, its three-day demands provide tenants with actual notice of the alleged amount due, and should therefore be deemed legally sufficient. Assuming *arguendo* that the demands are not legally sufficient, defendant posits that at most, the demands are unlawful but not deceptive.

Next, defendant opines that its late rent policy is lawful, because a landlord is under no obligation to accept partial payments from a tenant, and rent tendered after the due date constitutes a breach of the terms of the lease. It insists that it is entitled to reject a rent payment if there is an existing arrearage in addition to the rent due for the current month, and that it has a continuing right to bring a nonpayment action until the arrearage is satisfied.

Defendant also posits that while lack of fault may be a defense to a summary proceeding predicated **[*13]** upon the ground of nuisance, no court with binding authority has held that lack of fault is a defense to a summary proceeding based on material noncompliance with the payment terms of a lease. It urges that expansion of the "lack of fault" defense is unwarranted, because a landlord should not be expected to bear the burden of a tenant's financial woes.

Lastly, with respect to plaintiffs' claim that any attorney's fees, late fees, or court costs currently assessed against them are null and void, defendant contends that to the extent that such fees and costs were assessed against plaintiffs in prior proceedings by different courts, those costs and fees are not properly before this court. It asserts that plaintiffs never appealed from any unfavorable rulings, and that plaintiffs do not have the option of overturning prior rulings by way of a declaratory judgment action.

### Conclusions of Law

### General Business Law § 349

Pursuant to RPAPL 711(2), a summary proceeding against a tenant may be maintained when "[t]he tenant has defaulted in the payment of rent, pursuant to the agreement under which the premises are held, and a demand of the rent has been made, or at least three days' notice in writing requiring, in the alternative, the **[*14]** payment of the rent, or the possession of the

---

[3] The court notes that while plaintiffs also seek relief on behalf of "other similarly situated tenants," they failed to provide a basis for such relief in the analysis section of their memorandum of law.

2015 N.Y. Misc. LEXIS 13226, *14

premises, has been served upon him as prescribed in section 735." As long as rent charges are expressly itemized by month, a three-day demand that also lists ancillary charges will not be deemed invalid (see *John Washington, Ltd. v Gulbreath, 171 Misc2d 337, 339 [App Term, 2d Dept 1997]*). However, a "summary nonpayment proceeding brought pursuant to RPAPL 711(2) may *only* be maintained to collect unpaid rent" (*Bedford Gardens Co. v Silberstein, 269 AD2d 445 [2d Dept 2000]* [emphasis added]; *see Fairview Hous., LLC v Wilson, 38 Misc3d 128[A] [App Term, 2d Dept 2012]*).

Form HUD-52641-A, the tenancy addendum that must be included in any lease between a landlord and a Section 8 tenant (see *24 CFR 982.308[f]*, does not list late fees, attorney's fees, and court costs among the charges that comprise "rent to owner." Moreover, the Appellate Term has expressly held that attorney's fees "may not be deemed additional rent as against a Section 8 tenant and may not be recovered against a Section 8 tenant in a summary proceeding" (*Fairview Hous., LLC v Wilson, 38 Misc3d 128[A]*). As another court has observed, "The Legislature never intended to allow an unpaid water bill, late fee or maintenance expenses to be the basis to evict a tenant from his home under section 711(2)" (*Neighbors of Watertown, Inc. v Pearson, 10 Misc3d 954, 959 [Watertown City Ct 2005]*).

Here, defendant issued three-day demands to both plaintiffs that merely listed lump sums, characterized as "rent," without indicating that the amount allegedly due included ancillary charges such as late fees. However, **[\*15]** the only amount that needed to be paid to prevent a nonpayment proceeding was the overdue rent, and the ancillary charges at issue here are not a component of rent arrears in a summary proceeding against a Section 8 tenant (see *Fairview Hous., LLC v Wilson, 38 Misc3d 128[A]*; *cf. Binghamton Hous. Auth. v Douglas, 217 AD2d 897, 898 [3d Dept 1995]* [arriving at same conclusion with respect to ancillary charges in public housing context]). Compounding the problem, the three-day demands failed to list the time frames during which the rent delinquencies allegedly arose. As a result, under controlling case law, plaintiffs did not have "actual notice of the alleged amount due and of the period for which such claim is made" (*Parkview Gardens LP v Lamont, 240 NYLJ 31 [Civ Court, Kings County July 14, 2008]* [internal quotation marks omitted]).

