UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
                                                                 :

DAMIAN BATISTA and SANDRA BATISTA,         :

                                                       :  Case No.: 1:26-cv-2557-JSR

                            Plaintiffs,      :

                                                         :

                                                     :

                  – against –         :

                                                       :

EDELMAN SCHWARTZ PLLC, ZEV SCHWARTZ,  :

1915 REALTY LLC, YONAH ROTH, and BINYOMIN  :

HERZL,                                        :

                                                     :

                           Defendants.      X

---------------------------------------------------------------------

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTIONS TO DISMISS**

# Contents

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS.................................................................................................... 1

   *Mr. and Mrs. Batista's Tenancy* ..................................................................................... 1

   **Defendants' Efforts to Collect Rent Arrears Not Owed by Mr. and Mrs. Batista** ............ 2

   **Defendants' Illegal Lawsuit Harmed Mr. and Mrs. Batista** ..................................................... 6

   **Attorney Defendants' History of Suing for Amounts Not Owed**......................................... 7

ARGUMENT......................................................................................................................... 8

I.     PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS. .............................. 8

   A.   *Monetary Harm* ................................................................................................... 8

   B.   *Emotional Distress* .................................................................................................. 9

   C.   *Intangible Harms* ............................................................................................... 11

II.   PLAINTIFFS STATE A TIMELY FDCPA CLAIM AGAINST ATTORNEY DEFENDANTS. .................................................................................................................. 13

III.  PLAINTIFFS STATE GBL § 349 CLAIMS AGAINST ALL DEFENDANTS............ 16

   A.   **Plaintiffs state a claim under GBL § 349 because demanding and suing for rent not owed is objectively deceptive.**......................................................................................... 16

   B.   **Defendants' misconduct was consumer-oriented.**........................................................... 18

   C.   **Misrepresentations in a collection lawsuit, including LT non-payment proceedings, have long been held to state claims under GBL § 349.**....................................................... 20

   D.   **Defendants' dragging out litigation after being provided documentation showing the debt was not owed was deceptive.**........................................................................................ 21

   E. **By failing to provide NYCHA pre-suit notice and omitting legally required disclosures regarding Section 8 coverage Defendants deceptively concealed complete tenant defenses from the Batistas and the Housing Court.** ............................................................................ 22

IV.  PLAINTIFFS STATE A CLAIM UNDER JUDICIARY LAW § 487 AGAINST THE ATTORNEY DEFENDANTS............................................................................................... 24

V.   PLAINTIFFS STATE A CLAIM FOR GROSS NEGLIGENCE AGAINST ALL DEFENDANTS. ................................................................................................................... 27

VI.  THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' CLAIMS. .................................................................................................... 29

CONCLUSION ................................................................................................................... 36

**Cases**

*23 Realty Assocs. v. Teigman*, 213 A.D.2d 306 (App. Div. 1st Dept. 1995) ............................... 30

*Aguaiza v. Vantage Properties, LLC*, 2009 WL 1511791 (Sup. Ct. N.Y. Cnty. May 21, 2009).. 17

*Aguaiza v. Vantage Props*., LLC, 69 A.D.3d 422, 423 (N.Y. App. Div. 1st Dep't 2010) ........... 31

*Alawlaqi v. Kelly*, 1175 Misc.2d 570 (Civ. Ct. Kings Co. 1997) ................................................. 23

*Baez v. New York State Office of Temporary and Disability Assistance,* 2026 WL 1412962 (2d
    Cir., May 20, 2026) ....................................................................................... 8, 9, 10, 11

*Baptiste-Elmine v. Richland & Falkowski, PLLC*, 2025 WL 974346 (E.D.N.Y. Apr. 1, 2025).. 12

*Benzemann v. Citibank, N.A.*, 806 F.3d 98 (2d Cir. 2015) ........................................................ 14

*Bill Birds, Inc. v. Stein Law Firm, P.C.*, 35 N.Y.3d 173, 178 (N.Y. 2020) ................................. 26

*BLT Restaurant Group LLC v. Tourondel*, 855 F.Supp.2d 4 (S.D.N.Y. 2012) ........................... 32

*Bohnak v. Marsh & McLennan Companies, Inc*., 79 F.4th 276 (2d Cir. 2023)........................ 9, 11

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004).............................. 35

*Bryant v. Casco Bay Realty Ltd. P'ship*, 2015 N.Y. Misc. LEXIS 13226 (Sup. Ct. Westchester
    Co. 2015).................................................................................................................... 23

*Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F.Supp.2d 340 (E.D.N.Y. 2010) .. 20

*Calixto v. A. Balsamo & Rosenblatt, P.C.*, 244 A.D.3d 674 (2d Dept. 2025)............ 21, 26, 30, 33

*Calka v. Kucker, Kraus & Bruh, LLP*, 1998 WL 437151 (S.D.N.Y. Aug. 3, 1998) .................... 15

*Campbell v. MBI Assocs., Inc.,* 98 F. Supp. 3d 568 (E.D.N.Y. 2015)...................................... 9, 19

*Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018) ........................................ 35

*Cavender v. Sutter Lakeside Hosp., Inc.*, 2005 WL 2171714 (N.D. Cal. Sept. 6, 2005).............. 34

*City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616 (N.Y. 2009)............................... 18

*Collazo v. Netherland Prop. Assets LLC*, 155 A.D.3d 538 (2017), *aff'd as modified*, 35 N.Y.3d
    987 (N.Y. 2020) ......................................................................................................... 31

*Colnaghi, U.S.A., Ltd. v. Jewelers Protection Services, Ltd.*, 611 N.E.2d 282 (N.Y. 1992).. 27, 28

*Colo. Capital v. Owens*, 227 F.R.D. 181 (E.D.N.Y. 2005)................................................... 27, 28

*Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO), 2025 WL 871637,
    at *9 (S.D.N.Y. Mar. 20, 2025) .................................................................................... 29

*Diaz v. Portfolio Recovery Assocs., LLC,* No. 10 CV 3920 ERK, 2012 WL 661456, at *7-8
    (E.D.N.Y. Feb. 28, 2012) ("*Diaz* R&R"), *report and recommendation adopted,* No. 10 CV
    3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012).......................................... 25

*Dunn v. Adams, Stepner, Woltermann & Dusing, P.L.L.C.*, 2019 WL 6135043 (E.D. Ky. Nov.
    19, 2019) .................................................................................................................... 13

*Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum*, 2018 WL 2247206 (S.D.N.Y. 2018) . 32

*East 168th St. Assocs. v. Castillo*, 60 Misc.3d 774, 2018 NY Slip Op 28165 (Civ. Ct. Bx. Co.
    2018) .......................................................................................................................... 23

*Eng v. Pacific Clinics*, 2013 WL 12129611 (C.D. Cal. May 17, 2013) ...................................... 34

*Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610 (1st Dep't 2015)................................. 25

*Figurowski v. Marbil Investors, LLC*, 2015 WL 4000500 (E.D.N.Y. July 1, 2015).................... 34

*Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 WL 5848616 (E.D.N.Y. Sept. 30, 2020) ................................................................................................ 11, 18

*Fritz v. Resurgent Capital Services LP*, 955 F.Supp.2d 163 (E.D.N.Y. July 24, 2013) .............. 23

*Gomez v. Resurgent Capital Sevices, LP,* 129 F.Supp.3d 147 (S.D.N.Y. 2015) ........................ 11

*Harry v. Total Gas & Power N. Am.*, *Inc.*, 889 F.3d 104 (2d Cir. 2018) ....................................... 9

*Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013) ............................................................................................ 27, 28

*Hernandez v. Mauzone Home Kosher Products of Queens, Inc.*, 2013 WL 5460196 (E.D.N.Y. Sept. 30, 2013) ............................................................................................................ 34

*Hobish v. AXA Equitable Life Insurance Company*, 43 N.Y.3d 442 (N.Y. 2025) ....................... 33

*Homestead Equities, Inc. v. Washington*, 176 Misc.2d 459 (Civ. Ct. Kings Co. 1998) ............... 22

*Hunter v. Palisades Acquisition XVI, LLC*, 2017 WL 5513636 (E.D.N.Y. Nov. 16, 2017) ........ 17

*Iacovo v. Magguilli*, 2025 WL 1135471 (E.D.N.Y. Apr. 17, 2025) ............................................ 21

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442 (2d Cir. 1998) .......... 29, 35

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205 (2d Cir. 2004) ............................................. 29, 35

*Lautman v. 2800 Coyle St. Owners Corp*, 2014 WL 2200909 (E.D.N.Y. May 23, 2014) 17, 32, 33

*Lozano v. Grunberg*, 195 A.D.2d 308 (App. Div. 1st Dept. 1993) ............................................. 30

*Lyon v. Whisman*, 45 F.3d 758 (3d Cir. 1995) .......................................................................... 34

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) .................... 8, 9, 10

*Makhnevich v. Bougopoulos*, 2022 WL 939409 (E.D.N.Y. Mar. 29, 2022), *aff'd,* 2024 WL 1653464 (2d Cir. Apr. 17, 2024) ............................................................................... 12

*Martinez v. LVNV Funding, LLC*, 2016 WL 5719718 (E.D.N.Y. Sept. 30, 2016) ....................... 17

*Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259 (8th Cir. 1992) .......................................... 15

*McCrobie v. Palisades Acquisition XVI, LLC*, 359 F.Supp.3d 239 (W.D.N.Y. 2019) ................. 19

*McCrobie v. Palisades Acquisition XVI, LLC*, 664 Fed.Appx. 81 (2d Cir. 2016) ....................... 14

*Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636 (S.D.N.Y. 2013) .................... 17

*Myerson v. Prime Realty Services, LLC*, 7 Misc.3d 911 (Sup. Ct. NY Co. 2005) ....................... 30

*Oliver v. U.S. Bancorp*, 2015 WL 4111908 (S.D.N.Y. July 8, 2015) ........................................ 15

*Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.,* 751 F. Supp. 3d 195 (E.D.N.Y. 2024) ............... 9, 12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741 (N.Y. 1995) ................................................................................................ 16, 18, 30

*Parker v. Pressler & Pressler, LLP*, 650 F.Supp.2d 326 (D.N.J. 2009) ..................................... 15

*People by James v. River Valley Ests.,* LLC, 87 Misc. 3d 1221(A) (N.Y. Sup. Ct. 2025) ........... 31

