**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
 ---------------------------------------------------------------- x
DAMIAN BATISTA, SANDRA BATISTA,

                                          No: 1:26-CV-2557

                      Plaintiffs,

               -against-

EDELMAN SCHWARTZ PLLC,
ZEV SCHWARTZ,
1915 REALTY LLC,
YONAH ROTH, and BINYOMIN HERZL,

                       Defendants.
 ---------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS EDELMAN SCHWARTZ PLLC'S**
**AND ZEV SCHWARTZ'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Pages(s)**

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ……………………………………………………………………4

STANDARD OF REVIEW……………………………………………………………...11

ARGUMENT……………………………………………………………………….11

   I.  PLAINTIFFS' FDCPA CLAIM SHOULD BE DISMISSED BECAUSE
      IT IS TIME-BARRED AND PLAINTIFFS HAVE FAILED TO PLEAD
      ARTICLE III STANDING……………………………………...……………...........11

        A.  Plaintiffs' FDCPA Claim is Time-Barred Under the
           Applicable 1-Year Statute of Limitations...............................................11

        B.  Plaintiffs' FDCPA Claim Should Be Dismissed Because
           Plaintiffs Lack Article III Standing.......................................................12

   II.  PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF
      SUBJECT MATTER JURISDICTION……………………………………...…….15

   III.  EVEN IF THIS COURT RETAINS JURISDICTION OVER
       THE STATE LAW CLAIMS, THOSE CLAIMS SHOULD BE
       DISMISSED AS A MATTER OF LAW....................................................................17

        A.  Plaintiffs' Claim Under N.Y. General Business Law § 349
           Fails as a Matter of Law...........................................................................17

        B.  Plaintiffs' Claim under N.Y. Judiciary Law § 487 Fails as a Matter of Law........21

        C.  Plaintiffs' Claim for Gross Negligence Fails as a Matter of Law..........................23

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Aguaiza v. Vantage Properties, LLC,*
  69 A.D.3d 422 (1st Dep't 2010) ................................................................18, 20, 21

*Amalfitano v. Rosenberg,*
  12 N.Y.3d 8 (2009) ...............................................................................................23

*Anwar v. Fairfield Greenwich Ltd.,*
  728 F. Supp. 2d 372 (S.D.N.Y. 2010) .............................................................. 23, 24

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..............................................................................................19

*Baldeo v. Airbnb, Inc.,*
  2023 U.S. Dist. LEXIS 176085 (S.D.N.Y. Sept. 29, 2023) .......................................17

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ..............................................................................................22

*Bidar v. Eckert, Seamans, Chrin & Mellott, LLC,*
  2026 U.S. Dist. LEXIS 67866 (E.D.N.Y. Mar. 30, 2026) ..........................................15

*Bisono v. Fin. Recovery Servs., Inc.,*
  2019 U.S. Dist. LEXIS 129677 (E.D.N.Y. Aug. 2, 2019) ..........................................17

*Brake v. Slochowsky & Slochowsky, LLP,*
  504 F. Supp. 3d 103 (E.D.N.Y. 2020) ........................................................21, 22, 23

*Bryant v. Silverman,*
  284 F. Supp. 3d 458 (S.D.N.Y. 2018) ......................................................................21

*Calka v. Kucker, Kraus & Bruh, LLP,*
  1998 U.S. Dist. LEXIS 11868 ................................................................................12

*Campbell v. MBI Assocs., Inc.,*
  98 F. Supp. 3d 568 (E.D.N.Y. 2015) .......................................................................14

*Carnegie-Mellon Univ. v. Cohill,*
  484 U.S. 343 (1988)...............................................................................................16

*Colorado River Water Conservation Dist. v. United States,*
  424 U.S. 800 (1976) ..............................................................................................15

*Currier v. First Resolution Inv. Corp.,*
  762 F.3d 529 (6th Cir. 2014) ..................................................................................14

*Deutsche Lufthansa AG v. Boeing Co.*,
  2007 U.S. Dist. LEXIS 9519 (S.D.N.Y. Feb. 2, 2007) ..............................................24

*Finch v. Slochowsky & Slochowsky, LLP*,
  2020 U.S. Dist. LEXIS 181698 (E.D.N.Y. Sept. 30, 2020) ...........................................13, 19, 21

*Gomez v. Resurgent Capital Servs., L.P.*,
  129 F. Supp. 3d 147 (S.D.N.Y. 2015) ..............................................13

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
  590 F. Supp. 2d 625 (S.D.N.Y. 2008) ..............................................18

*Hongying Zhao v. JPMorgan Chase & Co.*,
  2019 US Dist. LEXIS 40673 (S.D.N.Y. Mar. 13, 2019) ..............................................23

*Kolari v. New York Presbyterian Hosp.*,
  455 F.3d 118 (2d Cir. 2006)..............................................16

*Lacourte v. Foster & Garbus LLP*,
  2014 U.S. Dist. LEXIS 25508 (S.D.N.Y. Feb. 20, 2014) ..............................................17

*Lane v. Fein, Such & Crane, LLP*,
  767 F. Supp. 2d 382 (E.D.N.Y. 2011) ..............................................24

*Lautman v. 2800 Coyle St. Owners Corp.*,
  2014 U.S. Dist. LEXIS 72703 ..............................................18, 20

*Maddox v. Bank of New York Mellon Tr. Co., N.A.*,
  19 F.4th 58 (2d Cir. 2021) ..............................................15

*Maurizio v. Goldsmith*,
  230 F.3d 518 (2d Cir. 2000) ..............................................17

*Morgan Stanley & Co. v. Peak Ridge Master SPC Ltd.*,
  930 F. Supp. 2d 532 (S.D.N.Y. 2013) ..............................................24

*Morton v. Cty. of Erie*,
  796 F. App'x 40 (2d Cir. 2019) ..............................................17

*Obal v. Deutsche Bank Nat'l Trust Co.*,
  2015 U.S. Dist LEXIS 18124 (S.D.N.Y. Feb. 13, 2015) ..............................................19, 20

*Oliver v. U.S. Bancorp.*,
  2015 U.S. Dist. LEXIS 88713 (S.D.N.Y. July 8, 2015) ..............................................11, 12

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ..............................................17

*Parker v. Pressler & Pressler, LLP*,
  650 F. Supp. 2d 326 (D. N.J. 2009) ..............................................12

*Paushok v. Ganbold*
  2021 U.S. Dist. LEXIS 51034 (S.D.N.Y. Mar. 18, 2021) .................................................. 16, 17

*Ray v. Watnick*,
  182 F. Supp. 3d 23 (S.D.N.Y. 2016) ...................................................................... 21, 22

*Remler v. Cona Elder Law, PLLC*,
  2022 U.S. Dist. LEXIS 177660 (E.D.N.Y. Sept. 29, 2022) .............................................. 19, 21

*Rotkiske v. Klemm*,
  589 U.S. 8 (2019) .......................................................................................... 11, 12

*Shad v. Zachter PLLC*,
  2024 U.S. Dist. LEXIS 40559 (S.D.N.Y. Mar. 7, 2024) ...........................................................21

