UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

DAMIAN BATISTA,                                   Civil Action No. 1:26-cv-2557-JSR
SANDRA BATISTA,

                              Plaintiffs,

   -against-


EDELMAN SCHWARTZ PLLC,
ZEV SCHWARTZ,
1915 REALTY LLC,
PHELAN PLACE HOLDINGS LLC,
DK & CK MANAGEMENT CORP., and
DOVID KLEINER
      aka DAVID KLEINER,
      aka  DAVID GREEN
      aka DAVID DAVID;


                              Defendants.

-------------------------------------------------------------x



**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' AMENDED-COMPLAINT**

Contents

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

   *Mr. and Mrs. Batista's Tenancy* ................................................................................ 2

   **Defendants' Efforts to Collect Rent Arrears Not Owed by Mr. and Mrs. Batista** ............. 3

   **Defendants' Illegal Lawsuit Harmed Mr. and Mrs. Batista** .................................. 8

   **Defendants' History of Suing for Amounts Not Owed** ........................................ 9

ARGUMENT .................................................................................................................. 10

I.    **PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS.** ........................... 10

II.   **PLAINTIFFS STATE A TIMELY FDCPA CLAIM AGAINST ATTORNEY DEFENDANTS.** ............................................................................................................ 10

III.  **PLAINTIFFS STATE GBL § 349 CLAIMS AGAINST ALL DEFENDANTS** ............ 10

   A.   **Plaintiffs state a claim under GBL § 349 because demanding and suing for rent not owed is objectively deceptive.** .................................................................... 11

   B.   **Defendants' misconduct was consumer-oriented.** ....................................... 12

   C.   **Misrepresentations in a collection lawsuit, including LT non-payment proceedings, have long been held to state claims under GBL § 349.** ....................................... 18

   D.   **Defendants' dragging out litigation after being provided documentation showing the debt was not owed was deceptive.** ............................................................. 18

   E. **By failing to provide NYCHA pre-suit notice and omitting legally required disclosures regarding Section 8 coverage, Defendants deceptively concealed complete tenant defenses from the Batistas and the Housing Court.** ............................................. 18

IV.  **PLAINTIFFS STATE A CLAIM UNDER JUDICIARY LAW § 487 AGAINST THE ATTORNEY DEFENDANTS.** ....................................................................................... 18

V.   **PLAINTIFFS STATE A CLAIM FOR GROSS NEGLIGENCE AGAINST ALL DEFENDANTS.** ............................................................................................................ 19

VI.  **THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' CLAIMS.** ............................................................................................... 22

VII. **PLAINTIFFS STATE A CLAIM FOR INDIVIDUALLY LIABILITY FOR MR. KLEINER** ...................................................................................................................... 22

VIII.   **PLAINTIFFS STATE A CLAIM FOR LIABILITY FOR PHELAN PLACE HOLDINGS LLC** ........................................................................................................... 25

CONCLUSION ............................................................................................................... 26

**Cases**

*Aguaiza v. Vantage Properties, LLC*, 2009 WL 1511791 (Sup. Ct. N.Y. Cnty. May 21, 2009).. 12

*Calixto v. A. Balsamo & Rosenblatt, P.C.*, 244 A.D.3d 674 (2d Dept. 2025) ........................ 20, 22

*Campbell v. MBI Assocs., Inc.,* 98 F. Supp. 3d 568 (E.D.N.Y. 2015) ........................................ 14

*City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616 (N.Y. 2009) ............................... 13

*Colo. Capital v. Owens*, 227 F.R.D. 181 (E.D.N.Y. 2005) ......................................................... 21

*Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO), 2025 WL 871637,
    at *9 (S.D.N.Y. Mar. 20, 2025) ....................................................................... 20, 21, 22

*DER Travel Servs., Inc. v. Dream Tours & Adventures, Inc.*, No. 99 Civ. 2231(HBP), 2001 WL
    1160598, at *4 (S.D.N.Y. Sept. 27, 2001)……………………………………………...23

*Espinosa v. Rand*, 24 A.D.3d 102, 806 N.Y.S.2d 186 (1st Dep't 2005)…………………………24

*Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 WL 5848616 (E.D.N.Y.
    Sept. 30, 2020) ............................................................................................................. 14

*Guzman v. Mel S. Harris and Associates LLC,* 16 Civ. 3499 (GBD), 2018 WL 1665252 (S.D.N.Y.
March 22, 2018)……………………………………………………………………………24

*Harris v. Liberty Cmty. Mgmt., Inc.,* 702 F.3d 1298 (11th Cir. 2012)…………………….…….. 22

*Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402 (E.D.N.Y. 2012), *aff'd*, 529 F.
    App'x 45 (2d Cir. 2013) .................................................................................................. 21

*H. M. Kolbe Co. v. Shaff*, 240 F. Supp. 588 (S.D.N.Y. 1965)……………………………….23, 24

*Hunter v. Palisades Acquisition XVI, LLC*, 2017 WL 5513636 (E.D.N.Y. Nov. 16, 2017) ........ 12

*In re A.N. Frieda Diamonds, Inc.,* 633 B.R. 190 (S.D.N.Y. 2021)……………………………….23

*Lautman v. 2800 Coyle St. Owners Corp*, 2014 WL 2200909 (E.D.N.Y. May 23, 2014) ........... 11

*Lozano v. Grunberg*, 195 A.D.2d 308 (App. Div. 1st Dept. 1993) .............................................. 15

*Martinez v. LVNV Funding, LLC*, 2016 WL 5719718 (E.D.N.Y. Sept. 30, 2016) ....................... 12

*Mayfield v. Asta Funding, Inc.,* 95 F. Supp. 3d 685 (S.D.N.Y. 2015)……………………………24

*McCrobie v. Palisades Acquisition XVI, LLC,* 359 F.Supp.3d 239 (W.D.N.Y. 2019) ................. 14

*Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636 (S.D.N.Y. 2013) .................... 12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741
    (N.Y. 1995) ............................................................................................. 11, 14, 17, 18

*Peguero v. 601 Realty Corp.*, 58 A.D.3d 556, 873 N.Y.S.2d 17 (1st Dep't 2009)………………24

*Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.,* 808 F.2d 982 (2d Cir. 1987)………..….…..23

*Remler v. Cona Elder Law, PLLC*, No. 21-CV-5176(ARR)(LB), 2022 WL 4586243 (E.D.N.Y.
    Sept. 29, 2022) ......................................................................................................... 15, 16

*Rotterdam Ventures, Inc. v. Ernst & Young LLP*, 300 A.D.2d 963 (3d Dep't 2002) ............. 19, 20

*Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 DLI JO, 2011 WL 2295116 (E.D.N.Y. June
    7, 2011) ......................................................................................................................... 14

*Ryan v. IM Kapco, Inc.*, 88 A.D.3d 682, 930 N.Y.S.2d 627 (2011)…………………………..20

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F.
    Supp. 3d 109 (S.D.N.Y. 2016) ..................................................................................... 14

*Sanchez v. Ehrlich*, No. 16-cv-8677 (LAP), 2018 WL 2084147 (S.D.N.Y. Mar. 29, 2018). 15, 17,
    18, 22

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995) .................................... 13

*Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892 (N.Y. 1999)....................................... 11, 12

*Sun Prods. Corp. v. Bruch*, No. 10 Civ. 4816 SAS, 2011 WL 5120307 (S.D.N.Y. Oct. 28, 2011), *aff'd,* 507 F. App'x 46 (2d Cir. 2013)…………………………………………………….23

*Torres v. Gutman, Mintz, Baker & Sonnenfeldt P.C.*, No. 17-cv-4109 (KAM) (CLP), 2018 WL 1545687 (E.D.N.Y. Mar. 29, 2018) ........................................................................ 15, 17, 18, 22

*Varela v. Investors Ins. Holding Corp.*, 615 N.E.2d 218 (N.Y. 1993) ......................................... 11

*Victory State Bank v. EMBA Hylan, LLC*, 169 A.D.3d 963, 95 N.Y.S.3d 97 (2019)…………....23