Defendant's reliance on *Brusco v Miller (167 Misc2d 54 [App Term, 1st Dept 1995])* for the proposition that itemization of rent charges and ancillary charges is preferred but not required is misplaced. The relevant passage states is full: "To avoid any possibility of confusion or prejudice, claims for rent should be segregated from landlords' other charges and separately totaled. There is no claim by tenants herein that *any* rent was tendered to landlords and refused" (*id. at 56* n* [emphasis in original]). Even if this court adopted defendant's interpretation of *Brusco*, the plaintiffs *do* in fact claim in this case that rent was **[\*16]** tendered to defendant and refused. Accordingly, *Brusco* is factually distinguishable from the present action.

In light of the above, defendant's three-day demands served on plaintiffs were improper. The court agrees with plaintiffs' contention that the demands contravened state law in that they were deceptive within the meaning of General Business Law §349[4] (see *e.g. Meyerson v Prime Realty Servs., LLC, 7 Misc3d 911, 919-920 [Sup Ct, NY County 2005]* [concluding that defendant landlord's form, which stated that tenants were legally required to provide certain information even though no such legal duty existed, was "clearly ... deceptive" under General Business Law § 349]), which provides for a private right of action (see General Business Law §349111; *see also Lozano v Grunberg, 195 AD2d 308 [1st Dept 1993]* [reinstating plaintiff tenant's General Business Law § 349 cause of action against defendant landlord, which was based on allegations that the landlord sent purported "final notices" threatening eviction due to late payment of rent, even though no eviction proceedings were actually pending against plaintiff]). More specifically, section 349 (a) of the General Business Law states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." Here, the lump sums listed in the three-day demands were misleading (see *St. James Court, L.L.C. v Booker, 176 Misc2d 693, 695 [Civ Court, Kings County 1998]*), in that they created the impression that plaintiffs **[\*17]** were required to pay more than what was actually owed as rent in order to avoid eviction (see *London Terrace Gardens v Stevens, 159 Misc2d 542, 546 [Civ Ct, NY County 1993]*).

Notwithstanding defendant's contrary contention, *Schlessinger v Valspar Corp. (21 NY3d 166 [2013]*) does not foreclose plaintiffs' General Business Law §349 claim. The disputed practice at issue in

---

[4] Although plaintiffs alleged in their memorandum of law that the three-day demands also violated federal law, they failed to argue this point adequately in the body of the memorandum.

*Schlessinger* was unlawful, but not deceptive (*see id. at 172-173*).[5] By contrast, the instant defendant deceived plaintiffs when it issued three-day demands that included ancillary charges in lump sum amounts, and indicated that full payment was required to prevent eviction.

The Late Rent Policy

Turning to defendant's refusal to accept partial rent payments, the court finds that on its face, defendant's policy is not unlawful. Plaintiffs point to no authority for the proposition that a landlord must accept partial payments.

The problem, however, lies in defendant's manner of effectuating this policy. Because defendant lumps ancillary charges with rent, tenants run the risk of having a check containing the full rent amount refused because the amount tendered does not include a late fee, and is thereby purportedly a "partial payment." Defendant can then prepare a three-day demand based on nonpayment, even though the only balance on the tenant's account **[\*18]** would have been the late fee in