*Promisel v. First American Artificial Flowers, Inc.*, 943 F.2d 251 (2d Cir. 1991) ..................... 29

*Remler v. Cona Elder Law, PLLC*, No. 21-CV-5176(ARR)(LB), 2022 WL 4586243 (E.D.N.Y. Sept. 29, 2022) ............................................................................................................ 20

*Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U.*, 605 F.2d 1228 (2d Cir. 1979) ................................................................................................................ 32

*Rotkiske v. Klemm*, 589 U.S. 8 (2019) ...................................................................................... 15

*Rotterdam Ventures, Inc. v. Ernst & Young LLP*, 300 A.D.2d 963 (3d Dep't 2002) .................. 29

iii

*Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116 (E.D.N.Y. June 7, 2011) ........................................................................................................................... 19

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109 (S.D.N.Y. 2016)........................................................................................... 19

*Sanchez v. Ehrlich*, No. 16-cv-8677 (LAP), 2018 WL 2084147 (S.D.N.Y. Mar. 29, 2018). 19, 21, 23, 24

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995)..................................... 18

*Shearon v. Comfort Tech Mech. Co.*, 2014 WL 1330751 (E.D.N.Y. Mar. 31, 2014) ................. 34

*Sierra v. Foster & Garbus*, 48 F.Supp.2d 393 (S.D.N.Y. 1998) ................................................. 15

*Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892 (N.Y. 1999)............................... 16, 17, 33

*Spitz v. Caine & Weiner Co., Inc.*, 2024 WL 69089, (E.D.N.Y. January 5, 2024)....................... 12

*Torres v. Gutman, Mintz, Baker & Sonnenfeldt P.C.*, No. 17-cv-4109 (KAM) (CLP), 2018 WL 1545687 (E.D.N.Y. Mar. 29, 2018) ...................................................................... 19, 21

*Town of Oyster Bay v. Northrop Grumman Systems Corp.*, 2010 WL 11623604 (E.D.N.Y. May 21, 2010) ..................................................................................................................... 34

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ................................................ 8, 9, 11, 33

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) .................................... 29, 32, 34, 35

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021).......................................................................... 8

*Varela v. Investors Ins. Holding Corp.*, 615 N.E.2d 218 (N.Y. 1993) ........................................ 17

*Villalba v. Houslanger & Assocs., PLLC*, 2022 WL 900538 (E.D.N.Y. Mar. 28, 2022)....... 17, 25

*Villas of Forest Hills Co. v Lumberger*, 128 A.D.2d 701 (2d Dept. 1987) .................................. 22

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP*, 549 F.3d 100, 106 (2d Cir. 2008).. 8

*Wadsworth v. Kross, Lieberman, & Stone, Inc.*, 12 F.4th 665 (7th Cir. 2021)............................... 11

*Water Street Leasehold LLC v. Deloitte & Touche LLP*, 19 A.D.3d 183 (1st Dep't 2005) ......... 29

*Weaver v. Boriskin*, 751 Fed.Appx. 96 (2d Cir. 2018) ................................................................. 14

*Westchester Gardens, LP v. Lanclos*, 43 Misc 3d 681, 2014 NY Slip Op 24062 (Civ Ct. Bx. Co. 2014) ...................................................................................................................... 22

*Williams v. New York City Housing Authority*, 975 F. Supp. 317 (S.D.N.Y. 1997)..................... 5

*Williams v. New York Hous. Auth.*, 1994 WL 323634 (S.D.N.Y. July 5, 1994) .......................... 22

*Wilson v. Selip & Stylianou, LLP*, 24-CV-4108, 2026 WL 851339 (S.D.N.Y. March 27, 2026) 26

*Young v. Thieblot Ryan, P.A.*, 2011 WL 6217007 (D. Md. Dec. 12, 2011) ................................ 13

**Statutes**

15 U.S.C. § 1692 et. seq............................................................................................................ passim
24 CFR 982.310 ................................................................................................................. 22, 23, 24
New York General Business Law § 349 et seq........................................................................... passim
New York Judiciary Law § 487 .................................................................................................. passim

## PRELIMINARY STATEMENT

Plaintiffs Damian Batista and Sandra Batista ("Mr. and Mrs. Batista" or "the Batistas") bring this action against Defendants Edelman Schwartz PLLC ("Edelman Schwartz") and Zev Schwartz ("Mr. Schwartz") (collectively "Attorney Defendants") for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. and violations of New York Judiciary Law § 487 et seq.; and against the Attorney Defendants and Defendants 1915 Realty LLC ("1915 Realty"), Yonah Roth ("Mr. Roth"), and Binyomin Herzl ("Mr. Herzl") (collectively "Landlord Defendants") for their violations of the New York General Business Law § 349 et seq. and for common law gross negligence. These violations stem from debt collection actions by the Defendants which culminated in a meritless nonpayment eviction suit commenced in Bronx County Housing Court by Edelman Schwartz on behalf of the Landlord Defendants, titled *1915 Realty LLC v. Damian Batista, Sandra Batista*, Index No. LT-310915-25/BX ("LT Proceeding"). Plaintiffs submit this memorandum of law in opposition to Defendants' motions to dismiss ("Landlord Mem." and "Atty. Mem.")

## STATEMENT OF FACTS

### Mr. and Mrs. Batista's Tenancy

Mr. and Mrs. Batista have lived in their rent-stabilized apartment for eighteen years. Complaint, ¶ 16. The Batistas are participants in the federal Housing Choice Voucher Program ("Section 8") administered by the New York City Housing Authority ("NYCHA"), and under Section 8 program regulations, NYCHA determines the share of the monthly rent the Batistas must pay based on their income. *Id.*, ¶¶ 19-20. NYCHA pays the difference between the Batistas' share of the rent and the legally regulated monthly rent directly to 1915 Realty. *Id.*, ¶ 21. NYCHA may suspend Section 8 payments when a landlord does not maintain the apartment in compliance with

1

Housing Quality Standards ("HQS") required under the Section 8 program. *Id.*, ¶ 24-25. Mr. and Mrs. Batista cannot legally be held responsible for the Section 8 portion of the rent. *Id.*, ¶ 26-27.

Mr. and Mrs. Batista's current monthly share of the rent, as established by NYCHA, is $707.00. *Id.*, ¶ 29. Prior to this, for the months relevant to this proceeding, the Batistas' share of the monthly rent was $1,023.00 between July 1, 2021, through July 31, 2022; $973.00 between August 1, 2022, through May 31, 2023; $1,076.00 between June 1, 2024, through July 31, 2024; and $892.00 between August 1, 2024, through August 31, 2025. *Id.*

On December 11, 2023, the building where Mr. and Mrs. Batista reside partially collapsed, leaving the structure open to the elements. *Id.*, ¶ 34. This resulted in the issuance of a vacate order because the conditions were found to be "imminently perilous to life, public safety, and the safety of occupants or danger to property" and the entire structure was deemed "unsafe to enter and/or occupy." *Id.*, ¶ 34. The collapse led to a rent reduction order by New York State Homes and Community Renewal ("HCR") that established a legal regulated rent of $1.00 per month as of December 11, 2023. *Id.*, ¶ 35. The rent was restored effective January 4, 2024. *Id.* A second rent reduction order was issued because of a failure to maintain services in the Batistas' apartment, including an uneven kitchen floor, loose bathroom sink, broken bedroom door, broken living room window, and plaster and paint needed throughout the apartment. *Id.*, ¶ 39.

***Defendants' Efforts to Collect Rent Arrears Not Owed by Mr. and Mrs. Batista***

Mr. and Mrs. Batista receive rent invoices from Landlord Defendants each month that that show a charge for the total contract rent for their apartment,[1] rather than the tenant portion for which they are legally responsible. *Id.*, ¶ 48. The Batistas have on occasion, on account of these

---

[1] The rent ledger provided by Defendants in Bronx County Housing Court shows that the Batistas were charged $2,051.38 in monthly rent at least as early as July 2022; the charge increased to $2,112.82 in June 2024, and then to $2,170.92 in June 2025. Complaint Ex. E. The latter two amounts do not take into account the rent reduction order in effect as of March 1, 2024. Complaint Ex. H.

erroneous bills, paid more than they were required to pay. *Id.*, ¶¶ 42, 45. This, along with other deceptive accounting practices, has resulted in both overpayments of rent[2] and overcharges[3] which have accumulated in the form of fictitious arrears.

The Landlord Defendants engaged in another deceptive practice in August 2022 and then again in June 2025, when they failed to submit certifications to NYCHA to increase Mr. and Mrs. Batista's rent before doing so on their rent bills and tenant statement. *Id.*, ¶¶ 33, 41, 59. The Section 8 subsidy therefore did not increase to cover the higher rent, for that month and for multiple subsequent months, and the shortage that resulted from the inadequate NYCHA Section 8 share was either wrongly paid by the Batistas or improperly added to the Batistas' arrears. *Id.*

When NYCHA suspended the Section 8 subsidy from January 2024 through November 2024, due to deplorable conditions including the partial collapse and vacate order, *Id.*, ¶¶ 37, 1915 Realty charged the Batistas for the total contract rent, illegally adding the Section 8 charges to Mr. and Mrs. Batista's arrears. *Id.* Further, 1915 Realty did not prorate the rent for the months of December 2023 and January 2024 on the Batistas' rent ledger despite the rent reduction order that established a legal regulated rent of $1.00 per month for the period from December 11, 2023 to January 4, 2024. *Id.*, ¶¶ 35-36; Complaint Ex. E. NYCHA resumed regular subsidy payments in December 2024, and in January 2025, NYCHA Section 8 made an additional payment that covered some of the arrears that had accumulated; even with that payment, $8,176.24 in impermissible arrears remained on the Batistas' rent ledger. Complaint, ¶¶ 37-38.

---

[2] The overpayment totals at least $3,000.00. Complaint ¶ 45. This remains true even if the overpayments that the Landlord Defendants argue are time-barred are removed, as the adjustment would not alter the fact that the Landlord Defendants collected money in excess of the legally collectible rent from Mr. and Mrs. Batista as a result of fraudulent accounting practices. *Id.*; Landlord Mem. p. 10.