*Sierra v. Foster & Garbus*,
  48 F. Supp. 2d 393 (S.D.N.Y. 1999) ..............................................................................11

*Spitz v. Caine & Weiner Co., Inc.*,
  2024 U.S. Dist. LEXIS 2944 (E.D.N.Y. Jan. 5, 2024) ....................................................... 13, 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)...............................................................................................13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ....................................................................................... 12, 13

*Varela v. Investors Ins. Holding Corp.*,
  81 N.Y.2d 958 (1993) ...........................................................................................20

*Wadsworth v. Kross, Lieberman & Stone, Inc.*,
  12 F.4th 665 (7th Cir. 2021) ....................................................................................13

**Statutes and Rules**

15 U.S.C. § 1692 ............................................................................................ *passim*

28 U.S.C. §§ 1331...............................................................................................16

28 U.S.C. § 1367 ...............................................................................................16

Fed. R. Civ. P. 12................................................................................................1

N.Y. G.B.L. § 349 .......................................................................................... *passim*

N.Y. Judiciary Law § 487 .................................................................................... *passim*

N.Y. RPAPL § 711 ...........................................................................................2, 6, 12

**Other Authorities**

S. Rep. No. 382, 95th Cong., 1st Sess. (1977)..................................................................15

Defendants Edelman Schwartz PLLC and Zev Schwartz ("Attorney Defendants") respectfully submit this memorandum of law in support of their motion to dismiss ("Motion") Counts One through Four of the July 11, 2026 Amended Complaint ("Amended Complaint" or "Am. Compl.") filed by Plaintiffs Damian Batista and Sandra Batista (together, "Plaintiffs").[1] Specifically, the Attorney Defendants seek dismissal of Plaintiffs' claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (Count I), violation of New York General Business Law § 349 (Count II), violation of New York Judiciary Law § 487 (Count III), and gross negligence (Count IV) pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, and thus dismissal of the Amended Complaint as against the Attorney Defendants in its entirety and without additional leave to replead.

## PRELIMINARY STATEMENT

On July 14, 2026, this Court held oral argument on the Attorney Defendants' Original Motion to Dismiss, solely with respect to the Attorney Defendants' argument that Plaintiffs' FDCPA claim is barred by the strict, one-year statute of limitations on FDCPA claims because, as alleged in the Original Complaint, the first alleged violation of the FDCPA by the Attorney Defendants was the sending to Plaintiffs of the February 2025 Demand Letter, which took place more than one year prior to Plaintiffs bringing this action. The same day, the Court also "accept[ed] for filing" an amended complaint filed by plaintiffs on July 10, 2026. (*See* Order dated July 14, 2026.) And the next day, without detailing its reasoning at that time, the Court denied the Attorney Defendants' Original Motion "to the extent it seeks dismissal of the FDCPA claim as

---

[1] Unless otherwise stated herein, the defined terms in this memorandum have the same meaning as they are defined in the Amended Complaint, the Attorney Defendants' Original Motion to Dismiss dated May 22, 2026 (ECF # 25, "Original Motion or "Orig. Mot.") and the Attorney Defendants' Original Reply dated June 18, 2026 ("Original Reply" or "Orig. Reply").

time-barred." (Order dated July 15, 2026 ("Summary SOL Order").) The Summary SOL Order provided that "[a] full opinion will follow in due course, after the parties have had the opportunity to supplement their briefing in light of the new allegations in the amended complaint." (*Id.*)

The Amended Complaint contains no changes or additions that affect the Attorney Defendants' statute of limitations argument—indeed, it continues, as it must, to allege that the allegedly wrongful rent collection efforts by the Attorney Defendants began with the February 2025 Demand by seeking "money that was not owed by [Plaintiffs]" on February 18, 2025. (Am. Compl. ¶ 61.) As set forth in the Attorney Defendants' Original Motion (*see* Orig. Mot. at 8-11), the February 2025 Demand expressly invoked the FDCPA, and was sent as a statutory predicate notice required under N.Y. RPAPL § 711 and as a precondition to filing a non-payment proceeding under Article 7 of the RPAPL. Subject to the "full opinion" to be issued after full briefing on this Motion, the Attorney Defendants respectfully submit that the SOL Summary Order was incorrect, that the February 2025 Demand was part and parcel of the same conduct (including the filing of the Petition) that forms the basis for Plaintiffs' FDCPA claim (as conceded by Plaintiffs in their own briefing (*see, e.g.*, Orig. Reply at 2-5)), that the overwhelming case law in this Circuit supports dismissal based on the statute of limitations due to the fact that any FDCPA claim based on the alleged violation accrues at the time the violation first occurs and is not tolled or deemed a continuing violation to the extent there are subsequent collections efforts with respect to the same debt, and that the FDCPA claim should therefore be dismissed as time-barred and the remaining claims dismissed for lack of subject matter jurisdiction.

In any event, Plaintiffs lack standing to pursue the FDCPA claim, as they have failed to allege a concrete injury arising therefrom. The Amended Complaint continues to allege that the ***only*** injuries incurred by Plaintiffs as a result of the Attorney Defendants' alleged violations of the

2

FDCPA (including the sending of the February 2025 Demand) were amorphous, non-specific alleged feelings of emotional distress and unidentified allegedly forgone wages because of missing work for Court appearances and associated transportation costs. (Am. Compl. ¶¶ 132, 134.) As a review of the relevant case law makes clear, none of these alleged injuries come close to satisfying Article III's standing requirement that the injuries alleged as a result of the Attorney Defendants' purported violations of the FDCPA be "concrete and particularized."

With the dismissal of Plaintiffs' FDCPA claim, the Court lacks subject matter jurisdiction over the remaining state law claims, which should be dismissed on that basis. But if the Court should determine that the FDCPA claim should proceed at this time, the Court should nevertheless dismiss each of these claims for failure to state a claim upon which relief can be granted. As discussed more fully below, the GBL § 349 claim fails to allege deceptive conduct by the Attorney Defendants (who are alleged to have done nothing more than pursue debt collection based on information provided by their clients, then withdrew the complained of Housing Court Petition following provision of evidence that no rent was due by Plaintiffs), let alone "consumer oriented" deceptive conduct. Plaintiffs also fail to allege a plausible factual basis for concluding that the Attorney Defendants intended to engage in efforts to deceive Plaintiffs, with particularized pleading of facts evidencing knowledge that there was no debt actually owed when the debt collection activity in question was commenced. Finally, Plaintiffs fail to come anywhere close to alleging facts necessary to the assertion of a gross negligence claim.

For these reasons, as discussed more fully below, it is respectfully submitted that Plaintiffs' Amended Complaint against the Attorney Defendants fails as a matter of law and should be dismissed in its entirety and without leave to replead.