*Villalba v. Houslanger & Assocs., PLLC*, 2022 WL 900538 (E.D.N.Y. Mar. 28, 2022)............. 12

*W. Joseph McPhillips, Inc. v. Ellis*, 278 A.D.2d 682, 717 N.Y.S.2d 743 (3d Dep't 2000)………24

*Water Street Leasehold LLC v. Deloitte & Touche LLP*, 19 A.D.3d 183 (1st Dep't 2005) ......... 20

*White v. Nat'l Home Prot., Inc.*, No. 09 Civ. 4070 (SHS), 2010 WL 1706195 (S.D.N.Y. Apr. 21, 2010)………………………………………………………………………………………….23

*Williams v. New York City Housing Authority*, 975 F. Supp. 317 (S.D.N.Y. 1997)....................... 6

*Wilson v. Selip & Stylianou, LLP*, 24-CV-4108, 2026 WL 851339 (S.D.N.Y. March 27, 2026) 16, 22

**Statutes**

15 U.S.C. § 1692 et. seq....................................................................................................... passim

24 CFR 982.309 ........................................................................................................................ 4

New York General Business Law § 349 et seq....................................................................... passim

New York Judiciary Law § 487 .............................................................................................. passim

**PRELIMINARY STATEMENT**

Plaintiffs Damian Batista and Sandra Batista submit this memorandum of law in opposition to the motions to dismiss the Amended Complaint by Defendants Edelman Schwartz PLLC, a debt collection law firm, and Zev Schwartz, the principal of the firm (collectively "Attorney Defendants"), and of 1915 Realty LLC, Phelan Place Holdings LLC, ("Phelan") DK & CK Management Corp. ("DKCK"), and Dovid Kleiner, aka David Kleiner, aka David Green, aka David David ("Mr. Kleiner") (collectively the "Landlord Defendants").

As detailed in the Amended Complaint and in what follows in this memorandum of law, Defendants pursued the Batistas for alleged rent arrears that they did not owe through billing statements, a rent demand, and a Housing Court non-payment action which they continued to pursue long after they had been showed multiple times in multiple ways that the money they sought was not owed. The Landlord Defendants' records clearly demonstrated that the Batistas had paid their share of their rent every month and that the only money unpaid to the landlord was the Section 8 rent subsidy portion of the rent, which is paid by the New York City Housing Authority except when, as here, the subsidy has been suspended due to substandard conditions in the apartment. In fact, the Batistas were owed a credit when they were sued because their landlord failed to adjust their rent pursuant to an administrative order that for a time reduced their monthly rent to $1/month and because their landlord failed to properly apply a $2,500 credit they were due under a settlement in an earlier lawsuit.

The practices that led to the illegal debt collection efforts against the Batistas also impacted the tenants in three other Housing Court non-payment cases as described in the Amended Complaint. Moreover, the defendants' practices threaten a much larger number of tenants. When it believes it is owed rent for a tenant's apartment in any of the dozens of buildings it manages,

1

DKCK generates a rent ledger showing as arrears owed by the tenant all money that has not been received by the landlord, whether it is money that should have been paid by NYCHA or by the tenant. DKCK sends the ledger to the Attorney Defendants to send rent demands and then to file nonpayment petitions.

Because the allegations in the Amended Complaint regarding these practices state claims against the Attorney Defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York Judiciary Law §487, and against all Defendants under New York General Business Law §349 and common law gross negligence, the motions to dismiss should be denied.

**STATEMENT OF FACTS**

***Mr. and Mrs. Batista's Tenancy***

Mr. and Mrs. Batista have lived in their rent-stabilized apartment for eighteen years. Amended Complaint ("Am. Compl."), ¶ 20. The Batistas are participants in the federal Housing Choice Voucher Program ("Section 8") administered by the New York City Housing Authority ("NYCHA"), and under Section 8 program regulations, NYCHA determines the share of the monthly rent the Batistas must pay based on their income. *Id.*, ¶¶ 23-24. NYCHA pays the difference between the Batistas' share of the rent and the legally regulated monthly rent directly to 1915 Realty. *Id.*, ¶ 25. NYCHA may suspend Section 8 payments when a landlord does not maintain the apartment in compliance with Housing Quality Standards ("HQS") required under the Section 8 program. *Id.*, ¶ 28-29. Mr. and Mrs. Batista cannot legally be held responsible for the Section 8 portion of the rent. *Id.*, ¶ 30-31.

Mr. and Mrs. Batista's current monthly share of the rent, as established by NYCHA, is $982.00. *Id.*, ¶ 33. Prior to this, for the months relevant to this proceeding, the Batistas' share of

2

the monthly rent was $1,023.00 between July 1, 2021, through July 31, 2022; $973.00 between August 1, 2022, through May 31, 2023; $1,076.00 between June 1, 2024, through July 31, 2024; $892.00 between August 1, 2024, through August 31, 2025; and $707.00 between September 1, 2025, through May 31, 2026. *Id.*

On December 11, 2023, the building where Mr. and Mrs. Batista reside partially collapsed, leaving the structure open to the elements. *Id.*, ¶ 38. This resulted in the issuance of a vacate order because the conditions were found to be "imminently perilous to life, public safety, and the safety of occupants or danger to property" and the entire structure was deemed "unsafe to enter and/or occupy." *Id*. The collapse led to a rent reduction order by New York State Homes and Community Renewal ("HCR") that established a legal regulated rent of $1.00 per month as of December 11, 2023. *Id.*, ¶ 39. The rent was restored effective January 4, 2024. *Id.* A second rent reduction order was issued because of a failure to maintain services in the Batistas' apartment, including an uneven kitchen floor, loose bathroom sink, broken bedroom door, broken living room window, and plaster and paint needed throughout the apartment. *Id.*, ¶ 43.

### *Defendants' Efforts to Collect Rent Arrears Not Owed by Mr. and Mrs. Batista*

Mr. and Mrs. Batista receive rent invoices from Landlord Defendants each month that show a charge for the total contract rent for their apartment,[1] rather than the tenant portion for which they are legally responsible. *Id.*, ¶ 52. The Batistas have on occasion, on account of these erroneous bills, paid more than they were required to pay. *Id.*, ¶¶ 46, 49. This, along with other deceptive

---

[1] The rent ledger provided by Defendants in Bronx County Housing Court shows that the Batistas were charged $2,051.38 in monthly rent at least as early as July 2022; the charge increased to $2,112.82 in June 2024, and then to $2,170.92 in June 2025. Am. Compl. Ex. E. The latter two amounts do not take into account the rent reduction order in effect as of March 1, 2024. Am. Compl. Ex. H.

accounting practices, has resulted in both overpayments of rent[2] and overcharges[3] which have accumulated in the form of fictitious arrears.

The Landlord Defendants engaged in another deceptive practice in August 2022, again in June 2025, and again in July 2026, when they failed to submit certifications to NYCHA to increase Mr. and Mrs. Batista's rent before doing so on their rent bills and tenant statement. *Id.*, ¶¶ 37, 44-45; Am. Compl. Ex. D and Ex. AJ. The Section 8 subsidy therefore did not increase to cover the higher rent, for that month and for multiple subsequent months, and the shortage that resulted from the unadjusted NYCHA Section 8 share was either wrongly paid by the Batistas or improperly added to the Batistas' alleged arrears. *Id*.

When NYCHA suspended the Section 8 subsidy from January 2024 through November 2024, due to conditions including the partial collapse and vacate order, *Id.*, ¶ 41, 1915 Realty charged the Batistas for the total contract rent, illegally adding the Section 8 charges to Mr. and Mrs. Batista's arrears. *Id*. Tenants are not responsible in such a scenario absent a lengthy termination process for which the landlord would have notice. *Id.*, ¶ 53; 24 CFR § 982.309 *et seq*.