---

[5] In *Schlessinger v Valspar Corp. (21 NY3d 166, 169 [2013])*, the two plaintiffs purchased furniture protection plans for furniture purchased from Fortunoff Department Store. Pursuant to the plans' terms, defendant Valspar Corp. was required to provide various services, including repair or replacement of damaged furniture if necessary (*see id.*). The plans also contained a provision stating that if the store location where the plaintiffs purchased their furniture closed, the defendant would refund them the original purchase price of the plans (*see id.*). Thereafter, the store location where the plaintiffs purchased their furniture closed (*see id.*). Defendant provided one plaintiff with a full refund of the plan's purchase price; the other plaintiff never alleged that she made any claim under her plan (*see id.*). Nevertheless, the plaintiffs argued that the "store closure" provision included in the plans violated General Business Law § 395-a (2), which states (with exceptions not relevant here) that "[n]o maintenance agreement covering parts and/or service shall be terminated at the election of the party providing such parts and/or service during the term of the agreement" (*see id.*). The plaintiffs further contended that defendant "engaged in 'deceptive practices' as defined by [General Business Law § 349] by selling maintenance agreements containing the store closure provision" (*id. at 170*). With respect to the section 349 claim, the Court of Appeals concluded that "plaintiffs' reasoning [was] too attenuated to be plausible," and that "[i]ncluding a termination provision in a maintenance agreement has no ... tendency" to deceive customers (*id. at 172-173*).

the event that defendant had accepted tender of the full rent amount. For the reasons explained in the previous section, a late fee is not a proper basis for a three-day demand. Accordingly, to the extent that defendant is refusing to accept payment constituting the full *rental* amount actually due, its practice is improper (*cf. Sager v Hous. Commn., 957 F Supp 2d 627 [D Md 2013]*).

Lack of Tenant Fault

"It is well settled that a section 8 housing assistance tenant has a statutory entitlement to continue in the occupancy of the rental unit in the absence of good cause for eviction" (*Greenwich Gardens Associates v Pitt, 126 Misc2d 947, 951 [Nassau Dist Ct 1984]*). "[T]o evict a tenant for chronic late payment of rent, the landlord must show that it was compelled to bring numerous nonpayment proceedings within a relatively short period and that the tenant's nonpayment was willful, unjustified, without explanation, or accompanied by an intent to harass the landlord" (*25th Realty Assoc. v Griggs, 150 AD2d 155, 156 [1st Dept 1989]*; *see also Sharp v Norwood, 223 AD2d 6 [1st Dept 1996]*, *affd 89 NY2d 1068 [1997]*). As earlier noted, the Yonkers City Court employed this standard in 2013 when considering defendant's holdover proceeding against Bryant (*Casco Bay Realty L.P. v Bryant* [Index No. LT 4334-12/YO]). Defendant asserts, however, that this standard is irrelevant to this action, because its holdover proceeding against **[\*19]** Bryant was not premised on a nuisance theory, but was instead premised on a breach of contract theory based on material noncompliance. Defendant further insists that tenant fault or lack thereof should have no bearing on the outcome of a holdover proceeding stemming from material noncompliance.

Based on defendant's logic, if a Section 8 tenant makes chronic late payments due to bureaucratic ineptitude (*cf. 2246 Holding Corp. v Nolasco, 52 AD3d 377, 377-378 [1st Dept 2008]* [concluding that "[a]n indigent tenant who resides in [a rent-stabilized] apartment for many years should not be evicted where she has made diligent efforts to comply with the terms of the settlement agreement, only to be stymied by events beyond her control," namely late payment by the Human Resources Administration]; *Cabrera v New York City Hous. Auth., 30 Misc3d 1231[A] [Sup Ct, NY County 2011]* [finding that termination of a public housing tenant's tenancy due to chronic rent delinquency shocked the judicial conscience, where the late payments were due to "continual bureaucratic entanglement" with the Human Resources Administration]), whether the tenant is

evicted should hinge on whether the landlord denominates the holdover proceeding as one based on nuisance or one based on material noncompliance. The court is not persuaded by defendant's argument. Under either **[*20]** scenario, the tenant is blameless. Accordingly, it would be unfair to penalize him or her with eviction even if the holdover proceeding was based on noncompliance.