[3] The overcharge of Mr. and Mrs. Batista totals at least $8,936.58; $401.04 for the October 2022 through May 2023 overcharge, plus $8,176.24 for suspended NYCHA payments due to HQS violations for January 2024 through November 2024, plus $359.30 for the overcharge in June, July, and August 2025. Complaint, ¶ 41.

3

The Landlord Defendants also failed to credit the Batistas' account $2,500.00 that was secured in February 2025 in a settlement in an earlier proceeding. *Id.*, ¶ 43. The $2,500.00 was misdirected to the Section 8 portion of the rent rather than to only Mr. and Mrs. Batista's share as was intended by the settlement. *Id.*

Attorney Defendants sent Mr. and Mrs. Batista a rent demand letter dated February 18, 2025, alleging rental arrears amounting to $8,339.60, comprised of $1,121.73 for December 2023, $2,050.28 for January 2024, $1,002.67 for February 2024, $1,013.28 each for April 2024 and May 2024, $1,036.82 each for June 2024 and July 2024, and $64.72 for August 2024. *Id.*, ¶ 56. The Defendants' own ledger shows that Mr. and Mrs. Batista timely paid their share of the rent for all of the months in the rent demand. *Id.*; Complaint Ex. E.

On or about March 31, 2025, Attorney Defendants commenced a non-payment proceeding against Mr. and Mrs. Batista in Bronx County Housing Court ("LT Proceeding"), threatening to evict them for alleged rent arrears of $9,132.76 from May 2024 through March 2025 that the Batistas did not owe. Complaint, ¶¶ 47, 57-58. These alleged arrears were fraudulently presented in the petition because the Petition alleged arrears that, for most months, matched the Batistas' tenant share, and the Batistas had faithfully paid their share each month. *Id.* ¶¶ 54, 58. Even a cursory review of the rent ledger would have clearly shown that the bulk of the arrears resulted from the suspension of the Section 8 subsidy. *Id.*, ¶ 54. Mr. Schwartz nevertheless verified the Petition, affirming under penalty of perjury that it was true to his knowledge. *Id.*, ¶ 64.

As NYCHA Section 8 voucher holders, Mr. and Mrs. Batista were entitled to additional protections in the LT Proceeding, but these protections were circumvented by Defendants. *Id.*, ¶¶ 60-62. The petition failed to plead that Mr. and Mrs. Batista are NYCHA Section 8 voucher holders, which deprived the Houring Court of information necessary for the proper adjudication

4

of the proceeding. *Id.*, ¶¶ 60-61. The petition also failed to plead compliance with the Second Partial Judgment ("Second *Williams* Consent Decree") in *Williams v. New York City Housing Authority,*[4] or serve NYCHA with copies of the pleadings as required by federal law. *Id.*, ¶ 60; *Williams v. New York City Housing Authority*, 975 F. Supp. 317 (S.D.N.Y. 1997). Pursuant to *Williams,* Defendants were required to certify to NYCHA the factual allegations underlying the proceeding. *Id.,* ¶ 62. Had they presented the facts accurately to NYCHA, it would have been clear to NYCHA that the landlord was seeking the subsidy portion of the rent, *Id.*, ¶ 62, and NYCHA may not have approved the lawsuit. This process could have spared the Batistas the anguish and stress of the Housing Court proceeding.

Mr. and Mrs. Batista were unrepresented when the nonpayment case began and had to go to Bronx County Housing Court to submit a *pro se* answer. *Id.,* ¶ 66. After an initial virtual hearing, the case was calendared for July 1, 2025. *Id.,* ¶ 67. The Batistas again had to travel to court on that day to defend themselves, and were connected with Bronx Legal Services to assist with their case. *Id.* The case was adjourned to August 22, 2025, and then again to October 24, 2025. *Id.,* ¶ 68.

The Batistas' counsel for the LT Proceeding wrote to Attorney Defendants multiple times to show that Mr. and Mrs. Batista owed no rent. *Id.,* ¶¶ 69-70, 73, 75. The first two emails were on September 21, 2025, and October 1, 2025.These emails provided Attorney Defendants with ample notice that the case was meritless; yet, in the face of this evidence and repeated requests to end the suit, Attorney Defendants continued to litigate the LT Proceeding until April 2026. Atty. Mem. pp.5-6; Atty. Decl. Ex. 2.

On October 21, 2025, Mr. and Mrs. Batista, via counsel, filed a motion for an amended answer and summary judgment, or, in the alternative, dismissal. *Id.,* ¶ 71. The motion included

---

[4] A copy of the Second *Williams* Consent Decree has been provided to the Court as an exhibit attached to Plaintiffs' counsel's declaration.

documentation that demonstrated that the Batistas did not owe any rental arrears. *Id.* At the October 24, 2025 appearance, the proceeding was adjourned to December 22, 2025 for continued motion practice. *Id.,* ¶ 72.

The Batistas' counsel sent an email to Attorney Defendants on December 12, 2025, reiterating that Mr. and Mrs. Batista did not owe any rent and the case should be dismissed, and referenced documents that had been filed with the motion for summary judgment. *Id.,* ¶ 73. Mr. Schwartz requested copies of those documents and counsel provided copies of the NYCHA documents, payment information, and the rent reduction orders. *Id.*

At the December 22, 2025 court appearance, an attorney of counsel to Attorney Defendants requested a further adjournment for a final opportunity to file opposition, rather than discontinue the proceeding. *Id.,* ¶ 74. Another email was sent to Attorney Defendants on February 3, 2026, again requesting dismissal of the lawsuit because the Batistas did not owe any rent. *Id.,* ¶ 75.

Though Attorney Defendants requested multiple opportunities to file opposition papers, they did not ultimately file any. *Id.,* ¶ 74. Mr. Schwartz finally acknowledged that the petition was satisfied when he discontinued the LT Proceeding on April 22, 2026, but this was a delay of more than one year after having filed the suit, six months after the Batistas' counsel provided him with clear evidence that the Proceeding was improper, four months after the motion seeking summary judgment or dismissal, and occurred only after this case was filed. Atty. Decl. Ex. 2; Complaint ¶¶ 69, 71.

***Defendants' Illegal Lawsuit Harmed Mr. and Mrs. Batista***

The more than year-long ordeal harmed Mr. and Mrs. Batista, who experienced injury in the loss of time and wages, as well as payment for transportation to Bronx Housing Court and to meet with their attorney, and injury in the form of significant emotional distress. *Id.,* ¶¶ 100-109.

6

The harms to the Batistas are discussed at length below in the Standing section.

***Attorney Defendants' History of Suing for Amounts Not Owed***

Attorney Defendants have filed other lawsuits seeking rent not owed by other tenants. *Id.*, ¶ 78. Attorney Defendants have filed cases in which the rent demands and/or petitions allege arrears that include or are entirely made up of the portion of the rent covered by the Section 8 subsidy and not due or owed by the tenant. *Id.*, ¶ 79. In these other cases, Attorney Defendants have also misrepresented that they have performed a meaningful attorney review of the lawsuit prior to filing. *Id.*, ¶ 80. This deceptive practice of seeking rent not owed has, upon information and belief, has injured similarly situated tenants. *Id.*, ¶ 81.

Three recent nonpayment lawsuits illustrate that this conduct has been directed toward, and potentially harmed members of the public beyond Mr. and Mrs. Batista. *Id.*, ¶ 82. In each of the following cases, Attorney Defendants brought nonpayment lawsuits premised on arrears that were not owed, and in each case, Mr. Schwartz represented to the court and to the tenant that he had performed a meaningful attorney review of the petition. *Id.*, ¶¶ 84, 89, 94. In *Arnow & Grace LLC v. Lashawn Lucas* (LT-323335-22/BX), the proceeding was ultimately dismissed and the judge's decision indicated that dismissal was warranted because the money sought in the proceeding was the NYCHA Section 8 portion of the rent. *Id.*, ¶¶ 83-87. In *Boston Corner Crotona LLC v. Antonio Mijares* (LT-308026-23/BX), the petition did not plead the Section 8 status of the subject premises, yet the stipulation of discontinuance so ordered by the judge indicated that the respondent is a NYCHA Section 8 recipient and the balance represented the Section 8 monies not paid for non-compliance with HQS and not chargeable to the respondent. *Id.*, ¶¶ 88-92. And in *East 187 Realty LLC v. Yerlin Martinez et al.* (LT-328656-24/BX), the petition also failed to plead the Section 8 status of the subject premises and the stipulation of discontinuance so ordered by the judge

7

demonstrated that the petition had asserted arrears that included significantly more than just the tenant share of the rent. *Id*., ¶¶ 93-98.

## ARGUMENT

### I.    PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS.

In order to prove standing, plaintiffs must demonstrate three elements: 1) injury in fact that is "concrete, particularized, and actual or imminent," 2) that the injury "was likely caused by the defendant," and 3) redressability. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021). Because standing is challenged based on the pleadings, courts must accept as true all material allegations of the complaint and construe them in the plaintiff's favor. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP*, 549 F.3d 100, 106 (2d Cir. 2008).

The Defendants do not contest traceability or redressability. The Attorney Defendants, however, argue that Plaintiffs cannot establish standing because they have not alleged a plausible concrete injury. Atty. Mem. pp. 11-14. Concrete injuries can be physical or monetary. *TransUnion v. Ramirez, supra.*, at 425. Emotional distress can also be a concrete injury. *Baez v. New York State Office of Temporary and Disability Assistance,* 2026 WL 1412962 (2d Cir., May 20, 2026). Finally, a plaintiff can establish standing based on an intangible injury if the harm suffered "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion, supra.,* at 417. Mr. and Mrs. Batista have alleged plausible monetary, emotional distress, and intangible injuries traceable to Defendants' conduct, each of which is sufficient to establish standing.

### A.    *Monetary Harm*

Plaintiffs allege that they incurred costs "for travel back and forth to Bronx Housing Court

8

and to meetings and consultations with their attorneys" solely for the purpose of defending the case meritless case brought against them by Defendants and that Mr. Batista has lost time from work. Complaint ¶ 109. *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568 (E.D.N.Y. 2015), cited by Attorney Defendants at p. 13 was not as to standing but rather that de minimus actual damages is relevant to determining the amount of statutory damages, not FDCPA liability.