3

## STATEMENT OF FACTS[2]

With respect to the Attorney Defendants, the allegations in the Amended Complaint have not substantially changed from the allegations in the Original Complaint dated April 10, 2026 ("Original Complaint" or "Orig. Compl."), as described in the Attorney Defendants' Original Motion. (*See* Orig. Mot. at 2-7.) Like the Original Complaint, the Amended Complaint alleges that Plaintiffs are tenants in a residential apartment building located at 1915 Billingsley Terrace (the "Building") in the Bronx, who were the subject of efforts commencing in February 2025 to collect upon what the Attorney Defendants were advised by their clients, Defendants 1915 Realty, LLC, Yonah Roth and Binyomin Herzl (the "Landlord Defendants"), was approximately $9,000 in unpaid rent on their apartment. Plaintiffs allege that, in fact, Plaintiffs were participants in the federal Section 8 Housing Choice Voucher Program (the "Section 8 Program") available to low income New York State residents, and the unpaid portion of the rent included a portion for which the New York City Housing Authority ("NYCHA") was responsible pursuant thereto, and had lawfully refused to pay. Plaintiffs allege that, in their efforts to pursue collection of the unpaid portion of the rent in question, the Attorney Defendants violated the Federal Debt Collection Practices Act (First Claim for Relief), General Business Law § 349 (which prohibits deceptive acts or practices in the conduct of business, trade or commerce) (Second Claim for Relief), New York Judiciary Law § 487 (which provides a right of action against attorneys who are guilty of deceit or collusion, or consent to any deceit or collusion, with intent to deceive the Court or any party) (Third Claim for Relief), and gross negligence (Fourth Claim for Relief). (Am. Compl. at 1-2.)

---

[2] The facts set forth herein are drawn from the Amended Complaint and accepted solely for purposes of this memorandum in support of the Attorney Defendants' motion to dismiss.

Specifically, Plaintiffs allege that, as "participants in the federal tenant-based Housing Choice Voucher Program ('Section 8') administered by NYCHA" (Am. Compl. at 2), they are "not responsible for payment of the portion of the rent to the [Landlord Defendants] covered by the housing assistance payment under the HAP contract between the owner and the [Public Housing Agency]." (Am. Compl. ¶ 26). And Plaintiffs allege that, under the terms of the HAP contract, the landlord must maintain the apartment in compliance with "Housing Quality Standards" required under Section 8, and if the apartment fails to pass an annual housing quality standards inspection, NYCHA may suspend the Section 8 subsidy until the landlord has remedied the failures and the apartment passes inspection. (Am. Compl. ¶¶ 28-29). Further, Plaintiffs allege that, pursuant to the terms of the HAP contract, the tenant is not liable for the Section 8 subsidy portion of the rent, and the owner may not terminate the tenancy for nonpayment of the same. (Am. Compl. ¶ 30.)

Despite the fact that Plaintiffs have allegedly "consistently paid their tenant share throughout their time living in their apartment" (Am. Compl. ¶ 35), Plaintiffs allege that the Landlord Defendants nonetheless charged them rent totaling at least $8,936.58 in excess of what they lawfully owed (Am. Compl. ¶ 45) and, in fact, collected $3,389.50 in excess of the legally collectible rent from Plaintiffs, based on alleged overcharges being made to "the Batistas' ledger" commencing in July 2022 (Am. Compl. ¶ 37), overpayments being made by Plaintiffs during a period when they were only able to reside in the apartment for a limited time due to a partial collapse of the Building (Am. Compl. ¶¶ 38-40), the suspension of rent payments by NYCHA from January to November 2024 due to failure to maintain services (including problems with the kitchen, bathroom, bedroom door, and living room window) (Am. Compl. ¶ 43), the failure of NYCHA to increase its payments in response to rent increases in June of 2024 and 2025 (Am.

Compl. ¶ 44), and the failure to apply a rent credit secured as part of a stipulation of settlement

obtained by the Legal Aid Society (Am. Compl. ¶¶ 47-50).  Notably, the Amended Complaint does

not allege that the Attorney Defendants were responsible for calculating the rents owed by

Plaintiffs, that they were aware of the history forming the basis of the alleged overcharges when

they commenced their rent collection efforts on behalf of the Landlord Defendants, or that they

were responsible for collecting, or did collect, any of the "$3,389.50 in excess of the legally

collectible rent."  (Am. Compl. ¶ 50.)  Just as notably, the Amended Complaint fails to allege that

the Attorney Defendants had no procedures in place to attempt to verify the debts they were

engaged to collect, or that the procedures they had in place for this purpose weren't followed in

this instance.  Further, the Amended Complaint contends that the first effort by the Attorney

Defendants to collect on the allegedly wrongfully charged debt occurred on February 18, 2025

with the service upon Plaintiffs of a "Fourteen (14) Day Notice to Tenant," or a rent demand,

"claiming that [Plaintiffs] owed $8,339.60 in rental arrears" (the "February 2025 Demand"), which

commenced the challenged debt collection practices more than a year prior to the commencement

of this lawsuit on March 30, 2026.  (Am. Compl. ¶ 61 & Ex. A (ECF # 37-1) at 3.)[3]

---

[3] Notably, the February 2025 Demand specifically stated that, "[u]nder the provisions of the [FDCPA], Edelman Schwartz PLLC may be considered Debt Collectors in the attempt to collect rent." (Am. Compl., Ex. A at 3.)  It also stated  that, "[u]nless you dispute the validity of the debt or any portion thereof within thirty (30) days following receipt of this notice, [the Attorney Defendants] will assume that the debt sought to be collected is valid" (*id.*), and that, "following the expiration date of 3/10/2025," the Landlord Defendants are "permitted . . . to commence summary proceedings under Article 7 of the Real [P]roperty Actions and Proceedings Law [("N.Y. RPAPL")]." (*Id.*)  It also stated that, "notwithstanding our indication that you have thirty days from receipt of this notice, to dispute the validity of the debt, if the money demanded herein is not paid by [3/10/2025], ***summary proceedings will be commence[d]***." (*Id.*)  Of critical importance to the question of the accrual of any FDCPA claim that might be based thereon, the Demand Letter was a ***legally required*** prerequisite to the filing of the Petition in Housing Court, *see* RPAPL §§ 711(2); 735 (requiring written demand for rent payments prior to bringing summary proceedings to be "made with at least fourteen days' notice  . . . .") and, as such, it was indisputably the first step in the challenged debt collection process forming the basis of Plaintiffs' FDCPA claim.  In fact, in opposing the Attorney Defendants' Original Motion addressed to the originally filed

Following this legally required first step in the collection effort, Plaintiffs allege that, on March 31, 2025, Defendant 1915 Realty, "through the Attorney Defendants, commenced a non-payment of rent proceeding against [Plaintiffs] in Bronx Housing Court" (Am. Compl. ¶ 63, Ex. A) for the rent claimed to be due by Plaintiffs, alleging rental arrears "amounting to $9,132.76" ("Petition") (Am. Compl. ¶ 63.) Conceding this was all part of the same collection process (*see* Orig. Opp. at 31), Plaintiffs allege that this effort was improper, and sought rents which were not, in fact, owed by Plaintiffs "because the Landlord Defendants did not properly follow the DHCR rent reduction order following a partial collapse of the subject building, did not properly apply the $2,500 settlement credit, and did not submit certification to NYCHA to increase [Plaintiffs]' rent before doing so on their rent bills and tenant statement." (Am. Compl. ¶ 73.)