DKCK is the property management company that generates the billing statements and rent ledgers for 1915 Realty. *Id.*, ¶ 16.  Mr. Kleiner, who owns and runs DKCK, is a shareholder in 1915 Realty and Phelan, and who personally took the acts and made the decisions that form a basis for the claims in this suit, admitted that it is the practice of the Landlord Defendants to issue rent ledgers, used as a basis for non-payment petitions and pre-suit demands by the Attorney

---

[2] The overpayment totals at least $3,000.00. Am. Compl. ¶ 49. This remains true even if the overpayments that the Landlord Defendants argue are time-barred are removed, as the adjustment would not alter the fact that the Landlord Defendants collected money in excess of the legally collectible rent from Mr. and Mrs. Batista as a result of fraudulent accounting practices. *Id.*; Landlord Mem. p. 12.

[3] The overcharge of Mr. and Mrs. Batista totals at least $8,936.58; $401.04 for the October 2022 through May 2023 overcharge, plus $8,176.24 for suspended NYCHA payments due to HQS violations for January 2024 through November 2024, plus $359.30 for the overcharge in June, July, and August 2025. Am. Compl., ¶ 45.

Defendants, that charge the tenant the Section 8 share of the rent whenever the government does not make its payments, regardless of the reason. Id., ¶¶ 17, 59. Further, Mr. Kleiner and 1915 Realty did not prorate the rent for the months of December 2023 and January 2024 on the Batistas' rent ledger despite the rent reduction order that established a legal regulated rent of $1.00 per month for the period from December 11, 2023, to January 4, 2024. *Id.*, ¶¶ 39-40; Am. Compl. Ex. E. NYCHA resumed regular subsidy payments in December 2024, and in January 2025, NYCHA Section 8 made an additional payment that covered some of the arrears that had accumulated; even after that payment, $8,176.24 in impermissible arrears remained on the Batistas' rent ledger. Am. Compl., ¶¶ 41-42.

The Landlord Defendants also failed to credit the Batistas' account properly with $2,500.00 rent credit that was secured in February 2025 in the settlement of an earlier proceeding. *Id.*, ¶ 47. The $2,500.00 was misdirected to partially pay the Section 8 portion of the rent that NYCHA had withheld from the Landlord Defendants, rather than providing Mr. and Mrs. Batista with a credit toward their share of their rent, as was required by the settlement. *Id.*

Mr. Kleiner is the person who made the decision to file a nonpayment proceeding against the Batistas and provided the Attorney Defendants with the tenant statement upon which the proceeding is based; Attorney Defendants then sent Mr. and Mrs. Batista a rent demand letter dated February 18, 2025, alleging rental arrears amounting to $8,339.60, comprised of $1,121.73 for December 2023, $2,050.28 for January 2024, $1,002.67 for February 2024, $1,013.28 each for April 2024 and May 2024, $1,036.82 each for June 2024 and July 2024, and $64.72 for August 2024. *Id.*, ¶ 63. The Defendants' own ledger shows that Mr. and Mrs. Batista timely paid their share of the rent for all of the months in the rent demand. *Id.*; Am. Compl. Ex. E. In fact, contrary to what the Landlord Defendants allege, the Batistas have timely and consistently paid their rent

5

throughout their tenancy. Landlord Mem. p. 3; Am. Compl. ¶¶ 54, 62.

On or about March 31, 2025, Attorney Defendants commenced a non-payment proceeding against Mr. and Mrs. Batista in Bronx County Housing Court ("LT Proceeding"), threatening to evict them for alleged rent arrears of $9,132.76 from May 2024 through March 2025 that the Batistas did not owe. Am. Compl., ¶¶ 51, 54, 63. These alleged arrears were fraudulently presented in the petition because the Petition alleged arrears that, for most months, matched the Batistas' tenant share, and the Batistas had faithfully paid their share each month. *Id.* ¶ 72. Even a cursory review of the rent ledger would have clearly shown that the bulk of the arrears resulted from the suspension of the Section 8 subsidy. *Id.*, ¶ 70. The top right corner of every page of the ledger shows the rent as of the date of the ledger, followed by the Section 8 portion of the rent and the tenant share. *Id.*, ¶ 70. Furthermore, almost every month on the ledger shows a "S8 payment." *Id.* Mr. Schwartz nevertheless verified the Petition, affirming under penalty of perjury that it was true to his knowledge. *Id.*, ¶ 77.

As NYCHA Section 8 voucher holders, Mr. and Mrs. Batista were entitled to protections in the LT Proceeding which were circumvented by Defendants. *Id.*, ¶¶ 74-76. The petition failed to plead that Mr. and Mrs. Batista are NYCHA Section 8 voucher holders, which deprived the Houring Court of information necessary for the proper adjudication of the proceeding. *Id.*, ¶ 75. The petition also failed to plead compliance with the Second Partial Judgment ("Second *Williams* Consent Decree") in *Williams v. New York City Housing Authority,*[4] or serve NYCHA with copies of the pleadings as required by federal law. *Id.*, ¶ 76; *Williams v. New York City Housing Authority*, 975 F. Supp. 317 (S.D.N.Y. 1997). Pursuant to *Williams,* Defendants were required to certify to NYCHA the factual allegations underlying the proceeding. *Id*. Had they presented the facts

---

[4] A copy of the Second *Williams* Consent Decree has been provided to the Court as an exhibit attached to Plaintiffs' counsel's declaration.

accurately to NYCHA, it would have been clear to NYCHA that the landlord was seeking the subsidy portion of the rent, *Id*., and NYCHA may not have approved the lawsuit. This process could have spared the Batistas the anguish and stress of the Housing Court proceeding.

Mr. and Mrs. Batista were unrepresented when the nonpayment case began and had to go to Bronx County Housing Court to submit a *pro se* answer. *Id.,* ¶ 79. After an initial virtual hearing, the case was calendared for July 1, 2025. *Id.,* ¶ 80. The Batistas again had to travel to court on that day to defend themselves, and were then connected with Bronx Legal Services to assist with their case. *Id.* The case was adjourned to August 22, 2025, and then again to October 24, 2025. *Id.,* ¶ 81.

The Batistas' counsel for the LT Proceeding wrote to Attorney Defendants multiple times to show that Mr. and Mrs. Batista owed no rent. *Id.,* ¶¶ 82-83, 86, 88. The first two emails were on September 23, 2025, and October 1, 2025.These emails provided Attorney Defendants with ample notice that the case was meritless; yet, in the face of this evidence and repeated requests to end the suit, Attorney Defendants continued to litigate the LT Proceeding until April 2026. Atty. Mem. pp.8-9; Am. Compl. Ex. AI.

On October 21, 2025, Mr. and Mrs. Batista, via counsel, filed a motion for an amended answer and summary judgment, or, in the alternative, dismissal. *Id.,* ¶ 84. The motion included documentation that demonstrated that the Batistas did not owe any rental arrears. *Id.* At the October 24, 2025 appearance, the proceeding was adjourned to December 22, 2025 for opposition to the motion. *Id.,* ¶ 85.

The Batistas' counsel sent an email to Attorney Defendants on December 12, 2025, reiterating that Mr. and Mrs. Batista did not owe any rent and the case should be dismissed, and referenced documents that had been filed with the motion for summary judgment. *Id.,* ¶ 86. Mr.

7

Schwartz requested copies of those documents and counsel provided copies of the NYCHA documents, payment information, and the rent reduction orders. *Id.*

At the December 22, 2025 court appearance, an attorney of counsel to Attorney Defendants requested a further adjournment for a final opportunity to file opposition, rather than discontinue the proceeding. *Id.,* ¶ 87. Another email was sent to Attorney Defendants on February 3, 2026, again requesting dismissal of the lawsuit because the Batistas did not owe any rent. *Id.,* ¶ 88.

Mr. Schwartz finally acknowledged that the petition was satisfied when he discontinued the LT Proceeding on April 22, 2026, but this was a delay of more than one year after having filed the suit, six months after the Batistas' counsel provided him with clear evidence that the Proceeding was improper, four months after the motion seeking summary judgment or dismissal, and occurred only after this case was filed. Am. Compl. Ex. AI; Am. Compl. ¶ 90.