Nevertheless, plaintiffs are not entitled to a declaration that lack of fault is a defense to a holdover proceeding based on nonpayment. "One is not entitled to a declaratory judgment absent concrete legal issues, presented in actual cases, not abstractions" (*Winkler v Spinnato, 134 AD2d 66, 83 [2d Dept 1987]* [internal quotation marks omitted], *affd 72 NY2d 402 [1988]*). To the extent that Bryant's "fault" is at issue, the Yonkers City Court has already determined that her chronic late payments were due to "problems with [DSS]" (*Casco Bay Realty L.P. v Bryant* [Index No. LT 4334-12/YO]). Accordingly, whether Bryant has a valid "lack of fault" defense is not a "concrete legal issue" for this court to decide. To the extent that Gaines's "fault" is at issue, the stipulated facts do not establish an absence of fault with respect to her chronic late payments. Thus, her alleged lack of fault may only be considered in the abstract.

Annulment of Fees and Costs

Plaintiffs also seek a judgment declaring that any attorney's fees, late fees, and court costs currently assessed against them are void if plaintiffs **[*21]** cannot be faulted for the untimeliness of their rent payments or if defendant violated General Business Law § 349. Defendant correctly argues that to the extent that any such fees or costs were awarded to it by a court in a prior proceeding, the plaintiffs are not entitled to seek annulment of those costs and fees through an action for declaratory relief (*see Noto v Bedford Apts. Co., 21 AD3d 762, 764-765 [1st Dept 2005]*). However, in the documents properly before this court, there is no information as to whether any attorney's fees, late fees, or court costs were in fact assessed against either plaintiff in any court proceeding.

Nevertheless, based on the stipulated facts, plaintiffs have not established entitlement to the relief sought. Notwithstanding the nebulous August 14, 2013 letter from defendant to Gaines, there is no indication on this limited record that any late fees, attorney's fees, or court costs are currently assessed by defendant against either plaintiff. Indeed, defendant's final demand letter to Gaines sought only her $391 family share of rent.

In addition, plaintiffs do not argue that late fees are unauthorized per se or that defendant is not entitled to recovery of late fees properly imposed against a Section 8 tenant. In fact, by way of a breach of contract **[*22]** action, defendant may recover late fees appropriately assessed against plaintiffs (*see Binghamton Hous. Auth. v Douglas, 217 AD2d at 899*). Here, even assuming that any late fees assessed by defendant against plaintiffs remain outstanding, plaintiffs have not established that the imposition of such fees was unwarranted.

Damages, Costs, and Attorney's Fees

General Business Law § 349(h) states in relevant part that "[i]n addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." Plaintiffs are each entitled to the minimum damages award of $50. However, as plaintiffs have failed to provide any proof of attorney's fees or court costs accrued, they are not entitled to an award of attorney's fees or court costs.

Accordingly, it is

ADJUDGED AND DECLARED that defendant is not obligated to accept partial rent payments; and it is further

ADJUDGED AND DECLARED that defendant may not reject tender of payment that constitutes the full rental amount owed on the ground that such payment does not cover **[*23]** ancillary charges such as late fees; and it is further

ADJUDGED AND DECLARED that the three-day demands at issue in this action violate General Business Law § 349, and defendant is enjoined from serving upon plaintiffs any three-day demand that fails to list the period for which rent is allegedly owed and provides only a lump sum inclusive of ancillary charges purportedly due as "rent"; and it is further

ADJUDGED AND DECLARED that plaintiffs have not established that any attorney's fees, late fees, or court costs are currently assessed against them; and it is further

2015 N.Y. Misc. LEXIS 13226, *23

ADJUDGED that plaintiffs are each awarded $50 pursuant to General Business Law § 349; and it is further

ADJUDGED that plaintiffs' request for an award of costs and reasonable attorney's fees is denied; and it is further

ORDERED that plaintiffs shall serve a copy of this judgment with notice of entry upon defendant within 10 days of entry.

This constitutes the decision and judgment of this court.

Dated: White Plains, New York

April 9, 2015

/s/ Nicholas Colabella

Hon. Nicholas Colabella, J.H.O.

**End of Document**