Contrary to Attorney Defendants' argument, monetary harms unambiguously confer standing. *TransUnion, supra.*, at 425 ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III"). The Second Circuit, following *TransUnion*, has held that out-of-pocket costs arising out of a Defendant's misconduct "independently support standing." *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. 2023). It is the fact of these costs that make them a concrete harm, not their amount. *See Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.,* 751 F. Supp. 3d 195, 202 (E.D.N.Y. 2024) (parking fees and lost wages as a result of defending a meritless lawsuit are concrete injuries "despite the relatively low dollar amounts at issue"). The Batistas' monetary harms are thus by themselves sufficient harm to establish standing.

### B.     *Emotional Distress*

Plaintiffs also have standing due to their allegations of emotional distress. The Second Circuit has unambiguously held that "[a] plaintiff may satisfy the injury-in-fact requirement by alleging emotional distress because of actions taken by a defendant if the allegations are supported by 'enough facts to make it plausible that [the plaintiff] did indeed suffer the sort of injury that would entitle them to relief.'" *Baez*, supra. at 3 (quoting *Maddox v. Bank of New York Mellon Tr. Co.*, 19 F.4th 58, 66-66 (2d Cir. 2021) and *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018)). Because their detailed allegations of emotional distress due to "severe

housing insecurity" were "wholly [ ] commensurate with the stimulant," two of the plaintiffs in *Baez* were found to have standing. *Id.* at \*4 (quoting *Maddox, supra.*, at 66).

In *Baez*, the plaintiffs alleged that they were placed at risk of homelessness because government agencies discriminated against them in the distribution of federal rental assistance funds and miscalculated the rents they were obliged to pay under federal regulations. One of the plaintiffs who was found to have standing alleged that she was left "alarmed, confused, and helpless" by the Defendants' actions and that those actions had caused her "an extreme level of emotional distress." The other plaintiff found to have standing similarly alleged an "extreme level of emotional distress," "confusion," and "anxiety" because of the "uncertainty over her ability to pay rent and remain in her home" caused by Defendants' actions. *Baez*, *supra.*, at 4.

The allegations of emotional distress made by Mr. and Mrs. Batista, who like the *Baez* plaintiffs were caused by Defendants to fear loss of their home, are similar. The Batistas allege that Mr. Batista has "mental anguish and stress" as a result of the meritless landlord-tenant proceeding brought against him and his wife by the Defendants. Complaint ¶100. He has further described feeling as if "the world came crashing down" and that he experiences "a constant dread, worry, and fear." Complaint ¶¶ 101, 102. Mr. Batista also says that he "began walking frequently to deal with the stress and eating less frequently losing between 15 and 20 pounds and dropping several waist sizes" because of stress due to the lawsuit. Complaint ¶ 103. Mr. Batista was so visibly stressed that his relatives pleaded with him to go to a doctor, and in fact Mr. Batista has higher blood pressure as a result of the ordeal; his job performance has also been negatively impacted. Complaint ¶¶ 103-105, 117. Similarly, Mrs. Batista reports that she felt as though "she could barely breathe" when she first learned of the lawsuit, that she "struggles to eat and sleep," and that "she cries frequently" as a result of the lawsuit. Complaint ¶ 108. The Batistas also allege

10

that the lawsuit has caused them both the feel, "embarrassed, humiliated, and worn-down." Complaint ¶ 101. Like the *Baez* plaintiffs, Mr. and Mrs. Batista have made detailed allegations of emotional harm commensurate with their fear of losing their home. Accordingly, like the *Baez* plaintiffs, their allegations of emotional harm are sufficient to establish standing.[5]

## C.    *Intangible Harms*

Plaintiffs also have standing because they have suffered intangible harms "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion*, *supra.*, at 425. The Supreme Court identified some of these harms as being "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* The Court then held that plaintiffs in *TransUnion* whose credit reports had been distributed to third parties with inaccurate and potentially harmful information in them had standing because they had suffered a harm with a close relationship to a harm "traditionally recognized as providing a basis for a lawsuit in American courts—namely, the reputational harm associated with the tort of defamation." *TransUnion*, *supra*., at 432. It is important to note that what mattered for the standing analysis was that the harm suffered by the plaintiffs was analogous to the harm recognized by courts in defamation cases, not that the plaintiffs' cause of action was the same as or even analogous to the cause of action for defamation. As the Second Circuit has explained, "what matters is that the intangible harm arising from [Defendant's action] bears a relationship to *an injury* with a close historical or common-law analogue." Bohnak, supra., at 286 (emphasis added).

---

[5] The two in-circuit cases cited by the Attorney Defendants in their argument against standing based on emotional distress do not address standing. *See Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 WL 5848616 (E.D.N.Y. Sept. 30, 2020); *Gomez v. Resurgent Capital Services, LP,* 129 F.Supp.3d 147 (S.D.N.Y. 2015). Moreover, in both cases plaintiffs were permitted to proceed and in *Gomez,* plaintiff was awarded partial summary judgment. It is true that the Seventh Circuit in *Wadsworth v. Kross, Lieberman, & Stone, Inc.,* 12 F.4th 665 (7th Cir. 2021), held that emotional distress does not satisfy the injury-in-fact requirement for standing, but that is not the law in this circuit.

Here, as a result of Defendants' lawsuit against them, which falsely alleges that they do not pay their rent, the Batistas have suffered a reputational harm like the reputational harm that was sufficient to confer standing on some of the *TransUnion* plaintiffs. Moreover, courts have recognized that the harms suffered by plaintiffs pursuing abusive debt collection claims are also "similar to the harms of malicious prosecution, wrongful use of civil proceedings, and abuse of process." *Onfroy v. L. Offs. of Geoffrey T. Mott, P.C.*, 751 F. Supp. 3d 195, 202 (E.D.N.Y. 2024). *See Baptiste-Elmine v. Richland & Falkowski, PLLC*, 2025 WL 974346, at *7–8 (E.D.N.Y. Apr. 1, 2025) (holding FDCPA plaintiffs had standing and citing to cases holding that FDCPA plaintiffs suffered harms analogous to plaintiffs asserting fraudulent misrepresentation and abuse of process); *Makhnevich v. Bougopoulos*, 2022 WL 939409, at *5, n. 7 (E.D.N.Y. Mar. 29, 2022), *aff'd*, 2024 WL 1653464 (2d Cir. Apr. 17, 2024) (holding FDCPA plaintiff had standing and relying on cases finding that such plaintiffs suffered harms closely analogous to "unjustifiable-litigation" and "wrongful use of civil litigation" torts).

Attorney Defendants cite *Spitz v. Caine & Weiner Co., Inc.*, 2024 WL 69089, (E.D.N.Y. January 5, 2024), for the proposition that allegations by the plaintiff in that case did not "plausibly allege that she experienced conduct analogous to negligent infliction of emotional distress, let alone that such an analogue could establish Article III standing for an FDCPA claim." *Id.* at *5; Atty. Mem. pp. 13-14. First, Plaintiff is not arguing a common law analogue to negligent emotional distress but rather wrongful civil proceedings. Moreover, this court should not find the reasoning of the *Spitz* court persuasive in this case because Plaintiffs' allegations are different than the allegations of the plaintiff in *Spitz,* because Plaintiffs do not premise their standing argument on an analogy to the harms suffered by plaintiffs in negligent infliction of emotional distress cases, and because the *Spitz* court appears to have considered whether the defendants' conduct was

12

analogous to the conduct of defendants in such cases, not whether the harms alleged by the plaintiff were analogous to the harms experienced by plaintiffs in such cases.

Mr. and Mrs. Batista need only establish injury-in-fact by showing monetary harm, emotional distress, or harms analogous to those traditionally recognized by American courts. Because they have done all three, there can be no doubt that they have pleaded sufficient harm to satisfy the injury-in-fact element of standing.

## II.    PLAINTIFFS STATE A TIMELY FDCPA CLAIM AGAINST ATTORNEY DEFENDANTS.

The Attorney Defendants do not dispute FDCPA liability on the merits, only whether the claims are timely. Atty. Mem. pp. 8-11. They argue that the FDCPA claims arising from the filing, serving, and continued litigation of a non-payment action all relate back to a letter the Attorney Defendants sent demanding payment and threatening to file a non-payment action. Atty. Mem. pp. 9-11. This is wrong. Commencing a non-payment lawsuit is a separate violation from the rent demand that preceded it.

Where there has been a pattern of conduct, where each action is independently sufficient to violate the FDCPA, and the final act in the pattern occurred within the limitations period a court has separate grounds to find the claim within the FDCPA's statute of limitations without needing to rely on a continuing violation theory. The statute of limitations begins anew and runs separately for each discrete violation of the FDCPA, notwithstanding that the violation is repetitive of an earlier violation in a series of communications or other collector actions which occurred outside the limitations period. *See Young v. Thieblot Ryan, P.A.*, 2011 WL 6217007 (D. Md. Dec. 12, 2011). *See also Dunn v. Adams, Stepner, Woltermann & Dusing, P.L.L.C.*, 2019 WL 6135043, at *3 (E.D. Ky. Nov. 19, 2019).

The petition is a separate violation of the FDCPA from the rent demand; the rent demand

promised litigation *if* payment was not made and possession was not surrendered, and sought a different amount than what was sued for, for a different set of months. The debt alleged in the rent demand only had partial overlap with the debt sued for, and the rent demand cannot be said to have put the Batistas on notice of the misrepresentations to later be made in the petition—because those misrepresentations were different in both amount and character. Complaint ¶¶ 55-58.

Under the FDCPA, the statute of limitations begins to run when the consumer is injured by the complained-of conduct. When a consumer sues for a violation arising from a lawsuit, for example, the cause of action accrues when the consumer becomes aware of the lawsuit, not when it is filed. *Benzemann v. Citibank, N.A.*, 806 F.3d 98, 101 (2d Cir. 2015). By the same logic, an earlier violation (the rent demand) which carries one harm (the fear of potentially being brought into eviction court) does not start the statute of limitations period for a later, different violation (being sued, for a different amount and different months than were contained in the rent demand) which carries a different harm (actually being a defendant in eviction court who must fight against the possibility of a money judgment and eviction.) *See also Weaver v. Boriskin*, 751 Fed.Appx. 96, 98-99 (2d Cir. 2018) (finding that claims arising from all alleged violations, starting in 2009, prior to February 2015 were time-barred by debtor's filing of suit in February 2016); *McCrobie v. Palisades Acquisition XVI, LLC*, 664 Fed.Appx. 81, 83-84 (2d Cir. 2016) (finding 2014 income execution, and not 2007 default judgment pursuant to which income execution was secured, was proper accrual date for plaintiff's FDCPA claim).