The Amended Complaint alleges that defendant David Kleiner, alleged owner of defendant DKCK, "is the one that makes the decision about whether to forward a tenant's account to the Attorney Defendants to file the non-payment petitions" (Am. Compl. ¶ 67), and that "Mr. Kleiner provided the Attorney Defendants the rent ledger upon which these alleged arrears are based." (Am. Compl. ¶ 68.) Asserting that a review of the rent ledger should have alerted the Attorney Defendants to the fact of the Section 8 subsidy and that the landlord was seeking the subsidy portion of the rent (Am. Compl. ¶¶ 70, 76), Plaintiffs allege that the Attorney Defendants must therefore have "either misrepresented [in some unidentified document] that they had performed a meaningful attorney review of the petition [as apparently allegedly required by some unidentified law, rule or regulation], or they performed a meaningful review, saw the ledgers showing the

---

Complaint herein, Plaintiffs expressly acknowledged this. (Orig. Opp. at 31 ("the facts that lead to the conclusion that the rent sought in the [Petition] and the rent sought in those earlier communications was not owed *are the same*") (emphasis added).

money owed was NYCHA's Section 8 subsidy rather than the portion to be paid by [Plaintiffs], and sued them anyway, knowing that [Plaintiffs] did not owe the money." (Am. Compl. ¶ 78.)

Further, Plaintiffs allege that Mr. Batista "communicated with his landlord multiple times to explain that his rent ledger included more than his . . . tenant share," while failing to allege that Mr. Batista or the landlord passed any of this information on to the Attorney Defendants. (Am. Compl. ¶ 80). And Plaintiffs nowhere allege that either the Batistas or anyone acting on their behalf otherwise communicated any such contentions to the Attorney Defendants until September 23, 2025, when "Bronx Legal Services sent an email to Edelman Schwartz . . . explaining that [Plaintiffs] had made all of their payments for their share of the rent and requested that Edelman Schwartz dismiss the case with prejudice or a motion for summary judgment would be filed." (Am. Compl. ¶ 82.) In response, Plaintiffs concede that defendant Zev Schwartz sent an email on September 26, 2025, confirming that it was his understanding that "in [M]ay 2025 [Plaintiffs] owed around [$]9200 . . . and [g]ave him [$]2500 credit in February 2024" (*id.*), evidencing that he, in fact, was ***not*** aware of the rent he was retained to collect consisting of what was supposed to be covered by Section 8 subsidies.

Following this exchange, Plaintiffs allege that, on October 1, 2025, an additional email was sent to the Attorney Defendants requesting dismissal, and then on October 21, 2025, Plaintiffs filed a motion for an amended answer and summary judgment or, alternatively, dismissal ("Motion to Amend"). (Am. Compl. ¶¶ 83-84.) That motion allegedly "was accompanied by an affirmation in support of the motion, as well as all of the documentation that would demonstrate that [Plaintiffs] did not owe any rental arrears," and included "a proposed amended answer" including affirmative defenses and three counterclaims. (Am. Compl. ¶ 84; *see also* Declaration of Peter J. Biging dated May 22, 2026 ("Biging Decl."), ¶ 3, Ex. 1 ("Amended Answer").) Significantly,

8

although Plaintiffs had every opportunity to do so, the Amended Answer did not contain counterclaims for the alleged violations of the FDCPA, New York General Business Law, New York Judiciary Law, or gross negligence asserted in this action. (*Id.*)

Following the submission of this motion, it is alleged that no further activity occurred in the rent collection proceeding, with instead the parties then agreeing to adjourn the hearing on Plaintiffs' Motion to Amend three times, ultimately to April 22, 2026. (Am. Compl. ¶¶ 85-89.) During this time frame, Mr. Schwartz is alleged to have responded to an email providing him "with a summary of the reasons why [Plaintiffs] do not owe any rent" by stating, "Let me review." (Am. Compl ¶ 88., Ex. Z). Then, on April 22, 2026, the Attorney Defendants discontinued the Petition because they "agree[d] that the Petition was satisfied." (Am. Compl. ¶ 90, Ex. AI.) With this, Plaintiffs' Motion to Amend was "withdrawn without prejudice" (*id.*) and it was agreed that any dispute about rent money in the Bronx County Housing Court was concluded.[4]

Prior to the discontinuance of the Petition and withdrawal of the Motion to Amend, Plaintiffs filed the Original Complaint herein on March 30, 2026. After fully briefing the Attorney Defendants' Original Motion, Plaintiffs sought permission to amend their Complaint, which this Court granted on July 14, 2026. The same day, this Court held oral argument on only a single argument the Attorney Defendants contended warranted dismissal of the FDCPA claim—namely, the Attorney Defendants' statute of limitations argument based on the FDCPA's one-year statute of limitations. (*See* Orig. Mot. at 8-11; Orig. Reply at 2-5.) Although the Court stated that it was inclined to dismiss all claims and decline to exercise supplemental jurisdiction over the remaining

---

[4] While the Amended Complaint contends that "[t]he Batistas continue to receive billing statements that allege arrears that are a result of being charged" as late as July 2026 (Am. Compl. ¶ 91), there is no allegation that the Attorney Defendants have had any role in preparing or sending these billing statements, or were even aware of them.

9

claims in the event that the FDCPA claim was deemed time-barred, the Court entered a summary order the next day, without detailing its reasoning, "den[ying] the Attorney Defendants' motion to dismiss to the extent it seeks dismissal of the FDCPA as time-barred." (ECF No.36, Order dated July 15, 2026 ("Order").

Like the Original Complaint, the Amended Complaint continues to allege that "the Attorney Defendants either systematically misrepresent [(to who or in what manner is unclear)] that they have performed a meaningful attorney review of the lawsuit prior to filing, or they do perform such a review and fail to plead that the consumer is a Section 8 tenant and is not responsible for the rent owed, but nonetheless sue the consumer for arrears." (Am. Compl. ¶ 95.) Plaintiffs also again cite three alleged examples of petitions purportedly filed in other cases in which the Attorney Defendants' alleged "conduct has harmed (and certainly has the potential to harm) consumers beyond [Plaintiffs]." (Am. Compl. ¶¶ 98-113.)

As to alleged injuries suffered by the Plaintiffs, the Amended Complaint alleges that, while Plaintiffs have apparently not actually paid the overcharge complained of, or otherwise incurred anything more than *de minimis* costs of traveling to and from Housing Court to address and resolve the matter, Plaintiffs "feel embarrassed, humiliated, and worn down by their attorneys, and the persistent false allegations that [Plaintiffs] have not paid their share of rent." (Am. Compl. ¶ 116.) Accordingly, despite not asserting these claims as proposed counterclaims in the Bronx Housing Court in connection with the Petition (which they had every right to do in the context of a State Court system specifically set up to handle these types of issues), the Amended Complaint again asserts claims against the Attorney Defendants in this Court for violations of the FDCPA (Count I), New York General Business Law § 349 (Count II), New York Judiciary Law § 487 (Count III), and for gross negligence (Count IV).

10

The Attorney Defendants now move at this time to dismiss the Amended Complaint for the reasons set forth below.

## STANDARD OF REVIEW

The Court is respectfully referred to the Attorney Defendants' Memorandum of Law in Support of its motion to dismiss the Original Complaint for a discussion of the applicable standard of review. (*See* Orig. Mot. at 7-8.)