1915 Realty and Phelan Place Holdings executed a contract dated December 10, 2024 by which 1915 Realty sold 1915 Billingsley Terrace to Phelan Place Holdings. Am. Compl. ¶ 14. The deed was not recorded in ACRIS until April 23, 2026, just one day after the LT proceeding was discontinued and one month after the filing of the original Complaint in this action. *Id.* ¶¶ 14, 90. The shareholders of 1915 Realty are the same as the owners of Phelan, and include Mr. Kleiner. *Id.* ¶ 14.  The rent payments from 1915 Billingsley terrace continued to be issue in the name 1915 Realty and the building was still effectively run through 1915 Realty until very recently, perhaps as recently as June 2026. *Id.* Phelan sent a rent collection notice dated July 8, 2026, in its own name, seeking over $9,000 in alleged rent arrears that the Batistas do not owe. July 2026 Billing Statement, Ex. AJ to Am. Compl.

### Defendants' Illegal Lawsuit Harmed Mr. and Mrs. Batista

The more than year-long ordeal harmed Mr. and Mrs. Batista, who experienced injury in

8

the loss of time and wages, as well as payment for transportation to Bronx Housing Court and to meet with their attorney, and injury in the form of significant emotional distress. *Id.,* ¶¶ 114-124. The harms to the Batistas are discussed at length in Section I of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss filed on June 10, 2026, which is incorporated in this memorandum of law by reference.

***Defendants' History of Suing for Amounts Not Owed***

Attorney Defendants have filed other lawsuits seeking rent not owed by other tenants. *Id.,* ¶ 93. Attorney Defendants have filed cases in which the rent demands and/or petitions allege arrears that include or are entirely made up of the portion of the rent covered by the Section 8 subsidy and not due or owed by the tenant. *Id.*, ¶ 94. In these other cases, Attorney Defendants have also misrepresented that they have performed a meaningful attorney review of the lawsuit prior to filing. *Id.*, ¶ 95.

Three recent nonpayment lawsuits illustrate that this conduct has been directed toward, and potentially harmed, members of the public beyond Mr. and Mrs. Batista. *Id.*, ¶ 97. In each of the following cases, Attorney Defendants brought nonpayment lawsuits premised on arrears that were not owed, and in each case, Mr. Schwartz represented to the court and to the tenant that he had performed a meaningful attorney review of the petition. *Id.*, ¶¶ 99, 104, 109. In *Arnow & Grace LLC v. Lashawn Lucas* (LT-323335-22/BX), the proceeding was ultimately dismissed and the judge's decision indicated that dismissal was warranted because the money sought in the proceeding was the NYCHA Section 8 portion of the rent. *Id.*, ¶¶ 98-102. In *Boston Corner Crotona LLC v. Antonio Mijares* (LT-308026-23/BX), the petition did not plead the Section 8 status of the subject premises, yet the stipulation of discontinuance so ordered by the judge indicated that the respondent is a NYCHA Section 8 recipient and the balance represented the

9

Section 8 monies not paid for non-compliance with HQS and not chargeable to the respondent. *Id.*, ¶¶ 103-107. And in *East 187 Realty LLC v. Yerlin Martinez et al.* (LT-328656-24/BX), Attorney Defendants filed a petition, which also implicates Landlord Defendants because it was filed on behalf of DKCK; that petition also failed to plead the Section 8 status of the subject premises and the stipulation of discontinuance so ordered by the judge demonstrated that the petition had asserted arrears that included significantly more than just the tenant share of the rent. *Id.*, ¶¶ 108-113. *See* Am. Compl. Ex. AC (noting "DKCK" at the bottom of the page).

## ARGUMENT

### I.   PLAINTIFFS HAVE STANDING TO PURSUE THEIR CLAIMS.

Plaintiffs adopt by reference Section I of the Memorandum of Law in Opposition to the Defendants' Motion to Dismiss filed on June 10, 2026 ("June Opposition"), found on pages 8-13.[5]

### II.   PLAINTIFFS STATE A TIMELY FDCPA CLAIM AGAINST ATTORNEY DEFENDANTS.

Attorney Defendants do not dispute FDCPA liability. Despite the Court's ruling in an Order dated July 15, 2026, that Plaintiffs' FDCPA claim is not time-barred, Attorney Defendants continue to argue that the Plaintiffs' claims are not timely. Atty. Mem. pp. 11-12. Plaintiffs respectfully request that the Court refer to Section II of the Opposition, found on pages 13-15, for Plaintiffs' arguments regarding timeliness.

### III.   PLAINTIFFS STATE GBL § 349 CLAIMS AGAINST ALL DEFENDANTS.

To state a claim under New York General Business Law § 349, a plaintiff must show that the "defendant is engaging in an act or practice that is misleading in a material way and that plaintiff has been injured by reason thereof," and, further, that defendant's conduct is "consumer-

---

[5] The appendix to this brief provides the Court with updated citations to the Amended Complaint and to the Defendants' memoranda of law in support of their motions to dismiss the Amended Complaint for the sections of Plaintiffs' initial memorandum of law adopted by reference in this memorandum of law.

oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995).

### A.    Plaintiffs state a claim under GBL § 349 because demanding and suing for rent not owed is objectively deceptive.

Defendants do not deny that their attempts to collect rent not owed--through litigation, threats of litigation, and billing statements--were deceptive. Rather, they argue that the Batistas previously received NYCHA tenant share letters, had knowledge of their rent reduction order, and sent letters to the Landlord Defendants about their rent. Defendants allege, therefore, that their efforts to collect money they were not owed were not deceptive.

This is not the law. "Intent to defraud and justifiable reliance by the plaintiff are not elements of the statutory claim." *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 897 (N.Y. 1999) (citing *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744-45). A plaintiff need not be actually misled so long as the materially misleading or deceptive conduct was consumer-oriented and caused actual injury. *Id.* Attorney Defendants cite a number of cases in support of their argument that Plaintiffs were required to plead that they had actually been deceived; however, each case either stands for a different proposition or is contradicted by controlling New York Court of Appeals precedent. *Varela v. Investors Ins. Holding Corp.* stands for the proposition that a deceptive act or practice must be material and must injure the plaintiff in some way, not that such deception must succeed in fooling a plaintiff. *See Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744-45 (citing *Varela v. Investors Ins. Holding Corp.*, 615 N.E.2d 218, 219 (N.Y. 1993)). To the extent that Varela could have been read as requiring a plaintiff to have actually been deceived, that reading of the case has been superseded by *Small*, *supra*. Similarly, to the extent that *Lautman v. 2800 Coyle St. Owners Corp*, 2014 WL 2200909 (E.D.N.Y. May 23, 2014), and *Aguaiza v. Vantage Properties, LLC*, 2009 WL 1511791 (Sup. Ct. N.Y. Cnty. May 21, 2009) held

11

that a consumer must be actually deceived to state a claim under GBL § 349, they are wrongly-decided in that the New York Court of Appeals held otherwise in *Small*.

The non-payment lawsuit was especially deceptive. A communication from an attorney implies that the "attorney's examination of the case file was adequate to permit determination of "whether [the debtor] was or was not obligated to pay the debt…" *Musah v. Houslanger & Associates, PLLC*, 962 F. Supp. 2d 636, 640–41 (S.D.N.Y. 2013). Further, a reasonable consumer would be deceived by the receipt of repeated demands for payment in amounts greater than allowed and by a petition signed by an attorney which demands judgment for thousands of dollars not owed and seeks to evict a family from their home. *Villalba v. Houslanger & Assocs., PLLC*, 2022 WL 900538 at \*18 (E.D.N.Y. Mar. 28, 2022) *citing Hunter v. Palisades Acquisition XVI, LLC*, 2017 WL 5513636 at \*8 (E.D.N.Y. Nov. 16, 2017) ("Plaintiff alleges that Defendants held themselves out as creditors of Plaintiff, when they knew or should have known that they were not. This is precisely the type of conduct "likely to mislead a reasonable customer acting reasonably under the circumstances" under GBL § 349 and *Martinez v. LVNV Funding, LLC*, 2016 WL 5719718, at \*3 (E.D.N.Y. Sept. 30, 2016) (same).