Further, even if there were some overlap in the misrepresentations, Attorney Defendants cite no cases where a lawsuit relates back to a collection letter for statute of limitations purposes. The only case cited which even gestures in this direction, *Sierra v. Foster & Garbus*, is distinguishable: in *Sierra*, the only plausible violation alleged by the plaintiff was the inclusion of

14

attorneys' fees in a settlement agreement which the plaintiff had entered more than one year prior to his filing suit under the FDCPA. The settlement agreement provided actual notice to the plaintiff (who did not dispute having breached the settlement agreement and thereby owing the alleged debt) of the defendant debt collector's intent to sue and seek attorney's fees should he breach the settlement agreement. *Sierra v. Foster & Garbus*, 48 F.Supp.2d 393, 395 (S.D.N.Y. 1998).

None of the other cases cited by Attorney Defendants are on point. Plaintiffs do not invoke a discovery rule seeking equitable tolling as rejected by *Rotkiske v. Klemm*, 589 U.S. 8 (2019). *Oliver v. U.S. Bancorp* only relates to misrepresentations made within the limitations period, but in the context of a lawsuit filed several years outside the limitations period. *Oliver v. U.S. Bancorp*, 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015) ("That some of the alleged misrepresentations in the Foreclosure Action Complaint were repeated in subsequent state court filings does not amount to a new violation of the FDCPA and does not restart the statute of limitations".) *Parker v. Pressler & Pressler LLP* specifically identifies the limitations period as beginning "either […] when [Defendant] filed the state action […] or […] when service was properly effected." *Parker v. Pressler & Pressler, LLP*, 650 F.Supp.2d 326, 338 (D.N.J. 2009). *Calka v. Kucker, Kraus & Bruh, LLP* identifies the same beginning date to the statute of limitations period: "the date the State Action was filed." *Calka v. Kucker, Kraus & Bruh, LLP*, 1998 WL 437151 (S.D.N.Y. Aug. 3, 1998). *Mattson v. U.S. West Commc'ns, Inc.* is a case in which the only violation of the FDCPA alleged by the plaintiff was a pair of misleading letters, without any litigation; crucially, *Mattson* also held that the date of the *second* misleading letter was the relevant statute of limitations date for any alleged violation arising from the second letter, implicitly rejecting any argument that the first violation put the plaintiff on notice of the second violation. *Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992).

### III.    PLAINTIFFS STATE GBL § 349 CLAIMS AGAINST ALL DEFENDANTS.

To state a claim under New York General Business Law § 349, a plaintiff must show that the "defendant is engaging in an act or practice that is misleading in a material way and that plaintiff has been injured by reason thereof," and, further, that defendant's conduct is "consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995).

#### A.    Plaintiffs state a claim under GBL § 349 because demanding and suing for rent not owed is objectively deceptive.

The Landlord Defendants do not deny that their attempts to collect rent not owed--through litigation, threats of litigation, and billing statements--were deceptive. Landlord Mem. pp. 4, 5. Rather, they argue that the Batistas previously received NYCHA tenant share letters, had knowledge of their rent reduction order, and sent letters to the Landlord Defendants about their rent. *Id*. pp. 4-9. Therefore, the Landlord Defendants maintain, their later housing lawsuit, their law firm's threat of suit, as well as their billing statements, could not be deceptive. *Id*.

This is not the law. "Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim." *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 897 (N.Y. 1999) (citing *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744-45). A plaintiff need not be actually misled so long as the materially misleading or deceptive conduct was consumer-oriented and caused actual injury. *Id.* Attorney Defendants cite a number of cases in support of their argument that Plaintiffs were required to plead that they had actually been deceived; however, each case either stands for a different proposition or is contradicted by controlling New York Court of Appeals precedent. *Varela v. Investors Ins. Holding Corp.* stands for the proposition that a deceptive act or practice must be material and must injure the plaintiff in some way, not that such deception must succeed in fooling a plaintiff. *See Oswego Laborers' Local 214 Pension Fund*, 647

N.E.2d at 744-45 (citing *Varela v. Investors Ins. Holding Corp.*, 615 N.E.2d 218, 219 (N.Y. 1993)). To the extent that Varela could have been read as requiring a plaintiff to have actually been deceived, that reading of the case has been superseded by *Small*, *supra.*. Similarly, to the extent that *Lautman v. 2800 Coyle St. Owners Corp*, 2014 WL 2200909 (E.D.N.Y. May 23, 2014), and *Aguaiza v. Vantage Properties, LLC*, 2009 WL 1511791 (Sup. Ct. N.Y. Cnty. May 21, 2009) held that a consumer must be actually deceived to state a claim under GBL § 349, they are wrongly-decided in that the New York Court of Appeals held otherwise in *Small*.

The Landlord Defendants' lawsuit was especially deceptive. A communication from an attorney implied the "attorney's examination of the case file was adequate to permit determination of "whether [the debtor] was or was not obligated to pay the debt…" *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 640–41 (S.D.N.Y. 2013). Further, a reasonable consumer would be deceived by the receipt of repeated demands for payment in amounts greater than allowed and by a petition signed by an attorney which demands judgment for thousands of dollars not owed and seeks to evict a family from their home. *Villalba v. Houslanger & Assocs., PLLC*, 2022 WL 900538 at *18 (E.D.N.Y. Mar. 28, 2022) *citing Hunter v. Palisades Acquisition XVI, LLC*, 2017 WL 5513636 at *8 (E.D.N.Y. Nov. 16, 2017) ("Plaintiff alleges that Defendants held themselves out as creditors of Plaintiff, when they knew or should have known that they were not. This is precisely the type of conduct "likely to mislead a reasonable customer acting reasonably under the circumstances" under GBL § 349 and *Martinez v. LVNV Funding, LLC*, 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016) (same).

In any event, the Batistas were actually deceived. Attorney Defendants misrepresent Mr. and Mrs. Batista's claims when they suggest that "[t]he Complaint alleges that, *while Plaintiffs have apparently not actually paid the overcharge complained of,* Plaintiffs 'feel embarrassed,

17

humiliated, and worn down by their attorneys, and the persistent false allegations that [Plaintiffs] have not paid their share of rent.'" Atty. Mem. p. 7 (emphasis added). The Batistas allege not just that they did not owe the rent Defendants sued them for, but also that they overpaid more than $3,000 as a result of Defendants' misrepresentations. Complaint at ¶¶ 45-46.

## B.    *Defendants' misconduct was consumer-oriented.*

A necessary element of a § 349 claim's consumer-oriented analysis is "whether the matter affects the public interest in New York." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). The allegations here unquestionably implicate the public interest, as Plaintiffs allege a scheme of knowingly wrongful debt collection including noncompliance with a court settlement, misrepresentation to a court in a pleading, violation of an administration rent reduction order, trying to collect the government-subsidy share of their rent from the Batistas in violation Section 8 program rules, and collecting rent increases from NYCHA when the rent reduction order froze the Batistas' rent, effectively defrauding the government. Given evidence that defendants "gave false information […] to […] a regulatory agency," the Second Circuit found in *Securitron* that such conduct undeniably implicated the public interest for the purposes of GBL § 349, and "the harm to the public was manifest." *Securitron*, 65 F.3d at 264-65. *See also City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 623-24 (N.Y. 2009) (discussing *Securitron*). This conduct affects both tenants and taxpayers at large, and potentially affects all rent-stabilized Section 8 tenants in buildings owned by the Landlord Defendants and/or represented by the Attorney Defendants in eviction proceedings. Their usual business practices therefore implicate the interests of the broader public than just the Batistas; in other words, "the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744. Additionally, this is not a "private contract dispute" as in *Finch v. Slochowsky and*

18

*Slochowsky, LLP*, 2020 WL 5848616 (E.D.N.Y. Sept. 30, 2020); the Batistas' rent obligations are determined by a government agency, NYCHA, and NYCHA itself tenders payment for a portion of their rent each month.

Attempts by creditors to collect debts that were not owed, that could not lawfully be sued upon or which misstate the amount owed, have repeatedly been found to be consumer oriented, as well as deceptive. *See McCrobie v. Palisades Acquisition XVI, LLC,* 359 F.Supp.3d 239, 255 (W.D.N.Y. 2019); *Rozier v. Fin. Recovery Sys., Inc.*, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011); *Campbell v. MBI Assocs., Inc.,* 98 F.Supp.3d 568, 588 (E.D.N.Y. 2015); *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F.Supp.3d 109, 116 (S.D.N.Y. 2016).

Courts apply GBL § 349 to the landlord-tenant context when the plaintiff sufficiently alleges a pattern or practice of deceptive, consumer-oriented conduct, such as suing for rent not owed. *See e.g. Sanchez v. Ehrlich*, 2018 WL 2084147, at *11 (S.D.N.Y. Mar. 29, 2018) (concluding that plaintiff had stated a claim under GBL § 349 when plaintiff asserted a claim on her behalf but also pleaded that defendants engaged in a pattern or practice of bringing housing court proceedings against low-income tenants for rent they did not owe); *Torres v. Gutman, Mintz, Baker & Sonnenfeldt P.C.*, 2018 WL 1545687, at *3 (E.D.N.Y. Mar. 29, 2018) (same); *Lozano v. Grunberg*, 195 A.D.2d 308 (App. Div. 1st Dept. 1993) (landlord notice falsely alleging an eviction was imminent was deceptive under GBL § 349).

The claim that GBL § 349 does not apply to the landlord-tenant relationship is belied by the statutory language. GBL § 349-c, which provides heightened penalties for deceptive conduct directed at the elderly, provides a list of bad conduct for determining whether the supplemental penalty should be applied, including "[w]hether the defendant's conduct caused an elderly person

19

or persons to suffer severe loss or encumbrance of a primary residence." GBL § 349-c(b)(2). Rather than not covering landlord-tenant relationships, the language of GBL § 349 makes it clear that preservation of housing is an explicit statutory purpose.