## ARGUMENT

**I.    PLAINTIFFS' FDCPA CLAIM SHOULD BE DISMISSED.**

### A.    Plaintiffs' FDCPA Claim is Time-Barred Under the Applicable One-Year Statute of Limitations.

While noting the Court has already ruled on the question of whether the Plaintiffs' FDCPA claim is time-barred, in order to ensure that the issue has been preserved for re-argument or appeal, the Attorney Defendants briefly again note that they believe the Plaintiffs' FDCPA claim is barred by the one-year statute of limitations provided in the statute. 15 U.S.C. § 1692k(d). Without repeating the arguments previously raised and rejected by the Court in its prior ruling, the Attorney Defendants note, in short, that there is no dispute that there is a one-year statute of limitations, there is no dispute that, "absent the application of an equitable doctrine, the statute of limitations in § 1692k(d) begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered," *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019)), and that there is no dispute that "the claim accrues on the date of the ***initial [mis]representation***." *Oliver v. U.S. Bancorp.*, 2015 U.S. Dist. LEXIS 88713, at *6 (S.D.N.Y. July 8, 2015) (emphasis added) (collecting cases); *see also Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999).

Because here it is alleged that the Attorney Defendants violated the FDCPA by attempting to collect the portion of the rent for which NYCHA was responsible, and this collection effort

11

commenced with the service on February 2025 Demand upon the Batistas of a "Fourteen-Day Rent Demand dated February 18, 2025" (Am. Compl. ¶ 61)—which was sent as a statutory predicate notice required under N.Y. RPAPL § 711 as a precondition to filing a non-payment proceeding under Article 7 of the RPAPL (*id.*)—it is respectfully submitted that there should be no question that the commencement of this action over one year later is untimely.  *See Rotkiske*, 589 U.S. at 10; *Oliver*, 2015 U.S. Dist. LEXIS 88713, at *6 (dismissing FDCPA claims because they "accrue[d] on the date of the initial representation," which was more than one year prior to plaintiff's suit) (collecting cases); *Calka v. Kucker, Kraus & Bruh, LLP*, 1998 U.S. Dist. LEXIS 11868, at *8-*9 ("The instant complaint was filed . . . more than one year after the [FDCPA] violation.  Accordingly, the FDCPA claim is barred by the one-year period of limitations.") (citing 15 U.S.C. § 1692k(d)); *Parker v. Pressler & Pressler, LLP*, 650 F. Supp. 2d 326, 338-340 & nn.7, 8 (D. N.J. 2009) (citing *Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992) ("The date on which [defendant] mailed the letters was its last opportunity to comply with the FDCPA, and the mailing of the letters, therefore, triggered [§] 1692k(d)." (alterations in original))).

     **B.**       **Plaintiffs' FDCPA Claim Should Be Dismissed Because Plaintiffs Lack Article III Standing.**

In any event, Plaintiffs lack standing to assert their FDCPA claim, and it should be dismissed for this reason as well.

"To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered concrete harm."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).  As the U.S. Supreme Court succinctly put it: "No concrete harm, no standing."  *Id*.  "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve."  *Id*. at 423 (citation

omitted).  To be "concrete," the harm must be "real, and not abstract."  *Id* at 424 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)).  And in assessing whether this concrete harm has been alleged, the Supreme Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Spokeo*, 578 U.S. at 341.  Rather, "Article III standing requires concrete injury even in the context of a statutory violation."  *Id.*

Here, Plaintiffs' claimed injuries purportedly resulting from the Attorney Defendants' alleged violations of the FDCPA are "significant emotional distress, embarrassment, humiliation, increase of blood pressure, [unstated] forgone wages because of missing work [for Court appearances], and associated transportation costs" from traveling to and from the Bronx County Housing Court.  (Am. Compl. ¶ 132.)  And as a review of the relevant case law makes clear, none of these alleged injuries come close to satisfying Article III's standing requirement that the injuries alleged as a result of the Attorney Defendants' purported violations of the FDCPA be "concrete [and] particularized."  *TransUnion*, 594 U.S. at 423.

Indeed, "courts in the Second Circuit have generally been circumspect in awarding damages for emotional harm in FDCPA cases," *Gomez v. Resurgent Capital Servs., L.P.*, 129 F. Supp. 3d 147, 153 (S.D.N.Y. 2015), and many courts have held that, in FDCPA standing cases, "anxiety and embarrassment are not injuries in fact" and have "expressly rejected 'stress' as constituting concrete injury following an FDCPA violation."  *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (collecting cases); *see also Finch v. Slochowsky & Slochowsky, LLP*, 2020 U.S. Dist. LEXIS 181698, at *10 (E.D.N.Y. Sept. 30, 2020) ("The filing of a lawsuit to collect a debt—even if the lawsuit is meritless—is not properly understood as 'conduct the natural consequence of which is to harass, oppress, or abuse any person' under [15

13

U.S.C. § 1692d]"); *Spitz v. Caine & Weiner Co., Inc.*, 2024 U.S. Dist. LEXIS 2944, at \*11 (E.D.N.Y. Jan. 5, 2024) ("[Plaintiffs] do not plausibly allege that [Plaintiffs] experienced conduct analogous to negligent infliction of emotional distress, let alone that such an analogue could establish Article III standing for an FDCPA claim.").[5]

Even in their attempt to amend the Original Complaint, Plaintiffs still do not allege that the Attorney Defendants engaged in "harassment" or multiple egregious debt-collection phone calls or interactions. Rather, they allege only that the Attorney Defendants sent one Notice to Plaintiffs—the February 2025 Demand regarding allegedly unpaid rent (Am. Compl. ¶ 61), which purportedly began the Attorney Defendants' allegedly wrongful rent collection efforts—and then, on behalf of the Landlord Defendants, filed the Petition in the Bronx County Housing Court seeking to collect that rent. (Am. Compl. ¶¶ 63-72.)[6] Thereafter, following provision to the Attorney Defendants of a summary of the reasons Plaintiffs believed no rent was due, and documentary support for their position regarding this issue, nothing happened in the rent proceeding other than a few agreed-upon adjournments (during which time Mr. Schwartz advised he needed to review what was provided in this regard), and then a voluntary dismissal of the Petition and withdrawal of Plaintiffs' proposed counterclaims in the Amended Answer. (*See supra* pp. 4-6). These sole allegations regarding the Attorney Defendants' conduct "do not plausibly allege that [Plaintiffs] experienced conduct analogous to negligent infliction of emotional distress,

---

[5] Nor do *de minimis* transportation costs to and from Bronx County Housing Court constitute a concrete injury that the FDCPA was designed to prevent. *See Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 585 (E.D.N.Y. 2015) ("[T]he Second Circuit . . . [has] refused to award statutory damages for *de minimis* or technical violations of FDCPA.") (collecting cases).