In any event, the Batistas were actually deceived. Attorney Defendants misrepresent Mr. and Mrs. Batista's claims when they suggest that "[t]he Complaint alleges that, *while Plaintiffs have apparently not actually paid the overcharge complained of,* Plaintiffs 'feel embarrassed, humiliated, and worn down by their attorneys, and the persistent false allegations that [Plaintiffs] have not paid their share of rent.'" Atty. Mem. p. 10 (emphasis added). The Batistas allege not just that they did not owe the rent Defendants sued them for, but also that they overpaid more than $3,000 as a result of Defendants' misrepresentations. Am. Compl. at p.4.

**B.      *Defendants' misconduct was consumer-oriented.***

A necessary element of a § 349 claim's consumer-oriented analysis is "whether the matter affects the public interest in New York." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). The allegations here unquestionably implicate the public interest, as Plaintiffs allege a scheme of knowingly wrongful debt collection against the Batistas, including noncompliance with a court settlement, misrepresentation to a court in a pleading, violation of an administrative rent reduction order, trying to collect the government-subsidy share of their rent from the Batistas in violation Section 8 program rules, and collecting rent increases from NYCHA when the rent reduction order froze the Batistas' rent, effectively defrauding the government. Plaintiffs also allege similar lawsuits against other tenants and practices that ensure many more Section 8 tenants have been and will be victims of lawsuits wrongfully seeking the subsidy share of their rent. Given evidence that defendants "gave false information […] to […] a regulatory agency," the Second Circuit found in *Securitron* that such conduct undeniably implicated the public interest for the purposes of GBL § 349, and "the harm to the public was manifest." *Securitron*, 65 F.3d at 264. *See also City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 623-24 (N.Y. 2009) (discussing *Securitron*). Defendants' conduct affects both tenants and taxpayers at large, and potentially affects all rent-stabilized Section 8 tenants in buildings owned by the Landlord Defendants and/or represented by the Attorney Defendants in eviction proceedings.

DKCK currently manages a portfolio of dozens of buildings and approximately 1,500 tenants. When a tenant in any of those dozens of buildings becomes delinquent in rent, DKCK generates a rent ledger showing as arrears owed by the tenant all money that has not been received by the landlord, whether it is money that should have been paid by NYCHA or by the tenant. DKCK sends the ledger to the Attorney Defendants to send demand letters and then to file

13

nonpayment petitions. In considering the scope of whether the misconduct is consumer oriented for the GBL § 349 claims against the Landlord Defendants and the Attorney Defendants, the deceptive conduct – seeking the full contract rent against tenants regardless of the reason Section 8 suspends payments and regardless if the tenant continues to timely pay their share of the rent in full – threatens Section 8 tenants in any of the dozens of these buildings, against whom nonpayment petitions are filed in the names of one of the dozens of buildings DKCK manages. Their usual business practices therefore implicate the interests of the broader public than just the Batistas; in other words, "the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744. *East 187 Realty LLC v. Yerlin Martinez et al.* (LT-328656-24/BX), a suit filed on behalf of DKCK, demonstrates that failing to plead the Section 8 status of the subject premises and alleging arrears that included significantly more than just the tenant share of the rent is not limited to the Batistas' case. Am. Comp. at ¶¶ 108-113; Am. Compl. Ex. AC. Additionally, this is not a "private contract dispute" as in *Finch v. Slochowsky and Slochowsky, LLP*, 2020 WL 5848616 (E.D.N.Y. Sept. 30, 2020); the Batistas' rent obligations are determined by a government agency, NYCHA, and NYCHA itself tenders payment for a portion of their rent each month.

Attempts by creditors to collect debts that were not owed, that could not lawfully be sued upon or which misstate the amount owed, have repeatedly been found to be consumer oriented, as well as deceptive. *See McCrobie v. Palisades Acquisition XVI, LLC,* 359 F.Supp.3d 239, 255 (W.D.N.Y. 2019); *Rozier v. Fin. Recovery Sys., Inc.*, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011); *Campbell v. MBI Assocs., Inc.,* 98 F.Supp.3d 568, 588 (E.D.N.Y. 2015)("sending form collection letters containing the reference to the $5.00 processing fee") *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F.Supp.3d 109, 116

14

(S.D.N.Y. 2016).

Courts apply GBL § 349 to the landlord-tenant context when the plaintiff sufficiently alleges a pattern or practice of deceptive, consumer-oriented conduct, such as suing for rent not owed. *See e.g. Sanchez v. Ehrlich*, 2018 WL 2084147, at *11 (S.D.N.Y. Mar. 29, 2018) (concluding that plaintiff had stated a claim under GBL § 349 when plaintiff asserted a claim on her behalf but also pleaded that defendants engaged in a pattern or practice of bringing housing court proceedings against low-income tenants for rent they did not owe); *Torres v. Gutman, Mintz, Baker & Sonnenfeldt P.C.*, 2018 WL 1545687, at *3 (E.D.N.Y. Mar. 29, 2018) (same); *Lozano v. Grunberg*, 195 A.D.2d 308 (App. Div. 1st Dept. 1993) (landlord notice falsely alleging an eviction was imminent was deceptive under GBL § 349).

The claim that GBL § 349 does not apply to the landlord-tenant relationship is belied by GBL § 349-c, which provides heightened penalties for deceptive conduct directed at the elderly, provides a list of bad conduct for determining whether the supplemental penalty should be applied, including "[w]hether the defendant's conduct caused an elderly person or persons to suffer severe loss or encumbrance of a primary residence." GBL § 349-c(b)(2). Rather than not covering landlord-tenant relationships, the language of GBL § 349-c makes it clear that preservation of housing is an explicit statutory purpose.

Attorney Defendants mistakenly rely on *Remler v. Cona Elder Law, PLLC*, 2022 WL 4586243, (E.D.N.Y. Sept. 29, 2022) for the proposition that Defendants' conduct in this case was not directed at consumers. In *Remler*, plaintiff claimed a "pattern of deception" but merely cited to other lawsuits filed by the same debt collector alleging similar claims without alleging facts that showed the other lawsuits had been deceptive. That is not the case here, where the pattern-and-practice alleged by the Batistas in paragraphs 92-113 of the Amended Complaint includes specific

15

allegations regarding stipulations in other cases admitting—and one adjudicated case finding—that the Attorney Defendants improperly sought rent not owed. Unlike the plaintiffs in *Remler*, therefore, the Batistas have plausibly alleged that Attorney Defendants' acts were consumer-oriented.

Attorney Defendants misrepresent Plaintiffs' pattern and practice allegations. They do not rely merely on the volume of lawsuits brought by Attorney Defendants for their claims. Rather, they allege consumer-oriented conduct in the form of specific instances of other tenants experiencing the same conduct at the hand of Attorney Defendants. These examples, when viewed in conjunction with the hundreds of lawsuits filed by Attorney Defendants each year, firmly establish a pattern by the Attorney Defendant of consumer-oriented conduct.

The Landlord Defendants cite a recent decision, *Garcia v. Kahan*, No. 25-CV-8489 (JGK), 2026 WL 1724309, (S.D.N.Y. June 15, 2026), in support of their contention that Plaintiffs' claims are not consumer-oriented.  Landlord Defendants suggest Plaintiffs must identify other tenants against whom the Landlord Defendants engaged in this misconduct. The Landlord Defendants' reliance on *Garcia* is misplaced for several reasons.

First, as noted above, one of the three cases cited in the Amended Complaint in which the Attorney Defendants wrongly sued the tenant for the Section 8 subsidy share of the rent, *East 187 Realty LLC v. Yerlin Martinez et al.*, involved a tenant in a DKCK building. Am. Compl. at ¶¶ 108-113; Am. Compl. Ex. AC.