Attorney Defendants mistakenly rely on *Remler v. Cona Elder Law, PLLC*, 2022 WL 4586243, (E.D.N.Y. Sept. 29, 2022) for the proposition that Defendants' conduct in this case was not directed at consumers. In *Remler*, plaintiff claimed a "pattern of deception" but merely cited to other lawsuits filed by the same debt collector alleging similar claims without alleging facts that showed the other lawsuits had been deceptive. That is not the case here, where the pattern-and-practice alleged by the Batistas in paragraphs 77-98 of the Complaint includes specific allegations regarding stipulations in other cases admitting—and one adjudicated case finding—that the Attorney Defendants improperly sought rent not owed. Unlike the plaintiffs in *Remler*, therefore, the Batistas have plausibly alleged that Attorney Defendants' acts were consumer-oriented.

Attorney Defendants misrepresent Plaintiffs' pattern and practice allegations. They do not rely merely on the volume of lawsuits brought by Attorney Defendants for their claims. Rather, they allege consumer-oriented conduct in the form of specific instances of other tenants experiencing the same conduct at the hand of Attorney Defendants. These examples, when viewed in conjunction with the hundreds of lawsuits filed by Attorney Defendants each year, firmly establish a pattern by the Attorney Defendant of consumer-oriented conduct.

**C.      *Misrepresentations in a collection lawsuit, including LT non-payment proceedings, have long been held to state claims under GBL § 349.***

Landlord Defendants cite *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt,* to support their assertion that misrepresentations within civil litigation are not sufficient to state a claim under GBL § 349. Landlord Mem. p. 8; *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F.Supp.2d 340 (E.D.N.Y. 2010). But *Caldwell* holds no such thing. The GBL § 349 claim in that

20

case was dismissed decision took issue with the GBL § 349 claim because the court found that alleged was "not the deceptive, consumer-oriented conduct that § 349 is intended to address." *Id.* at 355. In fact, misrepresentations within civil litigation are routinely held to constitute violations of GBL § 349. *See e.g. Sanchez*, 2018 WL 2084147 at *11; *Torres*, 2018 WL 1545687 at *3; *Calixto v. A. Balsamo & Rosenblatt, P.C.*, 244 A.D.3d 674, 677 (2d Dept. 2025) (suing for rent not owed stated claim for violation of GBL § 349).

### D.     Defendants' dragging out litigation after being provided documentation showing the debt was not owed was deceptive.

Attorney Defendants allege that they "have done nothing more than pursue debt collection based on information provided by their client, then withdrew the complained of Housing Court Petition following provision of evidence that no rent was due by Plaintiffs." Atty. Mem. p. 1. Attorney Defendants did do more. They did not discontinue the meritless nonpayment case for months after they must have known it had no merit. Failing to promptly dismiss a collection lawsuit when on notice that the consumer is not liable for the debt has been held deceptive under the FDCPA and is deceptive under GBL § 349 under the same reasoning. *See Iacovo v. Magguilli*, 2025 WL 1135471, at *9–11 (E.D.N.Y. Apr. 17, 2025).

Even a cursory review of the rent ledgers that Attorney Defendants provided to Mr. and Mrs. Batista in Bronx Housing Court would have clearly revealed to the Attorney Defendants that the bulk of the arrears resulted from a suspension of the NYCHA Section 8 subsidy. *Id.,* p. 4; Complaint at ¶ 54. Furthermore, Attorney Defendants were provided ample notice by the Batistas' counsel in the LT Proceeding, as described by their own recitation of correspondence and motion filed in Bronx County Housing Court. Atty. Mem. pp. 5-6. *Id.* Yet, in the face of this evidence and repeated requests to end the suit, Attorney Defendants continued to litigate the LT Proceeding until April 2026. Atty. Decl. Ex. 2.

***E. By failing to provide NYCHA pre-suit notice and omitting legally required disclosures regarding Section 8 coverage, Defendants deceptively concealed complete tenant defenses from the Batistas and the Housing Court.***

Plaintiffs are participants in the Section 8 voucher program administered by NYCHA; accordingly, their tenancy is subject to the dictates of the federal consent decree in *Diedre Williams et al. v. New York City Housing Authority* as well as federal regulations. *See* Ex. A to Keshavarz Decl., Second Partial Consent Judgment, *Williams v. NYCHA*, No. 81 Civ. 1801 RJW (S.D.N.Y 1981) ("Second *Williams* Consent Decree"); 24 CFR 982.310. See *Williams v. New York Hous. Auth.*, 1994 WL 323634, at *3 (S.D.N.Y. July 5, 1994) (explaining requirements).

Pursuant to Williams, Defendants were required to certify to NYCHA the factual allegations underlying the proceeding. Id., ¶ 62. Had they presented the facts accurately to NYCHA, it would have been clear to NYCHA that the landlord was seeking the subsidy portion of the rent, Id., ¶ 62, and NYCHA may not have approved the lawsuit. This process could have spared the Batistas the anguish and stress of the Housing Court proceeding.

In addition to complying with *Williams* and 24 CFR 982.310, if the tenant is receiving Section 8, the face of the nonpayment petition must state that. *Homestead Equities, Inc. v. Washington*, 176 Misc.2d 459,462 (Civ. Ct. Kings Co. 1998) ("where a landlord seeks to recover possession of a premises in a summary proceeding, he or she must allege in the petition the regulatory status of the premises and compliance with the regulations associated therewith") (*citing Villas of Forest Hills Co. v Lumberger*, 128 A.D.2d 701, 702 (2d Dept. 1987)). The rationale behind this is that both the tenant and the Court need to be put on notice of the laws governing the tenancy or the substantive rights involved. *See*, *e.g.*, *Westchester Gardens, LP v. Lanclos*, 43 Misc 3d 681, 2014 NY Slip Op 24062 (Civ Ct. Bx. Co. 2014).

The policy reasons behind the *Williams* notice and Section 8 disclosure requirements are so strong that a failure to comply with these requirements requires the dismissal of the nonpayment

22

petition. *See*, *e.g. Alawlaqi v. Kelly*, 1175 Misc.2d 570, 571 (Civ. Ct. Kings Co. 1997) (landlords "must abide by the strictures of the *Williams* order or they must refrain from bringing eviction proceedings against their Section 8 tenants.") The Defendants' nonpayment petition against the Batistas does not plead compliance with the *Williams* requirements, and it in fact was not in compliance with *Williams*. In contravention of both *Williams* and 24 CFR 982.310(b)(1), the petition sought the Section 8 portion of the rent. NYCHA was not given notice of the nonpayment proceeding, and Defendants did not complete the *Williams*-mandated certification process.

Just as in the case at bar, "[p]leading the particular Section 8 program would have enabled respondent and/or her attorney to discern exactly which requirements applied to her, and to determine the scope of her rights and defenses." *East 168th St. Assocs. v. Castillo*, 60 Misc.3d 774, 2018 NY Slip Op 28165 (Civ. Ct. Bx. Co. 2018). Failing to do so concealed from the Court and the Batistas substantial – and here complete – defenses to the nonpayment proceeding, and is therefore deceptive under GBL § 349. *Cf. Fritz v. Resurgent Capital Services LP*, 955 F.Supp.2d 163, 170-171 (E.D.N.Y. July 24, 2013) (concealing identity of correct creditor materially deceptive as it conceals a complete defense).

Courts have repeatedly recognized that misrepresentations or omissions concerning the existence, amount, or legal status of an alleged financial obligation may constitute materially misleading conduct under § 349, particularly where the consumer is led to believe they owe money that is not legally due or is misled about the basis for the asserted obligation. *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *11 (S.D.N.Y. Mar. 29, 2018). In *Bryant v. Casco Bay Realty Ltd. P'ship*, 2015 N.Y. Misc. LEXIS 13226 (Sup. Ct. Westchester Co. 2015), the court found that defendant landlords had violated GBL § 349 by sending rent demands to Section 8 tenants "that merely listed lump sums, characterized as 'rent,' without indicating that the amount

23

allegedly due included ancillary charges such as late fees demanding lump sums as rent without putting the tenant on notice that the sum includes non-rent charges." The court concluded that the "lump sums listed in the three-day demands were misleading in that they created the impression that plaintiffs were required to pay more than what was actually owed as rent in order to avoid eviction" and "were deceptive within the meaning of General Business Law § 349." *Id*.

These authorities demonstrate that GBL § 349 is directed at precisely the type of misconduct alleged here: materially misleading representations and omissions concerning a consumer's financial obligations. Where, as here, a debt collector seeks payment of sums that are not legally owed by the consumer, or conceals information necessary for the consumer to understand the nature and extent of the alleged obligation, the resulting deception is material because it impairs the consumer's ability to evaluate the validity of the demand, assess available rights and defenses, make informed decisions regarding payment, and to determine an appropriate response to the collection effort. *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *11 (S.D.N.Y. Mar. 29, 2018). The Defendants' failure to comply with the Second *Williams* Consent Decree and 24 CFR 982.310, including its demand for the Section 8 subsidy portion of the rent, and its failure to include in the nonpayment petition the premises' Section 8 status constitutes precisely this type of materially misleading conduct.

## IV. PLAINTIFFS STATE A CLAIM UNDER JUDICIARY LAW § 487 AGAINST THE ATTORNEY DEFENDANTS.

Attorney Defendants move to dismiss the Judiciary Law claim, arguing that 1) the Batistas have not alleged "extreme or egregious conduct" required by § 487 with sufficient particularity, 2) the Batistas failed to allege facts demonstrating that the Attorney Defendants acted with intent to deceive, and 3) the Batistas failed to plead cognizable actual damages. Atty. Mem. pp. 20-22.

Contrary to Attorney Defendants' claims, the Batistas have pleaded specific facts to show

that the Attorney Defendants' conduct was "egregious" or part of "a chronic and extreme pattern of behavior" as required by New York courts interpreting § 487. *Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 615 (1st Dep't 2015). Notably, a very similar Judiciary Law § 487 claim— for falsely representing that debts were not time-barred in state-court complaints—survived a motion to dismiss in *Diaz v. Portfolio Recovery Assocs., LLC,* No. 10 CV 3920 ERK, 2012 WL 661456, at *7-8 (E.D.N.Y. Feb. 28, 2012) ("*Diaz* R&R"), *report and recommendation adopted,* No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012).