[6] In fact, the Amended Complaint does not even allege that the February 2025 Demand was not the result of a "bona fide error," or that the Attorney Defendants did not maintain procedures to attempt to avoid such an error, both affirmative defenses to a FDCPA claim. *Cf. Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 537 (6th Cir. 2014).

let alone that such an analogue could establish Article III standing for an FDCPA claim." *Spitz v. Caine & Weiner Co., Inc.*, 2024 U.S. Dist. LEXIS 2944, at *11 (E.D.N.Y. Jan. 5, 2024).[7]

Accordingly, even with the Court having concluded that Plaintiffs' FDCPA claim is not time-barred, the claim should be dismissed for lack of Article III standing due to Plaintiffs' failure to allege a concrete injury in fact.

## II. PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

With the dismissal of Plaintiffs' FDCPA claim, the Court should decline to exercise

---

[7] Indeed, the FDCPA was meant to redress violations by debt collectors sending direct, false and harassing communications to consumers outside of any judicial proceeding. The non-payment Petition in Bronx Housing Court is a court filing addressed to a tribunal, not a communication to a consumer, and is subject to challenge, motion practice, discovery and judicial determination. The consumer protection rationale for FDCPA liability—protecting unsophisticated consumers from deceptive private collection communications with no neutral arbitrator—therefore does not even apply here. *See S. Rep. No. 382, 95th Cong., 1st Sess.* (1977) (FDCPA enacted to prohibit, *inter alia*, "a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress or abuse any person . . . ."). FDCPA liability does not extend to court filings, as opposed to collection letters and communications, because the statute's intent was to address collection agencies using abusive, harassing and deceptive tactics to collect consumer debts outside of any judicial supervision. *Id.* Adequate state remedies exist to address such conduct and, indeed, prior to the Attorney Defendants discontinuing their Petition, Plaintiffs brought proposed counterclaims in their Motion to Amend in Bronx Housing Court. (*See supra* p. 6; Biging Decl. ¶ 3, Ex. 1.) Although that Petition has now been discontinued and Plaintiffs' Motion to Amend and proposed counterclaims withdrawn—underscoring that Plaintiffs have not suffered concrete injury (*see supra* pp. 6-7)—they can always bring those claims (or the claims here or other claims) in that Court again, which, if brought, would further the interests of judicial economy rather than burdening this Court as a federal court of appeal for every disputed New York State non-payment proceeding. *Cf. Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-820 (1976) (federal courts may abstain in favor of parallel state court proceedings based on judicial economy and wise administration); *Spitz*, 2024 U.S. Dist. LEXIS 2944, at *10 & n.4 ("If Plaintiff so chooses, she may pursue her claims in state court, which has jurisdiction to enforce the FDCPA and '[is] not bound to adhere to federal standing requirements.'" (quoting *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 n.4 (2d Cir. 2021)); *Bidar v. Eckert, Seamans, Chrin & Mellott, LLC*, 2026 U.S. Dist. LEXIS 67866, at *48-49 (E.D.N.Y. Mar. 30, 2026) (abstaining from hearing FDCPA claim and state law claims where parallel state court proceedings existed because "state procedures are adequate to protect Plaintiff's federal rights with respect to Plaintiff's FDCPA claim").

supplemental jurisdiction over the remaining state law claims (for violations of New York General Business Law § 349, New York Judiciary Law § 487, and for gross negligence) under 28 U.S.C. § 1367(c)(3).

Pursuant to 28 U.S.C. § 1367(c)(3), a court "may decline to exercise supplemental jurisdiction" in the event that it "has dismissed all claims over which it has original jurisdiction." The Court wields this discretion by balancing "the traditional values of judicial economy, convenience, fairness, and comity." *Paushok v. Ganbold*, 2021 U.S. Dist. LEXIS 51034, at \*31-32 (S.D.N.Y. Mar. 18, 2021) (citing *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)). And in the event that "all federal-law claims are eliminated before trial," "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari*, 455 F.3d at 122 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, the FDCPA claim is the only basis for federal subject matter jurisdiction. (*See* Am. Compl. ¶¶ 1-2 (citing 28 U.S.C. §§ 1331 and 1367).) Although the parties have commenced discovery,[8] the basis for Plaintiffs' claims have already been before the Bronx County Housing Court, which exists for precisely this kind of housing dispute, has intimate familiarity with the Section 8 framework and NYCHA and, in fact, already became familiar with the parties' dispute before they agreed to discontinue it on April 22, 2026. (*See supra* pp. 4-6; Biging Decl. ¶ 4, Ex. 2.) Accordingly, if Plaintiffs' FDCPA claim is dismissed, as this Court stated during oral argument on July 14, 2026, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them without prejudice in the interests of "judicial

---

[8] Indeed, the parties have already commenced document production and 30(b)(6) depositions have been held for both the corporate representatives of defendant 1915 Realty and Edelman Schwartz.

economy, convenience, fairness, and comity." *Morton v. Cty. of Erie*, 796 F. App'x 40, 44 (2d Cir. 2019) (citing *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004)); *Paushok*, 2021 U.S. Dist. LEXIS 51034, at *31-32 (same); *see also*, *e.g.*, *Lacourte v. Foster & Garbus LLP*, 2014 U.S. Dist. LEXIS 25508, at *8 (S.D.N.Y. Feb. 20, 2014) (Rakoff, J.) (dismissing FDCPA claim with prejudice and "declin[ing] to exercise supplemental jurisdiction over the remaining state law claims, and therefore dismiss[ing] those claims without prejudice"); *Bisono v. Fin. Recovery Servs., Inc.*, 2019 U.S. Dist. LEXIS 129677, at *6 (E.D.N.Y. Aug. 2, 2019) (collecting cases where courts have declined to exercise supplemental jurisdiction over a plaintiff's state law claims after dismissal of FDCPA claims).

## III. EVEN IF THIS COURT RETAINS JURISDICTION OVER THE STATE LAW CLAIMS, THOSE CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW.

### A. Plaintiffs' Claim Under N.Y. General Business Law § 349 Fails as a Matter of Law.

Even if the Court were inclined to exercise its discretion and retain jurisdiction over Plaintiffs' claim under N.Y. Gen. Bus. L. ("GBL") § 349, the claim should be dismissed as a matter of law.

Section 349 makes unlawful "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service." N.Y. GBL § 349. To state a claim under GBL § 349, a plaintiff must allege that: "(1) the defendant's deceptive acts were directed at consumers; (2) the acts are misleading in a material way; and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). "The statute 'does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers." *Baldeo v. Airbnb, Inc.*, 2023 U.S. Dist. LEXIS 176085, at *29 (S.D.N.Y. Sept. 29, 2023); *see also Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,

17

85 N.Y.2d 20, 25 (1995) ("Private contract disputes, unique to the parties, . . . [do] not fall within the ambit of the statute.").