Second, the principle the Landlord Defendants cite *Garcia* for is not the law. "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue '*potentially* affects similarly situated consumers.' *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (*quoting Oswego Laborers*, 85 N.Y.2d at 27, 623 N.Y.S.2d 529, 647 N.E.2d 741) (emphasis

16

added). While a common way the consumer-oriented requirement has been satisfied is by reference to specific other instances of the same conduct, that is not the only way it can be satisfied.

Third, multiple misrepresentations to the same consumer may satisfy the consumer-oriented requirement. The *Garcia* court quoted *Sanchez v. Ehrlich, supra*., as finding that the tenant made "the requisite showing that [d]efendants' conduct affected other, similarly situated consumers." *Garcia*, 2026 WL 1724309, at *2 *quoting Sanchez*, 2018 WL 2084147, at *11. But the evidence that the court relied on in *Sanchez* was not evidence regarding other consumers but rather repeated written communications to the *single* consumer that she was liable for the Section 8 rent when she was not. *Sanchez* 2018 WL 2084147, at *1–2 (rent demand letter, multiple non-payment proceedings, and a rent bill). Similarly, in *Torres v. Gutman, Mintz, Baker & Sonnenfeldt P.C.*, No. 17CV4109KAMCLP, 2018 WL 1545687, at *2 (E.D.N.Y. Mar. 29, 2018), the defendants filed three non-payment petitions alleging the tenant owed rent that in fact had been paid through a government subsidy. *Id*. The court held that the tenant's GBL §349 claim against a landlord and landlord law firm was "consumer-oriented" not based on an allegation of the misconduct to others, but rather based on multiple misrepresentations to that single tenant in three non-payment proceedings. *Id*. ("It is further alleged that defendants' acts were both recurring in nature (defendants repeatedly tried to evict plaintiff) and potentially impacted many other similarly situated consumers.")(parenthetical in original). In the case at bar, the Landlord Defendants send billing statements to the Batistas demanding the full contract rent when in fact they owe nothing, and, indeed are entitled to a credit. Am. Compl. ¶ 22 *citing* to Ex. C, and ¶¶ 16, 64. Remarkably, even after this action was filed, the Landlord Defendants sent another billing statement for the full contract rent when the Batistas are still entitled to a credit. Am. Compl. ¶ 91 *citing* to Ex. AJ. The repeated misrepresentations in dozens of written communications going well more than two years

17

are easily sufficient to establish consumer-oriented deception under *Sanchez* and *Torres*.

Fourth, and most importantly, the Landlord Defendants produce rent ledgers for all of their Section 8 tenants showing as arrears owed by the tenant all money that has not been received by the landlord, whether it is money that should have been paid by NYCHA or by the tenant and send those ledger to the Attorney Defendants to pursue legal action against Section 8 tenants. Am. Compl. ¶¶ 59-60; Am. Compl. Ex. AK at pp.165, 166-168, 220-221.

Where the record indicates a business uses standard forms or otherwise treated the plaintiff in the same manner as it would treat other customers, the business' conduct is consumer-oriented even when the plaintiff does not point to other instances of the business engaged in this conduct. *Oswego*, 85 N.Y.2d 20, 26–27.

**C.** **Misrepresentations in a collection lawsuit, including LT non-payment proceedings, have long been held to state claims under GBL § 349.**

Plaintiffs adopt by reference Section III C of the Memorandum of Law in Opposition to the Defendants' Motion to Dismiss filed on June 10, 2026 ("June Opposition"), found on pages 20-21.

**D.** **Defendants' dragging out litigation after being provided documentation showing the debt was not owed was deceptive.**

Plaintiffs adopt by reference Section III D of the Memorandum of Law in Opposition to Defendants' Motion to Dismiss filed on June 10, 2026 ("June Opposition"), found on page 21.

**E.** **By failing to provide NYCHA pre-suit notice and omitting legally required disclosures regarding Section 8 coverage, Defendants deceptively concealed complete tenant defenses from the Batistas and the Housing Court.**

Plaintiffs adopt by reference Section III E of the Memorandum of Law in Opposition to the Defendants' Motion to Dismiss filed on June 10, 2026 ("June Opposition"), found on pages 22-24.

**IV.** **PLAINTIFFS STATE A CLAIM UNDER JUDICIARY LAW § 487 AGAINST**

18

**THE ATTORNEY DEFENDANTS.**

Plaintiffs adopt by reference Section IV of the June Opposition, found on pages 24-27.

**V.    PLAINTIFFS STATE A CLAIM FOR GROSS NEGLIGENCE AGAINST ALL DEFENDANTS.**

The Landlord Defendants claim the Batistas have not shown detrimental reliance and that such reliance is essential to a gross negligence claim, indirectly challenging the injury element. The Landlord Defendant further claim they did not owe the Batistas a statutory duty of care under GBL § 349 and therefore did not have a duty for gross negligence. Landlord Mem. p. 12, 13. (Plaintiffs do not allege the Landlord Defendants are governed by the FDCPA.) The Attorney Defendants do not challenge Plaintiffs' allegations that they had a duty to Plaintiffs under both GBL § 349 and the FDCPA, and do not raise the issue of duty under Judiciary Law § 487. Attorney Mem. p. 24.  Only the Attorney Defendants assert that Plaintiff does not state the level of intent or recklessness they believe necessary to state a claim for gross negligence. Atty. Mem. pp. 23-25.

First, even assuming *arguendo* reliance was required, the Batistas *did* rely on the Landlord Defendants' misrepresentations by overpaying at least $3,000 in rent based on the inflated rent bills, and by spending considerable time and incurring travel expenses (1) defending against the wrongful litigation brought by the Attorney Defendants on behalf of the Landlord Defendants; and (2) attempting, unsuccessfully, to communicate the issues of the rent overcharge and Section 8 arrears to the Landlord Defendants, incurring postal expenses. Am. Compl. ¶¶ 49, 56-62, 79-80, 124. Further, the two cases cited by Landlord Defendants in support of their contention that detrimental reliance is a necessary element of a gross negligence claim arose in a very different context: that of investors alleging harm from fraudulent financial statements prepared by accountants, a fact pattern far afield from this case. Landlord Mem. p. 12; *see Rotterdam Ventures, Inc. v. Ernst & Young LLP*, 300 A.D.2d 963, 964-965 (3d Dep't 2002); *Water Street Leasehold LLC v. Deloitte & Touche LLP*, 19 A.D.3d 183, 185-186 (1st Dep't 2005).

Second, Landlord Defendants cite to *Calixto* for the proposition that Plaintiffs' *gross* negligence must fail because *Calixto* dismissed that plaintiff's negligence *per se* claim holding GBL § 349 did not impose "a specific duty" on the defendants. *Calixto v. A. Balsamo & Rosenblatt, P.C.*, 244 A.D.3d 674, 678-79 (2d Dept. 2025). However, even with no applicable statutory duty, *Calixto* had no problem holding the plaintiff stated a claim for gross negligence. *Id*. 244 A.D.3d at 677–78. The facts are almost exactly the same as the case at bar. There a tenant filed suit against a landlord, its property managers, and its collection law firm for filing a non-payment proceeding seeking rent not lawfully chargeable to the tenant because the building was not in compliance with legal requirements. The tenant's allegation that "had the defendants exercised even the slightest amount of due diligence, they would have realized that the amount they were seeking from the plaintiff was incorrect, that the allegation that the building was in compliance with rent-stabilization laws was false, and that the judgment amount that they demanded was not authorized by law." The court held this stated a claim for gross negligence because "a party is grossly negligent when it fails to exercise even slight care ... or slight diligence." *Id*., *quoting Ryan v. IM Kapco, Inc*., 88 A.D.3d 682, 683, 930 N.Y.S.2d 627, 629 (2011)(internal quotation marks omitted). (The Court held this misconduct also stated claims for violations of GBL § 349, the FDCPA, and Judiciary Law § 487).