Here, as in *Diaz*, Plaintiffs have plead a "broad pattern of deceptive filings," specifically lawsuits seeking eviction for nonpayment of rent that is not actually owed, that buttresses their allegations that the Attorney Defendants acted intentionally. In *Villalba v. Houslanger & Associates, PLLC*, the defendants argued that "baseless adjournments" do not "qualify as 'extreme' or 'egregious' deceit for the purposes of Judiciary Law § 487. *Villalba v. Houslanger & Associates, PLLC*, 2022 WL 900538 at *19 (E.D.N.Y. March 28, 2022). The *Villalba* court disagreed because the adjournments prolonged a case in which the underlying judgment was not valid. *Id.* The Attorney Defendants characterize the more-than-year-long Housing Court litigation as having involved "a few agreed-upon adjournments," but that obscures the fact that the litigation was based on fictitious arrears, and the Attorney Defendants had repeatedly been put on notice that the Batistas did not owe any money, yet they continued to request adjournments to write opposition papers which they never completed. Atty. Mem. p. 13; Complaint ¶¶ 64-65, 69-75.

The Attorney Defendants intentionally attempted to deceive the court with a lawsuit seeking a debt that was obviously not owed. Attorney Defendants could have immediately dismissed the lawsuit upon review of the rent ledgers. Complaint ¶ 54. Attorney Defendants were given further notice and opportunity to discontinue by Bronx Legal Services in emails on four

25

occasions. Complaint ¶¶ 69-75. Instead, Attorney Defendants continued to appear in court and refused to discontinue the case, forcing the filing of this case before they finally relented. This is precisely the type of conduct actionable under the statute. "[T]he purpose of Judiciary Law § 487(1) is to safeguard an attorney's special obligation of honesty and fair dealing *in the course of litigation* – a pillar of the profession." *Bill Birds, Inc. v. Stein Law Firm, P.C.*, 35 N.Y.3d 173, 178 (N.Y. 2020) (emphasis added). The Attorney Defendants' decision to continue to press the lawsuit once on notice that the debt was not actually owed and its pursuit of the lawsuit as part of a larger, intentional pattern of deceiving tenants and the courts is "conduct was well outside the bounds of vigorous advocacy and, as alleged, qualifies as egregious misconduct." *Scott v. Greenberg*, 2017 WL 1214441, at *15 (E.D.N.Y. Sept. 30, 2020).

In *Calixto,* the court found that the complaint adequately stated a cause of action to recover damages for a violation of Judiciary Law § 487 when the attorney defendants continued to litigate against the plaintiff despite having knowledge that the amount owed was misrepresented and the attorney defendants were engaged in similar lawsuits against additional tenants. *Calixto v. A. Balsamo & Rosenblatt, P.C.*, 244 A.D.3d 674, 678 (2025). In *Wilson v. Selip & Stylianou, LLP*, the court held that, when a process server regularly executes false affidavits of service, the law firm's use of the affidavits could constitute "intentional deceit or collusion" to state a § 487 claim. *Wilson v. Selip & Stylianou, LLP*, 2026 WL 851339 at *8 (S.D.N.Y. Mar. 27, 2026). The *Wilson* court found that the plaintiff stated her allegations with particularity after outlining the attorney defendant's role in the service process. *Id.*

Here, as in *Calixto* and *Wilson*, the Plaintiffs allege in detail the role that the Attorney Defendants have played in bringing a lawsuit, including Mr. Schwartz's having verification of the petition and Attorney Defendants providing rent ledgers in housing court that show the alleged

26

arrears are largely due to a suspension of the Section 8 subsidy, then continued litigation of said despite repeated communication from the Batistas' counsel that the lawsuit was based on fictitious arrears. Complaint ¶¶ 64-65, 69-75. These allegations are sufficient to state a cause of action for violation of Judiciary Law § 487.

V.   **PLAINTIFFS STATE A CLAIM FOR GROSS NEGLIGENCE AGAINST ALL DEFENDANTS.**

To state a negligence cause of action, a plaintiff must allege 1) the existence of a duty on the defendant's part to the plaintiff, 2) a breach of this duty, and 3) injury to the plaintiff resulting from that breach. *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013). To state a gross negligence cause of action under New York law, a plaintiff must additionally allege "conduct that evinces a reckless disregard for others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Services, Ltd.*, 611 N.E.2d 282, 284 (N.Y. 1992).

The Batistas allege that the Attorney Defendants were grossly negligent in filing a lawsuit for eviction for nonpayment of rent, without submitting the proper information to NYCHA given the Batistas' status as Section 8 tenants, without conducting a meaningful attorney review, and in spite of the ledger showing on its face suggesting that the Batistas had paid their share of the rent; and in continuing to press the lawsuit forward after the Batistas' counsel repeatedly notified them of the lack of any existing arrears except those solely chargeable to Section 8 and requesting dismissal. The Batistas allege the Attorney Defendants breached their statutory duties under the FDCPA, GBL § 349, and Judiciary Law § 487, as well as their common-law duty of care in the collection of debts. *Hawkins-El v. First Am. Funding, LLC*, 891 F.Supp.2d at 412; *Colo. Capital v. Owens*, 227 F.R.D. 181, 191 (E.D.N.Y. 2005).

The Batistas further allege that the Landlord Defendants were grossly negligent in

27

forwarding their account to the Attorney Defendants for collection litigation despite the lack of any existing arrears except those due to Section 8; sending the Batistas inflated rent bills containing impermissible overcharges and holding the Batistas responsible for the government share of the rent; and in continuing to press the lawsuit forward after the Batistas repeatedly notified them of the lack of any existing arrears except those solely chargeable to NYCHA and urged the Landlord Defendants to work out the Section 8 nonpayment issue with NYCHA. The Batistas allege the Landlord Defendants breached their statutory duties under GBL § 349, as well as their common-law duty of care in the collection of debts. *Hawkins-El v. First Am. Funding, LLC*, 891 F.Supp.2d at 412; *Colo. Capital v. Owens*, 227 F.R.D. at 191 (E.D.N.Y. 2005).

No Defendant challenges the duty or breach elements of a gross negligence cause of action; the Landlord Defendants claim the Batistas have not shown detrimental reliance and that such reliance is essential to a gross negligence claim, indirectly challenging the injury element, while the Attorney Defendants challenge the gross negligence claim under the *Colnaghi* standard, which requires "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." Landlord Mem. p. 10; Atty. Mem. pp. 22-23. Both arguments fail.

First, the Batistas *did* rely on the Landlord Defendants' misrepresentations by overpaying at least $3,000 in rent based on the inflated rent bills, and by spending considerable time and incurring travel expenses (1) defending against the wrongful litigation brought by the Attorney Defendants on behalf of the Landlord Defendants; and (2) attempting, unsuccessfully, to communicate the issues of the rent overcharge and Section 8 arrears to the Landlord Defendants. Complaint ¶¶ 16-76. Second, the Batistas allege conduct by all Defendants that evinces a reckless disregard for the rights of others or of intentional wrongdoing: persisting with wrongful eviction litigation in the face of evidence that the debt for which the eviction was sought was not owed by

28

the Batistas. *Id.* ¶¶ 55-76. Third, the two cited by Landlord Defendants in support of their

contention that detrimental reliance is a necessary element of a gross negligence claim arose in the

context of investors alleging harm from fraudulent financial statements prepared by accountants,

a fact pattern far afield from this case. Landlord Mem. p. 10; *see Rotterdam Ventures, Inc. v. Ernst*

*& Young LLP*, 300 A.D.2d 963, 964-965 (3d Dep't 2002); *Water Street Leasehold LLC v. Deloitte*

*& Touche LLP*, 19 A.D.3d 183, 185-186 (1st Dep't 2005).

In any event, under *Crespo*, intentional misrepresentation of a consumer's rights—such as

the consumer's rights as a tenant in a rent-stabilized building subject to a rent reduction order, or

the consumer's rights as a tenant receiving Section 8—states a claim for gross negligence that must

be resolved at trial. *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, 2025 WL 871637, at *9

(S.D.N.Y. Mar. 20, 2025).

## VI. THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' CLAIMS.

"A federal court's exercise of pendent jurisdiction over plaintiff's state law claims, while

not automatic, is a favored and normal course of action." *Promisel v. First American Artificial*

*Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991). Supplemental jurisdiction is mandatory, not

discretionary, if a common nucleus of operative fact exists and none of the grounds in 28 U.S.C.

§ 1367(c) are present. "The discretion to decline supplemental jurisdiction is available only if

founded upon an enumerated category of 1367(c)." *Itar-Tass Russian News Agency v. Russian*

*Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998). Even if one of the grounds in 1367(c) is present, a

district court may still exercise supplemental jurisdiction if doing so promotes the values of

economy, convenience, fairness, and comity. *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214

(2d Cir. 2004) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

Notwithstanding the strong presumption in favor of federal courts' exercise of

29

supplemental jurisdiction, Defendants maintain that this Court should not do so because, they maintain, Plaintiffs' GBL § 349 claims raise novel or complex issues of state law and Plaintiffs' state law claims substantially predominate over their federal claims. Because neither of these assertions are correct, this Court should decline to dismiss Plaintiffs' state law claims.

Plaintiffs' GBL § 349 claims do not raise novel or complex issues of state law, nor do they raise an issue that is unsettled in New York's courts. The elements of a GBL § 349 claim are well-settled. A plaintiff must show that the "defendant is engaging in an act or practice that is misleading in a material way and that plaintiff has been injured by reason thereof," and, further, that defendant's complained-of conduct is "consumer-oriented." *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744. In the definitive appellate decision on the question of the applicability of § 349 to landlord-tenant relationships, the Appellate Division, Second Department held that allegations that landlord defendants "engaged in deceptive conduct by attempting to evict tenants by suing them for significantly more than the amount owed and misrepresenting the amount owed to the court . . . sufficiently pleaded deceptive conduct that was consumer-oriented." *Calixto v. A. Balsamo & Rosenblatt, P.C.*, 244 A.D.3d 674 (App. Div. 2nd Dept 2025). *See Lozano v. Grunberg*, 195 A.D.2d 308 (App. Div. 1st Dept. 1993) (reversing trial court decision dismissing § 349 claim brought by a tenant against a landlord); *Myerson v. Prime Realty Services, LLC*, 7 Misc.3d 911, 921 (Sup. Ct. NY Co. 2005) (sustaining tenant's § 349 claim against her landlord). *See also 23 Realty Assocs. v. Teigman*, 213 A.D.2d 306, 308 (App. Div. 1st Dept. 1995) ("An apartment dweller is today viewed, functionally, as a consumer of housing services—as much a consumer as the purchaser of any other goods or services.")