For purposes of GBL § 349, consumer-oriented conduct is activity that causes any "consumer injury or harm to the public interest." *Id*. (*quoting Anderson v. Unilever United States, Inc*., 607 F. Supp.3d 441, 451 (S.D.N.Y. 2022)). "[T]here is no claim under GBL § 349 where the private transaction does not have ramifications for the public at large." *Id*.; *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 636 (S.D.N.Y. 2008) ("Whether a plaintiff can bring a section 349 claim will depend on 'whether the matter affects the public interest in New York.'" (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)); *Fecteau v. Safety Nat'l Cas. Corp*., 2026 U.S. Dist. LEXIS 66412, *44 (S.D.N.Y. Mar. 25, 2026). In other words, "the gravamen of the complaint" must be harm to the public interest. *Securitron*, 65 F.3d at 264; *see also Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1988) (same); *Lautman v. 2800 Coyle St. Owners Corp.*, 2014 U.S. Dist. Lexis 72703, at *25 (E.D.N.Y. May 23, 2014); *Aguaiza v. Vantage Properties, LLC*, 2009 N.Y. Misc. LEXIS 5700, at *14 (Sup. Ct. N.Y. Cnty. May 21, 2009) ("[A] claim brought under this statute must be predicated on an act or practice which is 'consumer-oriented,' that is, an act having the potential to affect the public at large, as distinguished from merely a private contractual dispute. . . .") (citation omitted) (alterations in original).

Here, the Amended Complaint alleges, in conclusory fashion, that all Defendants violated GBL § 349 "by using deceptive acts and practices in the conduct of their business," and that "[t]hese acts were done by Defendants systematically and, as such, have had a broad impact on consumers at large." (Am. Compl. ¶ 139.) In purported support of this bald allegation, as to the Attorney Defendants, the Amended Complaint alleges that the "Attorney Defendants have filed

18

many cases in which rent demands and/or petitions allege arrears that include or are entirely made up of the portion of the rent covered by the Section 8 subsidy and not due or owed by the tenant," provides three purported examples of such cases, and contends that defendant "Zev Schwartz filed over 500 lawsuits seeking rent from tenants in the Bronx in 2025 alone."  (Am. Compl. ¶¶ 93-113.)  "But there is nothing inherently inappropriate about a debt collector suing tenants for rental arrears.  And plaintiff's allegation regarding the number of eviction actions filed by a law firm, without more, does not enable a court to 'draw the reasonable inference' that defendants are engaged in a pattern of misconduct involving other tenants." *Finch*, 2020 U.S. Dist. LEXIS 181698, at *18 (citing *Iqbal*, 556 U.S. at 678).

Indeed, the crux of the allegations in the Complaint involve a single landlord/tenant relationship between the Landlord Defendants and Plaintiffs, as well as certain actions taken by the Attorney Defendants at the Landlord Defendants' instruction (namely, sending the February 2025 Demand and then filing the Petition).  Putting aside the fact that there are no allegations that, prior to the filing of the February 2025 Demand or the Petition, the Attorney Defendants were aware of any of the facts proffered by Plaintiffs as evidence that they were being overcharged on their rent, this is quintessentially a "disputed private transaction [that] does not have ramifications for the public at large." *Obal v. Deutsche Bank Nat'l Trust Co.*, 2015 U.S. Dist LEXIS 18124, at *21 (S.D.N.Y. Feb. 13, 2015); *see also Remler v. Cona Elder Law, PLLC*, 2022 U.S. Dist. LEXIS 177660, at *21-*22 (E.D.N.Y. Sept. 29, 2022).

Nor does the Complaint adequately allege that the Attorney Defendants' purported conduct was commercial activity directed at consumers generally, or that Plaintiffs were ever "deceived" by the Attorney Defendants as required by GBL § 349. *See Remler v. Cona Elder Law, PLLC*, 2022 U.S. Dist. LEXIS 177660, at *21-*22 (E.D.N.Y. Sept. 29, 2022) ("The challenged conduct

here consists of filing a single complaint that suffered from various alleged deficiencies . . . .  This conduct—the prosecution of an individual lawsuit—was not commercial activity directed at consumers generally, nor did it have any 'ramifications for the public at large.'" (quoting *Obal*, 2015 U.S. Dist. LEXIS 18124, at *8)); *see also Aguaiza*, 2009 N.Y. Mist. LEXIS 5700, at *14-*25 ("It may be quite true that Plaintiffs were frustrated, aggravated, emotionally distressed and/or even fearful about Defendants' activities wrongly calling into question their non-violation of any substantial obligation of their leases, but they were not fooled.  To reiterate, there is not a single allegation in the [Complaint] that Plaintiffs were actually deceived and suffered an actual injury therefrom."); *Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 961 (1993) ("Whether or not defendant's actions were proper, manifestly they did not mislead plaintiffs in any material way and did not constitute 'deceptive acts' within the meaning of the statute.").

Indeed, highlighting the lack of the requisite deception, the Complaint itself alleges that Plaintiffs disputed the rental amounts they allegedly owed at every turn, including after the Petition was filed, after which the Attorney Defendants ultimately discontinued the Petition and "agree[d] that the Petition was satisfied."  (*See supra* p. 6; Biging Decl. ¶ 4, Ex. 2.)  The Attorney Defendants' actions therefore do not come close to satisfying GBL § 349's requirement that a defendant's acts be "deceptive" or that the Attorney Defendants' "injured" Plaintiffs as a result of any purported "deception."  *See Aguaiza*, 2009 N.Y. Mist. LEXIS 5700, at *24-*25; *Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 961 (1993) ("Whether or not defendant's actions were proper, manifestly they did not mislead plaintiffs in any material way and did not constitute 'deceptive acts' within the meaning of the statute.").

Plaintiffs' claim under GBL § 349 should therefore be dismissed as a matter of law. *Accord Lautman*, , 2014 U.S. Dist. LEXIS 72703, at *25-*26 (because, *inter alia*, "plaintiff does

20

not assert that he himself was in any way misled by the allegedly false rent arrears and other charges claimed by defendants in the Housing Court proceedings . . . plaintiff's [GBL] section 349 claim with respect to the defendants' conduct in connection with the Housing Court proceeding must be dismissed with prejudice"); *Aguaiza v. Vantage Properties, LLC*, 69 A.D.3d 422, 423 (1st Dep't 2010) ("Plaintiff's allegations of unlawfully deceptive acts and practices under [GBL § 349] presented only private disputes between landlords and tenants, and not consumer-oriented conduct aimed at the public at large, as required by the statute.  Accordingly, this claim was properly dismissed. . . ."); *Finch*, 2020 U.S. Dist. LEXIS 181698, at *18; *Remler v. Cona Elder Law, PLLC*, 2022 U.S. Dist. LEXIS 177660, at *21-*22.

## B.    Plaintiffs' Claim under N.Y. Judiciary Law § 487 Fails as a Matter of Law.

Plaintiffs' third cause of action against the Attorney Defendants, for a violation of N.Y. Judiciary Law § 487, likewise fails and should be dismissed.