Third, even under the gross negligence standards quoted by Attorney Defendants, the Batistas allege conduct by all Defendants that evinces a reckless disregard for the rights of others or of intentional wrongdoing: persisting with wrongful eviction litigation in the face of evidence that the debt for which the eviction was sought was not owed by the Batistas. *Id.* ¶¶ 70-90. The Attorney Defendants were grossly negligent in filing a lawsuit for eviction for nonpayment of rent, 1) without submitting the proper information to NYCHA given the Batistas' status as Section 8

20

tenants, 2) without conducting a meaningful attorney review, 3) in spite of the ledger showing on its face that the Batistas had paid their share of the rent, and 4) in continuing to press the lawsuit forward after the Batistas' counsel repeatedly notified them and provided overwhelming documentary evidence of the lack of any existing arrears except those solely chargeable to Section 8 and requesting dismissal. The Attorney Defendants breached their statutory duties under the FDCPA, GBL § 349, and Judiciary Law § 487, as well as their common-law duty of care in the collection of debts. *Hawkins-El v. First Am. Funding, LLC*, 891 F.Supp.2d at 412; *Colo. Capital v. Owens*, 227 F.R.D. 181, 191 (E.D.N.Y. 2005).

The Batistas further allege that the Landlord Defendants were grossly negligent in: 1) forwarding their account to the Attorney Defendants for collection litigation despite the lack of any existing arrears except those due to suspension of the Section 8 subsidy, which cannot be charged to the tenant, 2)sending the Batistas inflated rent bills containing impermissible overcharges and holding the Batistas responsible for the government share of the rent and 3) in continuing to press the lawsuit forward after the Batistas repeatedly notified them of the lack of any existing arrears except those solely chargeable to NYCHA and urged the Landlord Defendants to work out the Section 8 nonpayment issue with NYCHA. The Batistas allege the Landlord Defendants breached their statutory duties under GBL § 349, as well as their common-law duty of care in the collection of debts. *Hawkins-El v. First Am. Funding, LLC*, 891 F.Supp.2d at 412; *Colo. Capital v. Owens*, 227 F.R.D. at 191 (E.D.N.Y. 2005).

In any event, under *Crespo*, intentional misrepresentation of a consumer's rights—such as the consumer's rights as a tenant in a rent-stabilized building subject to a rent reduction order, or the consumer's rights as a tenant receiving Section 8—states a claim for gross negligence that must be resolved at trial. *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, 2025 WL 871637, at *9

21

(S.D.N.Y. Mar. 20, 2025).

Fourth, to the degree *Calixto* stands for the proposition that GBL § 349 did not impose "a specific duty" to be sufficient to form a statutory basis for duty under gross negligence, that would be inconsistent with *Sanchez* and *Torres, supra,* which came to the opposite conclusion. Because "G.B.L. § 349 was designed 'to protect consumers from various forms of consumer fraud and deception . . . the Complaint alleges sufficiently that [it] sets a standard of care by prohibiting specific practices, such as those alleged by Plaintiff." *Sanchez*, 2018 WL 2084147, at *7. In addition, while arguably the Mr. Kleiner and DKCK are excluded from being a debt collector under the FDCPA because of the of the bona fide fiduciary exemption, *Harris v. Liberty Cmty. Mgmt., Inc.,* 702 F.3d 1298, 1302 (11th Cir. 2012), they would be a debt collector under N.Y. Gen. Bus. Law § 600(7). While that statute does not provide the basis of a provide right of action, it still provides a statutory duty, and is sufficient for the salient issue in cases requiring a statutory duty as a basis for duty under gross negligence.

Lastly, *Wilson v. Selip & Stylianou, LLP*, No. 24-CV-4108 (ALC), 2026 WL 851338, at *8 (S.D.N.Y. Mar. 27, 2026) held that the consumer had stated claims for gross negligence (as well as for the FDCPA, GBL § 349, and Judiciary Law § 487) for a debt collector, for example, opposing dismissal of a case initiated by a false affidavit of service, similar to refusing for months to discontinue a non-payment proceeding for rental arrears not owed.

## VI.   THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' CLAIMS.

Plaintiffs adopt by reference Section VI of the June Opposition, found on pages 29-35.

## VII.   PLAINTIFFS STATE A CLAIM FOR INDIVIDUALLY LIABILITY FOR MR. KLEINER

The Landlord Defendants misapprehend Plaintiffs' claims against Defendant Kleiner. Plaintiffs do not seek to pierce the corporate veil to hold Mr. Kleiner liable. Rather, Plaintiffs

maintain that Mr. Kleiner is individually liable under their GBL §349 and gross negligence claims because his own acts violated GBL §349 and were grossly negligent. Contrary to Landlord Defendants' argument, the corporate forms of 1915 LLC, Phelan, and DKCK do not shield Mr. Kleiner. And Plaintiffs have pled sufficient facts regarding Mr. Kleiner's own actions to state claims for relief.

Landlord Defendants cite two breach of contract lawsuits for the supposed rule that corporate officers and shareholders cannot be held liable for actions taken in furtherance of corporate business. *See Victory State Bank v. EMBA Hylan, LLC*, 169 A.D.3d 963, 966, 95 N.Y.S.3d 97 (2019); *Puma Indus. Consulting, Inc. v. Daal Assocs., Inc.,* 808 F.2d 982 (2d Cir. 1987). In doing so, Landlord Defendants ignore a long line of cases holding that under New York Law "corporate officers and directors can be held individually liable for their own torts regardless of whether the corporate veil is pierced." *In re A.N. Frieda Diamonds, Inc.,* 633 B.R. 190, 205 (S.D.N.Y. 2021). *See Sun Prods. Corp. v. Bruch*, No. 10 Civ. 4816 SAS, 2011 WL 5120307, at *5 (S.D.N.Y. Oct. 28, 2011), *aff'd,* 507 F. App'x 46 (2d Cir. 2013) (explaining that "[w]here a plaintiff asserts tort claims such as for fraud or fraudulent misrepresentation, there is *no need to pierce the corporate veil* in order to hold corporate officers or employees individually liable for their own acts of fraud" (*quoting White v. Nat'l Home Prot., Inc.*, No. 09 Civ. 4070 (SHS), 2010 WL 1706195, at *5 (S.D.N.Y. Apr. 21, 2010)); *DER Travel Servs., Inc. v. Dream Tours & Adventures, Inc.*, No. 99 Civ. 2231(HBP), 2001 WL 1160598, at *4 (S.D.N.Y. Sept. 27, 2001) (finding that "[i]f [defendant] committed the torts and thereby caused injury, he is personally liable to plaintiff ... regardless of whether [the] corporate veil should be pierced"); *H. M. Kolbe Co. v. Shaff*, 240 F. Supp. 588, 589–90 (S.D.N.Y. 1965) (noting that officers or directors may be individually liable for personal participation in torts and it is therefore "not necessary to pierce the corporate veil"

23

(collecting cases)); *Peguero v. 601 Realty Corp.*, 58 A.D.3d 556, 558–59, 873 N.Y.S.2d 17 (1st Dep't 2009) (noting that "a corporate officer who participates in the commission of a tort may be held individually liable, ... regardless of whether the corporate veil is pierced" (quoting *Espinosa v. Rand*, 24 A.D.3d 102, 102, 806 N.Y.S.2d 186 (1st Dep't 2005); and citing *W. Joseph McPhillips, Inc. v. Ellis*, 278 A.D.2d 682, 717 N.Y.S.2d 743 (3d Dep't 2000)).