Defendants misconstrue the cases they maintain create a conflict among state court decisions on the viability of GBL § 349 claims in the landlord-tenant context. Those cases do not

30

hold that tenants may never succeed in § 349 claims against their landlords; rather, they only hold that the tenants in those cases did not make out the elements of § 349 claims against their landlords. *See Collazo v. Netherland Prop. Assets LLC*, 155 A.D.3d 538, (2017), *aff'd as modified*, 35 N.Y.3d 987 (N.Y. 2020) (affirming the trial court's dismissal of plaintiffs' § 349 because "[t]he court also correctly ruled that plaintiffs had failed to state a cause of action for relief under General Business Law § 349," not because such claims are categorically barred); *Aguaiza v. Vantage Props.*, LLC, 69 A.D.3d 422, 423 (N.Y. App. Div. 1st Dep't 2010) (dismissing plaintiffs' § 349 claim based on insufficiency of plaintiffs' allegations); *People by James v. River Valley Ests.,* LLC, 87 Misc. 3d 1221(A) (N.Y. Sup. Ct. 2025) (holding that petitioner had not sufficiently pled the consumer-oriented nature of respondent's actions). Thus, rather than presenting an unsettled question of state law, plaintiffs' GBL § 349 claim only requires this Court to apply a well-settled principle of state law regarding the elements of such claims to the particular landlord-tenant interactions in this case.

Plaintiffs' state law claims do not substantially predominate over their federal claims. To the contrary, there is very substantial overlap between the issues that must be decided to adjudicate plaintiffs' FDCPA claims and their state law claims. The common issues include those related to plaintiffs' lawful rent, the suspension of NYCHA payments to the Defendant Landlord, the failure of the Defendants to comply with the *Williams* consent decree, the existence of the rent reduction order, and the harms to Plaintiffs caused by Defendants' actions. While it is true that the Defendant Attorneys' liability arises out of the filing of the LT lawsuit, while the Defendant Landlord's liability arises out of that litigation as well as a series of earlier communications, the facts that lead to the conclusion that the rent sought in the LT lawsuit and the rent sought in those earlier communications was not owed are the same. While the state law claims have some additional elements: the consumer-oriented nature of the Defendant Landlord's actions for the § 349 claim,

31

the "reckless disregard or 'smacks' of intentional wrongdoing" standard for the gross negligence claim, and the "chronic or extreme" element for the Judiciary Law claim, these do not predominate over common issues relating to the illegality of the rent sought by Defendants, the commencement and continuation of meritless debt-collection litigation, and the harms to the Plaintiffs.

In determining whether to exercise jurisdiction over state law claims, the federal court "should look to whether the evidence likely to be used in the specific case addressing the federal claim is likely to substantially overlap that used to address the state-law claims." *BLT Restaurant Group LLC v. Tourondel*, 855 F.Supp.2d 4, 11 (S.D.N.Y. 2012). "[I]f, considered without regard to their federal and state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole." *Gibbs*, 383 U.S. 726. Supplemental jurisdiction should be exercised when the "interests of judicial economy clearly weigh[] in favor of trying [federal and state claims] together, in view of the duplication of witnesses testifying with respect to both claims." *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U.*, 605 F.2d 1228, 1247 (2d Cir. 1979). Because these claims arise out of a common nucleus of operative fact, and judicial economy would be served by trying them together, the Court should exercise jurisdiction over them.

*Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum*, 2018 WL 2247206 (S.D.N.Y. 2018), and *Lautman v. 2800 Coyle St. Owners*, 2014 WL 2200909 (E.D.N.Y. May 24, 2014), which the Landlord Defendants cite in support of their argument that this Court should decline to exercise supplemental jurisdiction, are distinguishable. Factors important to the *Dzganiya* court in 2017 no longer pertain in 2026. First, GBL § 349 no longer carries the potential for punitive damages beyond the treble damages already provided by the statute. *Hobish v. AXA Equitable Life*

32

*Insurance Company*, 43 N.Y.3d 442, 454 (N.Y. 2025). Second, it is no longer true that FDCPA plaintiffs need not demonstrate actual injury; just like GBL § 349 plaintiffs, FDCPA plaintiffs after *TransUnion* must show a concrete and particularized injury. *TransUnion LLC v. Ramirez*, 594 U.S. at 417, 423-425 (2021). Third, as to a factor that was also important to the *Lautman* court, there is now clear appellate court law in New York that GBL § 349 claims can arise from disputes arising from the collection of debt in the landlord-tenant context. *See e.g. Calixto*, 244 A.D.3d 674.

*Lautman* is also inapposite because the court dismissed the GBL claim as it related to the housing court proceedings because "plaintiff [did] not assert that he himself was in any way misled" by the conduct in housing court. *Lautman v. 2800 Coyle St. Owners Corp.*, 2014 WL 2200909, at *8 (E.D.N.Y. May 23, 2014). As addressed in the GBL § 349 section, *supra.*, "justifiable reliance [is] not [an] element[] of the statutory claim." *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d at 897. The court's erroneous interpretation of GBL § 349 left only those segments of the plaintiff's GBL claim "in connection with defendants' conduct other than in bringing the Housing Court proceedings," while preserving the plaintiff's FDCPA claim relating to the housing court proceedings. *Lautman*, 2014 WL 2200909 at *7-8. It was on that basis—with the court preserving a federal claim related to the Housing Court proceeding alongside a potential state claim limited only to conduct outside Housing Court—that the court found that the GBL claim would have substantially predominated. *Id.*

Landlord Defendants cite to in-circuit cases outside of the FDCPA and landlord-tenant contexts in which supplemental jurisdiction was declined over certain state claims because they failed to share a common nucleus of operative fact with the federal claims. These cases are not relevant to this case because, unlike here, the dismissed state claims were essentially unrelated to the federal claims. *See Hernandez v. Mauzone Home Kosher Products of Queens, Inc.*, 2013 WL

33

5460196, at *2, *6 (E.D.N.Y. Sept. 30, 2013); *Figurowski v. Marbil Investors, LLC*, 2015 WL 4000500, at *2-4 (E.D.N.Y. July 1, 2015); *Shearon v. Comfort Tech Mech. Co.*, 2014 WL 1330751, at *3-4 (E.D.N.Y. Mar. 31, 2014); *Town of Oyster Bay v. Northrop Grumman Systems Corp.*, 2010 WL 11623604, at *3 (E.D.N.Y. May 21, 2010). Unlike each of the preceding cases, in which different claims arose from discrete sets of events and circumstances, the claims here all arise from Defendants' continuous and ongoing scheme of wrongful and deceptive debt collection against the Plaintiffs, and all rely on substantially the same evidence. Indeed, because these cases all involve claims arising from distinct nuclei of operative fact, these cases all failed to obtain supplemental jurisdiction on the first prong of § 1367, 1367(a), without needing a substantial predomination analysis under § 1367(c)(2).

Landlord Defendants also cite out-of-circuit cases to support their argument. However, each case is distinguishable from this case. In *Lyon v. Whisman*, the Third Circuit found supplemental jurisdiction improper where a plaintiff's narrow FLSA overtime claim (alleging she was not paid overtime for all eligible hours) did not share a common nucleus of operative fact with the plaintiff's state-law contract and tort claims. *Lyon v. Whisman*, 45 F.3d 758, 761-63 (3d Cir. 1995). In *Cavender v. Sutter Lakeside Hosp., Inc.*, the district court had a stronger basis for declining supplemental jurisdiction: the dismissal of the only federal claim. *Cavender v. Sutter Lakeside Hosp., Inc.*, 2005 WL 2171714, at *5-6 (N.D. Cal. Sept. 6, 2005). And in *Eng v. Pacific Clinics*, a plaintiff's thicket of complex state claims, including a claim for discrimination in public accommodations under California law, were dismissed from the plaintiff's 42 U.S.C. § 1983 claim for excessive force. *Eng v. Pacific Clinics*, 2013 WL 12129611, at *5-7 (C.D. Cal. May 17, 2013).

"[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy,

convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, *supra.* at 214 (citing *Gibbs*, *supra.*, at 724. Here, there is neither a novel, complex, or unsettled issue of state law, nor will the state law claims predominate over the federal law claims in the litigation of this case. There is also not any other "other compelling reasons for declining jurisdiction." See 28 U.S.C. § 1367(c)(4). Because no § 1367(c) factors are present, this Court should exercise supplemental jurisdiction.

However, even if a § 1367(c) factor were present, that would not end the analysis. The Second Circuit reads 1367(c) in conjunction with *Gibbs*, requiring an analysis of the *Gibbs* factors even when a 1367(c) condition is met. *Itar-Tass*, 140 F.3d at 447-48 (citing and interpreting *Gibbs*). Comity and judicial economy are to be viewed with an eye towards efficiency and speedy resolution from the perspective of both the state and federal courts, not only the federal court. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 86 (2d Cir. 2018); *Jones*, 358 F.3d at 215-16 (suggesting to district court ways to manage a potential substantial predomination issue in a complex class action in order to retain supplemental jurisdiction.) And *Gibbs* itself places a strong emphasis on the common nucleus of operative fact. "Although [the federal claim] limited recovery to compensatory damages based on secondary pressures […] and state law allowed both contemporary and punitive damages, and allowed such damages as to both secondary and primary activity, the state and federal claims arose from the same nucleus of operative fact and reflected alternative remedies." *Gibbs*, 383 U.S. at 728 (finding district court had not exceeded its authority in proceeding to judgment on state claim with overlapping but not identical facts, standards of proof, and remedies). "This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). For these reasons as well, the Court should exercise jurisdiction over Plaintiffs' state law claims.

## **CONCLUSION**

For these reasons, Defendants' Motions to Dismiss must be denied in their entirety.


Dated: Bronx, New York
June 10, 2026

/s/
_____

Jackie Spencer
Tara Laffer
Christopher D. Lamb
Bronx Legal Services
369 E. 148th Street, 2nd Floor
Bronx, NY 10455
Email: jspencer@lsnyc.org
Email: tlaffer@lsnyc.org
Email: clamb@lsnyc.org
Phone: (718) 928-3740


Dated: June 10, 2026
Brooklyn, NY

/s/
_____

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241
Tel: (718) 522-7900
Fax: (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com