"To establish a claim under New York Judiciary Law § 487, a plaintiff must show, at a minimum, 'that defendan[t]: (1) [is] guilty of deceit or collusion, or consent[ed] to any deceit or collusion; and (2) had an intent to deceive the court or any party.'" *Shad v. Zachter PLLC*, 2024 U.S. Dist. LEXIS 40559, at *13-14 (S.D.N.Y. Mar. 7, 2024) (citing *Ray v. Watnick*, 182 F. Supp. 3d 23, 28 (S.D.N.Y. 2016).  "Relief under a cause of action based upon Judiciary Law § 487 'is not lightly given' . . . and requires a showing of 'egregious conduct or a chronic and extreme pattern of behavior' on the part of the [Attorney Defendants] that caused damages." *Id.* (citing *Facebook, Inc. v. DLA Piper LLP (US)*, 134 A.D.3d 610, 615 (1st Dep't 2015)).  In addition, a claim under Section 487 must be pleaded with particularity. *See Bryant v. Silverman*, 284 F. Supp. 3d 458, 469 (S.D.N.Y. 2018); *see also Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 116 & n.6 (E.D.N.Y. 2020) ("Hardly surprising, given the intentional nature of the harm,

21

allegations regarding an intent to deceive must be stated with particularity [under Fed. R. Civ. P. 9(b)].").

The Complaint here does not come close to pleading a Judiciary Law § 487 claim, let alone pleading such a claim with sufficient particularity. Rather, the Amended Complaint continues to make only threadbare descriptions of the statute itself (Am. Compl. ¶¶ 151-152), and does not even identify *what* conduct Plaintiffs allege constituted violations of it. Although the Amended Complaint contains allegations that the "Attorney Defendants either misrepresented that they had performed a meaningful attorney review of the [P]etition, or they performed a meaningful review . . . and sued [Plaintiffs] anyway, knowing that [Plaintiffs] did not owe the money" (Am. Compl. ¶ 78), this allegation is "devoid of any particularity concerning the attendant circumstances [and] would scarcely meet the bare plausibility standard articulated in *Twombly*, let alone the heightened pleading standard of Rule 9(b) or the 'strict test New York law imposes to satisfy § 487.'" *Brake*, 504 F. Supp. 3d at 117 (quoting *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 597 (S.D.N.Y. 2008). Simply stated, there is no allegation that the Attorney Defendants made any representation as to any review they undertook prior to commencing the Housing Court proceeding in issue, and there is no specificity as to what was allegedly misrepresented in this regard, to whom, and how this served to perpetrate a fraud or deceit.

Indeed, as set forth above (*see supra* pp. 21-22), the Amended Complaint does not even allege "deceitful intent," let alone conduct that is "extreme or egregious" sufficient to satisfy the heightened pleading standards for a Judiciary Law § 487 claim. *See Ray v. Watnick*, 182 F. Supp. 3d 23, 29-31 (S.D.N.Y. 2016), as amended (May 3, 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017) (liability attaches "only if the deceit is 'extreme' or 'egregious'" and thus "the more appropriate context for analysis is not the law applicable to comparable civil torts but rather criminal law");

22

*see also Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 14 (2009) ("The operative language at issue— 'guilty of any deceit'—focuses on the attorney's intent to deceive, not the deceit's success.").

This is particularly the case where it can be seen that the Attorney Defendants, in fact, discontinued the Petition in the Bronx Housing Court after being provided with evidence of the claimed rent overcharge, and did nothing to further pursue the proceeding before withdrawing the Petition.  (*See supra* p. 21; Biging Decl. ¶ 4, Ex. 2.)  Given the lack of any alleged basis for pursuing a Judiciary Law § 487 claim (and that Plaintiffs have already had an attempt to amend), the claim should be dismissed for failure to state a claim, and the dismissal should be with prejudice.  *Accord Brake*, 504. F. Supp. 3d at 117 ("There is nothing to suggest that plaintiff could plead additional facts that are sufficiently egregious to satisfy the statute, much less with the particularity required.  Accordingly, plaintiff's Judiciary Law § 487 claim is dismissed without leave to amend.").

### C.    Plaintiffs' Claim for Gross Negligence Fails as a Matter of Law.

Finally, Plaintiffs' claim for gross negligence should also be dismissed as a matter of law.

To state a claim for gross negligence under New York law, "a plaintiff must allege (1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach."  *Hongying Zhao v. JPMorgan Chase & Co.*, 2019 US Dist. LEXIS 40673, at *24-*25 (S.D.N.Y. Mar. 13, 2019) (quoting *Di Benedetto v. Pan Am World Serv.*, 359 F.3d 627, 630 (2d Cir. 2004)).  There must be allegations of "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing."  *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 432 (S.D.N.Y. 2010).  A plaintiff must allege "a compelling demonstration of egregious intentional misbehavior evincing extreme culpability:  malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts."  *Deutsche Lufthansa AG v. Boeing Co.*, 2007

U.S. Dist. LEXIS 9519, at *7 (S.D.N.Y. Feb. 2, 2007) (quoting *Net2Globe Int'l Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 454 (S.D.N.Y. 2003)).

Here, a review of the pleadings reveals that the Amended Complaint—like the Original Complaint before it—alleges no such thing.  Rather, Plaintiffs allege that "Defendants owed [Plaintiffs] a duty pursuant to the FDCPA (Am. Compl. ¶ 159) and GBL § 349 (*id.*), and assert only that "Defendants breached these duties."  (Am. Compl. ¶ 162.)  There is no allegation—or factual basis upon which to plausibly conclude—that the Attorney Defendants engaged in "deliberate or callous indifference to the rights of [Plaintiffs]," *Deutsche Lufthansa AG*, 2007 U.S. Dist. LEXIS 9519, at *7, or conduct that "smacks of intentional wrongdoing." *Anwar*, 728 F. Supp 2d at 432.  Rather, the Amended Complaint alleges only that the Attorney Defendants began collection efforts on behalf of their client (the Landlord Defendants) through the February 2025 Demand and subsequently brought the Petition (Am. Compl. ¶¶ 61-63), and, thereafter, Defendants discontinued the Petition following the making of a motion for summary judgment to amend Plaintiffs' Answer and provision of evidence supporting Plaintiffs' allegations that they had been overcharged on their rent (*see* Biging Decl. ¶ 3, Ex. 1).  There is no allegation that the Attorney Defendants engaged in any "intentional wrongdoing," and it is well settled that, "under New York law, no claim lies in simple negligence against an attorney acting on behalf of a client," *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 391 (E.D.N.Y. 2011) (collecting cases), nor can a claim for gross negligence withstand a motion to dismiss where "none of the facts alleged rise[] to the level of satisfying th[e] additional element" of intentional wrongdoing.  *Id.* at 392.

The gross negligence claim should therefore be dismissed.  *Accord id.* (dismissing, *inter alia*, FDCPA claims and "cause of action for . . . gross negligence for failure to state a claim" under similar circumstances); *Morgan Stanley & Co. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d

24

532, 545 (S.D.N.Y. 2013) (plaintiff's "allegations are insufficient to plead gross negligence or willful misconduct" because they do not provide "a compelling demonstration of intentional misbehavior").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed as to the Attorney Defendants, either based on dismissal of the FDCPA claim and the Court's determination not to exercise subject matter jurisdiction over the remaining state law claims, or based on the insufficiency of each and every claim as a matter of law.

Dated: July 30, 2026
New York, New York

**GOLDBERG SEGALLA LLP**

/s/ *Peter J. Biging*
Peter J. Biging
Andrew H. Reynard
*Attorneys for the Attorney Defendants*
711 Third Avenue
New York, New York 10017
pbiging@goldbergsegalla.com
areynard@goldbergsegalla.com

25