This principle has also been applied in cases asserting federal and state statutory causes of action, including causes of action arising under GBL §349. *See Guzman v. Mel S. Harris and Associates LLC,* 16 Civ. 3499 (GBD),  2018 WL 1665252 at *8 (S.D.N.Y. March 22, 2018) (declining to grant summary judgment to individual defendant on FDCPA and GBL §349 claims because of a triable issue of fact as to whether he was sufficiently involved in corporate defendant's unlawful activity to be individually liable); *Mayfield v. Asta Funding, Inc.,* 95 F. Supp. 3d 685, 701 (S.D.N.Y. 2015) (declining to dismiss GBL §349 claims against individual defendants because "[p]laintiffs have sufficiently pleaded the individual Defendants' personal participation in deceptive business practices prohibited by the GBL"); *Nat'l Survival Game, Inc. v. Skirmish, U.S.A., Inc.,* 603 F. Supp. 339, 341 (S.D.N.Y. 1985) (declining to dismiss GBL §349 and Latham Act claims against individual defendants).[6]

The Amended Complaint unambiguously alleges individual acts by Mr. Kleiner in furtherance of the pattern of unlawful and deceptive debt collection practices utilized against the Batistas. Mr. Kleiner is responsible for inputting information into the computer program that generated the Batistas' inaccurate rent ledgers; he was responsible for forwarding those ledgers to the Attorney Defendants; and he was responsible for directing the Attorney Defendants to bring

---

[6] The text of §349 clearly contemplates individual liability for persons acting on behalf corporations by making actionable unfair, deceptive, or abusive practices by "any person, including but not limited to an individual, firm, corporation, company, partnership of association, *or agent or employee therefore* . . ." GBL §349 (emphasis added).

the meritless Housing Court non-payment case against the Batistas. *See* Am. Compl., ¶¶ 17-18, 59-60, 66-70.

### VIII.   PLAINTIFFS STATE A CLAIM FOR LIABILITY FOR PHELAN PLACE HOLDINGS LLC

The Landlord Defendants also misapprehend Plaintiffs' theory of liability for Phelan Place Holdings LLC. Plaintiffs do not claim that Phelan is liable to Plaintiffs as a successor to 1915 Realty LLC. Plaintiffs maintain that Phelan is liable as a participant in the illegal debt collection scheme against them from December 2024, when it purchased their building, through the present.

According to the deed to the Batista's building filed on ACRIS, Phelan has owned the building since December 10, 2024. Am. Compl. at ¶ 14. Although 1915 Realty continued to send rent bills to the Batistas, because according to Mr. Kleiner, "[n]othing changed," Kleiner Deposition, Ex. AK to Am. Compl. at p. 174, line 2, something did in fact change. Once Phelan owned the building and was entitled to the rents from the building, it was a participant in the fraudulent rent collection efforts against the Batistas. Those efforts to collect rent from the Batistas that they do not owe continue to this day. Most recently, Phelan sent a rent collection notice dated July 8, 2026, in its own name, seeking over $9,000 in alleged rent arrears that the Batistas do not owe. July 2026 Billing Statement, Ex. AJ to Am. Compl. Since the July billing statement carries forward over $7,000 from before June 1, 2026, and the Batistas are charged $2,236.50/month, the alleged rent arrears sought in the July Billing Statement cover a period that extends back earlier than April 23, 2026, the date on which the deed transferring the Batistas' building was filed on ACRIS. *See* Am. Compl. at ¶ 14. Moreover, when the July Billing Statement is compared to the February rent ledger issued by 1915 LLC, 2/2/26 Tenant Statement, Ex. E to Complaint and Am. Compl., both show over $9.000 alleged to be owed, indicating that the alleged arrears sought by Phelan in July 2026 are essentially the same alleged arrears that 1915 LLC was claiming in February 2026.

## **CONCLUSION**

For these reasons, Defendants' Motions to Dismiss must be denied in their entirety.

Dated: Bronx, New York
     August 13, 2026

                                        */s/*
                                        _____
                                        Jackie Spencer
                                        Tara Laffer
                                        Christopher D. Lamb
                                        Bronx Legal Services
     369 E. 148th Street, 2nd Floor
     Bronx, NY 10455
     Email: jspencer@lsnyc.org
     Email: tlaffer@lsnyc.org
     Email: clamb@lsnyc.org
     Phone: (718) 928-3740

Dated: Brooklyn, New York
     August 13, 2026

     */s/*
     _____
     Ahmad Keshavarz
     The Law Office of Ahmad Keshavarz
     16 Court St., 26th Floor
     Brooklyn, NY 11241
     Tel: (718) 522-7900
     Fax: (877) 496-7809
     Email: ahmad@NewYorkConsumerAttorney.com

26

**APPENDIX: CITATIONS IN SECTIONS ADOPTED BY REFERENCE**

Unless otherwise noted, in all of the sections below adopted by reference, citations to the Memorandum of Law in Support of Attorney Defendants' Motion to Dismiss, filed on May 22, 2026 ("May Atty. Mem."), increase by one page in the Memorandum of Law in Support of Attorney Defendants' Motion to Dismiss filed on July 30, 2026 ("July Atty. Mem.). This means that, for example, a citation to page 11 of the May Attorney Memorandum of Law in Plaintiffs' Opposition can be now found on page 12 of the July Attorney Memorandum of Law.

| May Atty Mem. | July Atty. Mem. |
| --- | --- |
| p. 11 | p. 12 |
| p. 12 | p. 13 |
| p. 13 | p. 14 |
| p. 14 | p. 15 |

| May Atty Mem. | July Atty. Mem. |
| --- | --- |
| p. 20 | p. 21 |
| p. 21 | p. 22 |
| p. 22 | p. 23 |
|  |  |

**Section I**

For this section, all citations to paragraphs in Plaintiffs' Complaint filed on March 27, 2026 ("Complaint"), increase by fifteen in the Amended Complaint filed on July 16, 2026 ("Am. Compl."). So, a citation to ¶ 100 in the Complaint can now be found in ¶ 115 of the Amended Complaint.

| Complaint | Am. Complaint |
| --- | --- |
| ¶ 100 | ¶ 115 |
| ¶ 101 | ¶ 116 |
| ¶ 102 | ¶ 117 |
| ¶ 103 | ¶ 118 |
| ¶ 104 | ¶ 119 |

| Complaint | Am. Compl. |
| --- | --- |
| ¶ 105 | ¶ 120 |
| ¶ 108 | ¶ 123 |
| ¶ 109 | ¶ 124 |
| ¶ 117 | ¶ 132 |

**Section II**

The citation to ¶¶ 55-58 in the Complaint now refers to ¶ 63 of the Amended Complaint.

| Complaint | Am. Complaint |
| --- | --- |
| ¶¶ 55-58 | ¶ 63 |

**Section III C**

The citation to page 8 of the Memorandum of Law in Support of Landlord Defendants' Motion to Dismiss, filed on May 22, 2026 ("May LL Mem.) is now found on page 10 of the Memorandum of Law in Support of Landlord Defendants' Motion to Dismiss, filed on July 30, 2026 ("July LL Mem.).

| May LL Mem. | July LL Mem. |
| --- | --- |
| p. 8 | p. 10 |

**Section III D**

The citation to page 1 of the May Atty. Mem. is found on page 3 of the July Atty. Mem. and the citation to pages 5-6 of the May Atty. Mem. can now be found on pages 8-9 of the July Atty. Mem.

| May Atty Mem. | July Atty. Mem. |
|---|---|
| p. 1 | p. 3 |
| pp.5-6 | pp.8-9 |

The citation to ¶ 54 of the Complaint now refers to ¶ 70 of the Amended Complaint.

| Complaint | Am. Complaint |
|---|---|
| ¶ 54 | ¶ 70 |

**Section III E**

The citation to ¶ 62 in the Complaint now refers to ¶ 76 of the Amended Complaint.

| Complaint | Am. Complaint |
|---|---|
| ¶ 62 | ¶ 76 |

**Section IV**

The citation to ¶ 54 in the Complaint now refers to ¶ 62 of the Amended Complaint. The citation to ¶¶ 64-65 and 69-75 now refers to ¶¶ 82-88.

| Complaint | Am. Complaint |
|---|---|
| ¶ 54 | ¶ 62 |
| ¶¶ 64-65, 69-75 | ¶¶ 82-88 |

**Section VI**

All the citations in this section remain the same.