UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------X

DAMIAN BATISTA,
SANDRA BATISTA,

Plaintiffs,

-against-

EDELMAN SCHWARTZ PLLC,
ZEV SCHWARTZ,
1915 REALTY LLC,
PHELAN PLACE HOLDINGS LLC,
DK & CK MANAGEMENT CORP., and
DOVID KLEINER
aka DAVID KLEINER,
aka DAVID GREEN
aka DAVID DAVID;

Defendants.

----------------------------------------------------X

Civil Action No. 1:26-cv-2557-JSR

**ANSWER OF DEFENDANTS 1915 REALTY LLC, PHELAN PLACE HOLDINGS LLC, DK & CK MANAGEMENT CORP., AND DAVID KLEINER TO THE FIRST AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**

The Landlord Defendants 1915 REALTY LLC ("1915 Realty"), PHELAN PLACE HOLDINGS LLC ("Phelan"), DK & CK MANAGEMENT CORP. ("DKCK"), and DAVID KLEINER ("Kleiner") (collectively, the "Landlord Defendants"), by their attorneys, Berry Law PLLC, as and for their Answer to the First-Amended Complaint (the "Complaint"), state as follows:

## GENERAL STATEMENT

Except as expressly admitted below, the Landlord Defendants deny each and every allegation of the Complaint, including any allegation contained in its headings, subheadings, footnotes, and exhibits. The headings, subheadings, and footnotes of the Complaint are not

allegations to which a response is required. Each response below is made solely on behalf of the Landlord Defendants, and no response is made on behalf of any other defendant.

**INTRODUCTORY PARAGRAPH AND SUMMARY OF CLAIMS**

**Introductory Paragraph (page 1, preceding the "Summary of Claims").** Plaintiffs, by their attorneys at Bronx Legal Services and The Law Office of Ahmad Keshavarz, brings their complaint for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and New York Judiciary Law § 487 against Defendant Edelman Schwartz PLLC, a debt collection law firm; and Zev Schwartz, the principal of the firm (collectively "Attorney Defendants") and for violations of GBL § 349, negligence, and gross negligence against the Attorney Defendants and the "Landlord Defendants," who are 1915 Realty LLC, the petitioner in the rental arrears lawsuit seeking to evict the Batistas' and their family for rent they did not owe; Phelan Place Holdings LLC, ("Phelan") a recently formed non-operating shell company controlled by the other Landlord Defendants and who is listed in a recent ACRIS filing as the nominal owner of the building; DK & CK Management Corp., ("DKCK") the property management company who generates the billing statements and rent ledgers, and directly worked with the Attorney Defendants in non-payment action for rent not owed; Dovid Kleiner, aka David Kleiner, aka David Green, aka David David ("Mr. Kleiner"), who owns and controls DKCK, is a shareholder 1915 Realty and Phelan, and who personally took the acts and made the decisions that form a basis of the claims in this suit.

**Response:** The Landlord Defendants deny the allegations of the Introductory Paragraph, except admit that Plaintiffs purport to bring the claims described therein.

**Non-Enumerated Allegation 1.** Mr. Damian Batista and Mrs. Sandra Batista ("Mr. and Mrs. Batista" or "the Batistas") are working class tenants who raised their children in their rent stabilized apartment; they have lived in their apartment for eighteen years, and their daughter still resides with them. The Batistas have been participants in the Section 8 voucher program as administered by the New York City Housing Authority ("NYCHA") for as long as they have lived in this apartment. Mr. and Mrs. Batista are only responsible for paying their tenant share of the rent, which is determined by NYCHA; they are not responsible for payment of the portion of the rent to the owner covered by NYCHA. Despite the fact that the Batistas have consistently and timely paid their share of the rent, they have been hounded for more than a year for money that NYCHA has not paid to the owner, money that the Batistas do not owe.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 1.

**Non-Enumerated Allegation 2.** Defendant Edelman Schwartz PLLC ("Edelman Schwartz") and Defendant Zev Schwartz ("Mr. Schwartz") (collectively "Attorney Defendants"), in filing, serving and prosecuting a non-payment proceeding on behalf of 1915 Realty LLC

("1915 Realty"), have made false representations in a non-payment petition, pre-suit demand letters, and in other communications that Mr. and Mrs. Batista were obligated to pay money or face eviction, despite knowing that Mr. and Mrs. Batista did not owe the rent they alleged the Batistas owed. The Landlord Defendants have demanded payment from Mr. and Mrs. Batista repeatedly for rent that they did not owe, specifically by billing Mr. and Mrs. Batista repeatedly for a monthly rental amount in excess of their Section 8 share.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 2.

**Non-Enumerated Allegation 3.** Moreover, it is the practice of the Landlord Defendants to issue rent ledgers, used as a basis for non-payment petitions and pre-suit demands by the Attorney Defendants that charge the tenant the Section 8 share of the rent whenever Section 8 stops paying, regardless of the reason. The Section 8 payments to the owner may be suspended for a number of reasons, but the tenant is never liable for the government share of the rent as long as their Section 8 benefits have not been terminated. Any such termination involves a multi-step process that includes an owner termination notice. Consequently, the Attorney Defendants file non-payment eviction actions and serve pre-suit demands for the full contract rent, when the tenant is not liable for the government share.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 3.

**Non-Enumerated Allegation 4.** DKCK currently manages a portfolio of dozens of buildings and approximately 1,500 tenants. Each building is owned by a different LLC. When a tenant in any of those dozens of buildings becomes delinquent in rent, DKCK generates a rent ledger which it sends to the Attorney Defendants to send demand letters and then to file non-payment petitions. The petitions are filed in the name of the individual LLC that owns the building – 1915 Realty, LLC in the case of the Batistas. In considering the scope of whether the misconduct is consumer oriented for the GBL 349 claims against the Landlord Defendants and the Attorney Defendants, the deceptive conduct – seeking the full contract rent against tenants regardless of the reason Section 8 suspends payments – has the potential to effect the Section 8 tenants in in any of the dozens of these buildings, against whom non-payment petitions are filed in the names of one of the dozens of buildings DKCK manages.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 4.

**Non-Enumerated Allegation 5.** The false representations in the inaccurate billing statements and other communications have coerced and duped the Batistas to pay over $3,000.00 more than their legal rent share and also resulted in an overcharge of almost $9,000.00 in fabricated arrears.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 5.

**Non-Enumerated Allegation 6.** On March 31, 2025, Attorney Defendants initiated and then doggedly pursued a baseless eviction proceeding via Petition in New York City Housing Court for fictitious rent arrears that Defendants knew or should have known Mr. and Mrs. Batista did not owe. The Batistas were forced to take time off work for court appearances and for meetings with their attorneys to defend against the baseless lawsuit, and they suffered emotional distress as a result of Defendants' actions.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 6.

**Non-Enumerated Allegation 7.** When Mrs. Batista found out she was being sued, she felt as if she could barely breathe. Ever since learning of the lawsuit, Mrs. Batista struggles to eat and sleep, and she cries frequently from the stress of the threat of eviction.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 7.

**Non-Enumerated Allegation 8.** When Mr. Batista got home and saw the eviction lawsuit he says he felt "the world came crashing down." Emotionally, Mr. Batista is not the same person as he was before receiving eviction papers. Now, the threat of eviction and the false allegation that he owes over $9,000 in unpaid rent are a constant daily dread, fear and worry. He feels like he has had the weight of the world on his shoulders. As a result of the stress he lost between 15 and 20 pounds and dropping several waist sizes. His wife and five siblings began to worry for heath, and plead with him to go to the doctor.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 8.

**Non-Enumerated Allegation 9.** Mr. Batista is a devout Christian and puts his faith in God, but at the moment he feels powerless. He feels ashamed being continually dragged to court, as if he's a delinquent. He takes great pride in meeting his commitments and paying his bills, and the constant allegation that he does not weighs on him very heavily. He feels like he's being chased by the landlord. Mr. 4 AM and normally tries to read to settle down; Batista works very late and gets home around 2:00 most of the time he ends up too stressed to read anything other than the case documents, only making him more stressed and keeping him awake longer. Mr. Batista constantly has trouble falling asleep and trouble staying asleep. He tries to stay strong for his wife and his daughter, but the case weighs on him constantly.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 9.

**Non-Enumerated Allegation 10.** The Batistas have also incurred expenses for travel back and forth to Bronx County Housing Court and to meetings and consultations with their attorneys solely for the purpose of defending against the meritless non-payment action; and Mr. Batista has lost time from work.

**Response:** The Landlord Defendants deny the allegations of Non-Enumerated Allegation 10.

## JURISDICTION AND VENUE

**1.** This Court has jurisdiction pursuant to the FDCPA, 15. U.S.C. § 1692k(d), and under 28 U.S.C. § 1331.

**Response:** Paragraph 1 alleges a legal conclusion to which no response is required.

**2.** This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367 because they share a common nucleus of operative fact with the federal claim and are so related to the federal claim as to form part of the case or controversy under Article III of the United States Constitution.

**Response:** Paragraph 2 alleges a legal conclusion to which no response is required.

**3.** Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

**Response:** Paragraph 3 alleges a legal conclusion to which no response is required.

**4.** Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within the Southern District of New York.

**Response:** Paragraph 4 alleges a legal conclusion to which no response is required.

## PARTIES

**5.** Plaintiff Mr. Damian Batista is a natural person residing at 1915 Billingsley Terrace, Apartment 57, Bronx, New York 10453.

**Response:** The Landlord Defendants admit the allegations of paragraph 5.

**6.** Plaintiff Mrs. Sandra Batista is a natural person residing at 1915 Billingsley Terrace, Apartment 57, Bronx, New York 10453.

**Response:** The Landlord Defendants admit the allegations of paragraph 6.

**7.** Defendant Edelman Schwartz is a debt collection law firm organized under the laws of the State of New York. Edelman Schwartz engages in business in New York State, and this suit arises out of Edelman Schwartz's business in New York State.

**Response:** Paragraph 7 alleges a legal conclusion to which no response is required.

**8.** Edelman Schwartz specializes almost exclusively in collecting putative rental arrears. As of the date of this filing, it has commenced hundreds (if not thousands) of rental arrears lawsuits.

**Response:** Paragraph 8 alleges a legal conclusion to which no response is required.

**9.** Defendant Zev Schwartz is an attorney at law duly admitted to practice in the State of New York with a principal place of business at 848 McDonald Avenue, 2nd Floor, Brooklyn, NY 11218. Mr. Schwartz is a managing partner of Edelman Schwartz.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9.

**10.** Mr. Schwartz has signed hundreds of petitions to collect rental arrear debts owed or due to others from consumers, including Mr. and Mrs. Batista, and he regularly does so.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10.

**11.** Defendant 1915 Realty LLC is a domestic limited liability corporation organized under the law of the State of New York.

**Response:** The Landlord Defendants deny that 1915 Realty LLC resides in Kings County, assert that it maintains a place of business in Kings County, and otherwise admit the allegations of paragraph 11.

**12.** On or around March 23, 2004, 1915 Realty and 600 West Realty Corp. executed and recorded a contract by which 600 West Realty Corp. sold 1915 Billingsley Terrace to 1915 Realty.

**Response:** The Landlord Defendants deny the allegations of paragraph 12.

**13.** Defendant Phelan Place Holdings, LLC is a domestic limited liability corporation organized under the law of the State of New York and residing in Kings County, New York. It was formed on or about November 27, 2024.

**Response:** The Landlord Defendants deny that Phelan Place Holdings, LLC resides in Kings County, assert that it maintains a place of business in Kings County, and otherwise admit the allegations of paragraph 13.

**14.** Phelan Place Holdings and 1915 Realty executed a contract dated December 10, 2024 by which 1915 Realty sold 1915 Billingsley Terrace to Phelan Place Holdings. The deed was not recorded in ACRIS until April 23, 2026, just one month after the filing of the Original Complaint in this action. Mr. Kleiner said that 1915 Realty transferred ownership of 1915 Billingsley Terrace to Phelan Place Holdings after the partial building collapse led to bad press. The shareholders of 1915 Realty are the same as the owners of Phelan, and include Mr. Kleiner. 1915 Realty was never shut down. The rent payments from 1915 Billingsley Terrace continued to be issued in the name 1915 Realty and the building was still effectively run through 1915 Realty until very recently, perhaps as recently as July 2026.

**Response:** The Landlord Defendants assert that the allegations of paragraph 14 are incoherent and therefore deny them.

**15.** Defendant DK & CK Management ("DKCK") is a domestic business corporation organized under the law of the State of New York and residing in Kings County, New York, with a principal place of business at 1417 Avenue J and 1419 Avenue J, Brooklyn, NY 11230.

**Response:** The Landlord Defendants admit the allegations of paragraph 15, except deny the address alleged.

**16.** DKCK is the property management company who generates the billing statements and rent ledgers, and directly worked with the Attorney Defendants in non-payment action against the Batista for rent not owed

**Response:** The Landlord Defendants deny the allegations of paragraph 16.

**17.** Defendant Dovid Kleiner, aka David Kleiner, aka David Green, aka David David ("Kleiner"), owns and controls DKCK, is a shareholder 1915 Realty and Phelan, and personally took the acts and made the decisions that form a basis of the claims in this suit. In government documents he filed with the various government agencies in relation to the Section 8 program for the Batistas, Kleiner signed with aliases David Greene or David David.

**Response:** The Landlord Defendants deny the allegations of paragraph 17 to the extent they allege that Kleiner personally took the acts or made the decisions described, or that he signed with the spelling "Greene," and otherwise admit the allegations of paragraph 17.

**18.** Mr. Kleiner is the person who made the decision to file a nonpayment proceeding against the Batistas and provided Edelman Schwartz with the tenant statement upon which the proceeding is based.

**Response:** The Landlord Defendants deny the allegations of paragraph 18.

**19.** The Attorney Defendants were acting as the agents of the Landlord Defendants in their litigation and other attempts to collect the putative debt against the Batistas. Attorney Defendants were acting within the course and scope of their agency. Attorney Defendants were the freely chosen counsel of the Landlord Defendants. Therefore, the Landlord Defendants are jointly and severally liable for the conduct of the Attorney Defendants.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19.

## FACTS

### Mr. and Mrs. Batista's Rent-Stabilized Tenancy and Section 8 Subsidy

**20.** Plaintiffs Mr. and Mrs. Batista have lived in their rent-stabilized apartment since 2008. They live there with one of their children.

**Response:** The Landlord Defendants deny the allegations of paragraph 20.

**21.** Mr. and Mrs. Batista have lived in their apartment for eighteen years pursuant to an original lease agreement and subsequent renewal lease agreements current owner 1915 Realty.

**Response:** The Landlord Defendants admit the allegations of paragraph 21.

**22.** The Batistas receive a rent invoice from 1915 Realty each month. Exhibit C (1915 Realty Rent bills).

**Response:** The Landlord Defendants admit the allegations of paragraph 22.

**23.** Mr. and Mrs. Batista are participants in the federal tenant-based Housing Choice Voucher Program ("Section 8") administered by NYCHA. Exhibit D (NYCHA Tenant Share Letters).

**Response:** The Landlord Defendants admit the allegations of paragraph 23.

**24.** Under Section 8 program regulations, each year NYCHA determines the share of the monthly rent Mr. and Mrs. Batista must pay based on their income.

**Response:** Paragraph 24 alleges a legal conclusion to which no response is required.

**25.** The difference between the Batistas' share of the rent and the actual legally regulated monthly rent is paid through their Section 8 rent subsidy, which, under Section 8 program regulations, is to be sent directly by NYCHA to 1915 Realty. Exhibit D (NYCHA Tenant Share Letters).

**Response:** Paragraph 25 alleges a legal conclusion to which no response is required.

**26.** Mr. and Mrs. Batista are "not responsible for payment of the portion of the rent to owner covered by the housing assistance payment under the HAP contract between the owner and the PHA" and "[t]he PHA [sic] failure to pay the housing assistance payment to the owner is not a violation of the lease between the tenant and the owner." 24 C.F.R. § 982.310(b)(1)-(2); see also Prospect Place HDFC v. Gaildon, 6 Misc. 3d 135(A) (App. Term 1st Dep't 2005) ("A Section 8 tenant agrees in the Section 8 lease only to pay the tenant share of the rent." (citation and internal quotation marks omitted)); Soumas v. Gregg, 57 Misc. 3d 135(A) (App. Term 1st Dep't 2017) ("Here, no new lease agreement was entered into by the parties obligating the tenant to pay the full contract rent. Thus, a nonpayment proceeding does not lie to recover the Section 8 portion of the rent from the tenant."); New Hempstead Terrace LLC v. Reeves, 18 Misc. 3d 1113(A) (Dist. Ct. Nassau Cty. 2008) ("This Court holds that petitioner cannot maintain a summary proceeding against respondent to recover in the first instance, absent a good faith allegation that a new agreement has been reached to make the tenant liable for the Section 8 rent.").

**Response:** Paragraph 26 alleges a legal conclusion to which no response is required.

**27.** 1915 Realty entered into a Housing Assistance Payment contract ("HAP contract") with NYCHA in which it agreed to comply with Section 8 program regulations in order to receive Section 8 subsidy payments.

**Response:** The Landlord Defendants admit the allegations of paragraph 27.

**28.** Under the terms of the HAP contract, the landlord must maintain the apartment in compliance with the "Housing Quality Standards" required under Section 8 ("HQS"), as defined by 24 C.F.R. § 982.404.

**Response:** Paragraph 28 alleges a legal conclusion to which no response is required.

**29.** If the apartment fails to pass an annual HQS inspection, NYCHA may suspend the Section 8 subsidy until the landlord has remedied the failures, and the apartment passes inspection. Additionally, the PHA is required to notify the landlord of any defects that must be remedied. 24 C.F.R. § 982.405.

**Response:** Paragraph 29 alleges a legal conclusion to which no response is required.

**30.** The HAP contract tenancy addendum provides that the tenant is not liable for payment of the Section 8 subsidy portion of the rent, and that the owner may not terminate the tenancy for nonpayment of the Section 8 subsidy portion of the rent.

**Response:** Paragraph 30 alleges a legal conclusion to which no response is required.

**31.** Further, New York appellate courts have held that a landlord cannot maintain a nonpayment proceeding against a tenant for arrears caused by the suspension of the Section 8 subsidy, regardless of the cause for suspension. Prospect Place HDFC v.

Gaildon, 6 Misc3d 135(A) (App. Term 1st Dep't 2005) ("Absent a showing by the landlord of a new agreement . . . a Section 8 tenant does not become liable for the Section 8 share of the rent as 'rent' even after the termination of the subsidy.") (internal quotation and citation omitted).

**Response:** Paragraph 31 alleges a legal conclusion to which no response is required.

**32.** Mr. and Mrs. Batista have used their Section 8 voucher in their current apartment throughout their eighteen-year tenancy.

**Response:** The Landlord Defendants deny the allegations of paragraph 32.

**33.** Mr. and Mrs. Batista's monthly rental share established by NYCHA was $1,023.00 between July 1, 2021 (if not earlier), through and including July 31, 2022; $973.00 between August 1, 2022, through and including May 31, 2023; $1,038.00 between June 1, 2023, through and including May 30, 2024; $1,076.00 between June 1, 2024, through and including July 31, 2024; $892.00 between August 1, 2024, through and including August 31, 2025; $707.00, between September 1, 2025 and May 31, 2026; and their current share is $982.00, effective June 1, 2026. Exhibit D (NYCHA Tenant Share Letters).

**Response:** The Landlord Defendants admit the allegations of paragraph 33.

**34.** The rent invoices that the Batistas receive from 1915 Realty each month include the total contract rent, and not just the tenant share. Exhibit C (1915 Realty Rent bills).

**Response:** The Landlord Defendants deny the allegations of paragraph 34 to the extent that "total contract rent" is intended to mean a non-itemized amount, and otherwise admit the allegations of paragraph 34.

**35.** Mr. and Mrs. Batista have consistently paid their tenant share throughout their time living in their apartment.

**Response:** Upon information and belief, the Landlord Defendants admit the allegations of paragraph 35.

**36.** According to a tenant statement dated February 2, 2026 and provided by Edelman Schwartz in housing court, Mr. and Mrs. Batista carry a balance of $7,019.94 through January 2026. Exhibit E (02/02/26 Tenant Statement). As explained in the following paragraphs, these false arrears are the result of years of overcharges, and despite what the tenant statement alleges, Mr. and Mrs. Batista have paid more than what was legally required. See infra ¶¶ 35-46.

**Response:** The Landlord Defendants deny the allegations of paragraph 36.

**37.** Mr. and Mrs. Batista were charged $2,051.38 in monthly rent at least as early as July 2022. Exhibit E (02/02/26 Tenant Statement). Yet the total contract rent registered with NYCHA at this time was only $2,001.25. Id. There are a number of months during which the additional rent was charged to the Batistas' ledger. Id. The NYCHA share and the Batistas' share covered the full amount in July, August, and September 2022 (the Batistas paid $50.00 more than their tenant share in August and September 2022, for an overpayment totaling $100.00). Id. The NYCHA share and the Batistas' share (though they paid their legally required amount), did not cover the entire rent charged in October 2022 through and including May 2023, resulting in Mr. and Mrs. Batista accumulating $50.13 in illegal arrears for those eight months, for a total overcharge of $401.04 ($50.13 x 8 months). Exhibit E (02/02/26 Tenant Statement) and Exhibit D at pp. 5-7. (NYCHA Tenant Share Letters).

**Response:** The Landlord Defendants assert that the allegations of paragraph 37 are incoherent and therefore deny them.

**38.** On December 11, 2023, the New York City Department of Buildings ("DOB") issued a peremptory vacate order for 1915 Billingsley Terrace based on a determination that "condition(s)/violation(s) to or within these premises are imminently perilous to life, public safety and the safety of occupants or danger to property." Exhibit F (Vacate Order X320/2023). The order noted the 1915 Billingsley Terrace was a "6 story building in state of disrepair with partial collapse" and that the "structure is currently open to the elements and structurally compromised with potential for further collapse." Id. These conditions "rendered the ENTIRE structure unsafe to enter and/or occupy." Id.

**Response:** The Landlord Defendants admit that the order cited in paragraph 38 was issued, and refer the Court to the order, which speaks for itself.

**39.** On February 26, 2025, DHCR issued an order establishing the legal regulated rent of $1.00 per month as of December 11, 2023 pursuant to RSC § 2522.6 based upon the vacate order issued by the DOB. Exhibit G (Order Determining Maximum Legal Regulated Rent of $1.00). The rent was restored effective January 4, 2024. Id.

**Response:** The Landlord Defendants admit the allegations of paragraph 39.

**40.** Mr. and Mrs. Batista paid their full tenant share of $1,038.00 for December 2023, though they occupied the apartment for only 10 days and their prorated rent should be only $334.84. Exhibit D at p. 5 (NYCHA Tenant Share Letters) and Exhibit G (Order Determining Maximum Legal Regulated Rent of $1.00). Mr. and Mrs. Batista paid $1,022.89 for January 2024, though they were unable to occupy the apartment for the first 3 days of the month, so their prorated rent should be only $937.55. Id. This means that the Batistas overpaid $788.55 for the months of December 2023 ($703.16) and January 2024 ($85.34).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40.

**41.** Upon information and belief, NYCHA Section 8 suspended their subsidy payments from January 2024 through November 2024, yet 1915 Realty continued to charge Mr. and Mrs. Batista the full contract rent. Exhibit E (02/02/26 Tenant Statement). From January 2024 through May 2024, the rent charge was $2,051.28 each month, and then from June 2024 through November 2024, the rent charge was $2,112.82 each month. Id. The NYCHA share of the rent for these months should have been as follows: a. $1,013.28 for each of the five months from January 2024 through and including May 2024 for a total of $5,066.40; b. $975.28 for June 2024 and July 2024 for a total of $1,950.56; c. $1,159.28 for each of the three months from August 2024 through and including October 2024 for a total of $3,477.84; d. $1,220.82 for November 2024. e. The accumulated NYCHA share of the rent from January 2024 through November 2024 was therefore $11,715.62 (a + b + c + d). Exhibit D at pp. 2-5. (NYCHA Tenant Share Letters).

**Response:** The Landlord Defendants assert that the allegations of paragraph 41 are incoherent and therefore deny them.

**42.** NYCHA Section 8 resumed their regular subsidy payments again in December 2024. Exhibit E (02/02/26 Tenant Statement). In January 2025, NYCHA Section 8 made a payment of $1,220.82 for the January 2024 share of the rent, along with an additional payment of $3,539.38. Id. This payment allowed $8,176.24 ($11,715.62 total NYCHA share from (e) above minus the payment of $3,539.39) in arrears to remain on Mr. and Mrs. Batista's rent ledger, even though the Batistas cannot be held responsible for any rent beyond their tenant share.

**Response:** The Landlord Defendants assert that the allegations of paragraph 42 are incoherent and therefore deny them.

**43.** The total contract rent for the Batistas' apartment was supposed to remain at $2,051.28 as a result of a rent reduction order issued by the Department of Housing and Community Renewal ("DHCR"); Mr. Batista filed a complaint on February 5, 2024 because of a failure to maintain services, including an uneven kitchen floor, loose bathroom sink, broken bedroom door, broken living room window, and plaster and paint needed throughout the apartment; DHCR froze the rent until these issues could be addressed. Exhibit H (DHCR Rent Reduction Order). 1915 Realty requested that the rent be restored, but DHCR determined on September 12, 2025 that the issues were only partially corrected and the request to restore the rent was denied. Exhibit I (DHCR Denial of Rent Restoration).

**Response:** The Landlord Defendants admit the allegations of paragraph 43.

**44.** Despite the DHCR rent reduction order, 1915 Realty increased the contract rent to $2,112.82 in June 2024 and again to $2,170.92 in June 2025. Exhibit E (02/02/26 Tenant Statement). The 2024 payments are addressed supra ¶¶ 41, 42. Despite the rent reduction order, NYCHA increased its share to cover the legal regulated rent of $2,112.82 when it resumed payments in January 2025. Exhibit E (02/02/26 Tenant Statement). When 1915 Realty raised the rent again in June 2025 to $2,170.92, NYCHA did not immediately

increase its payments, and the result was an overcharge of Mr. and Mrs. Batista for June, July, and August 2025. Id. In June 2025, NYCHA paid only $1,220.82; the Batistas paid their share of the rent, $892.00, but the remaining $58.10 was added to the balance on Mr. and Mrs. Batista's rent bill. Id. In July 2025, NYCHA again paid only $1,220.82, and the Batistas paid $892.00, increasing the arrears by another $58.10. Id. And in August 2025, NYCHA paid $1,220.82, and the Batistas' share had been lowered to $707.00, so the arrears an additional $243.10. Id.; see also Exhibit D (NYCHA Tenant Share Assert that the allegation is Letters). Therefore, the overcharge from June 2025 through August 2025 was $359.30.

**Response:** The Landlord Defendants assert that the allegations of paragraph 44 are incoherent and therefore deny them.

**45.** The overcharge of Mr. and Mrs. Batista therefore totals at least $8,936.58; $401.04 for the October 2022 through May 2023 overcharge, as described supra ¶ 35, plus $8,176.24 for suspended NYCHA payments due to HQS violations for January 2024 through November 2024, as described supra ¶¶ 39-40, plus $359.30 for the overcharge in June, July, and August 2025, as described supra ¶ 42.

**Response:** The Landlord Defendants assert that the allegations of paragraph 45 are incoherent and therefore deny them.

**46.** But the deceptive accounting resulted in more than just an overcharge. Because of the consistently erroneous rent statements 1915 Realty sent to Mr. and Mrs. Batista, and the fact that the Batistas either paid the total amount they were responsible for pursuant to Section 8 each month or more than they were required to pay, and because the settlement secured by the Legal Aid Society was not applied correctly, Mr. and Mrs. Batista should have a rent credit. See infra ¶¶ 45-47.

**Response:** The Landlord Defendants assert that the allegations of paragraph 46 are incoherent and therefore deny them.

**47.** In a stipulation of settlement dated February 12, 2025, the Legal Aid Society won a $2,500.00 rent credit for the petitioners (including Mr. Batista) in a lawsuit against the same Landlord Defendants in this proceeding. Exhibit J (Stipulation of Settlement for LT-306051-24/BX).The stipulation stated that "[f]or any Petitioners who are or have been recipients of Section 8 rental assistance, FHEPS, CityFHEPS, and/or DRIE and SCRIE, or another similar rent subsidy, the Rent Credit will be applied to that Petitioner's share of the rent only and not to any rent share attributable to the subsidy, whether or not the Respondent-Owners received such subsidy." Id. at p. 2 at ¶ 6ii. Mr. and Mrs. Batista did not receive the benefit of the credit, as the landlord applied the credit on February 12, 2025 to the missing Section 8 portion of their rent. Exhibit E (02/02/26 Tenant Statement).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47.

**48.** Notably, the verified petition that commenced the proceeding discussed above included 1915 Realty LLC and Yonah Roth, a managing agent for the Building, among the Respondents. Exhibit K (Petition for LT-306051-24/BX).

**Response:** The Landlord Defendants refer the Court to the petition cited in paragraph 48, which speaks for itself.

**49.** This misapplied settlement, along with the overpayment in rent in August and September 2022 when NYCHA did not immediately increase its share to cover the contract rent (supra ¶ 35), and the overpayment of rent in December 2023 and January 2024 due to the rent reduction resulting from the vacate order (supra ¶ 38), can be clearly seen here: Date Payments by Mr. and Amount Mr. and Mrs. Mrs. Batista Batista Should Have Paid 08/2022 $1,023.00 $973.00 09/2022 $1,023.00 $973.00 12/2023 $1,038.00 $334.84 + $1.00 01/2024 $1.00 $937.55 02/2024 $1,038.00 + $1.00 $1,038.00 03/2024 $1,038.00 + $1,022.89 $1,038.00 Total $6,184.89 $5,295.39 -$2,500.00 settlement $2,795.39 Overpayment $3,389.50 See Exhibits E (02/02/26 Tenant Statement), Exhibit D (NYCHA Share Letters), and Exhibit G (Order Determining Maximum Legal Regulated Rent of $1.00).

**Response:** Paragraph 49 does not contain an assertion to which a response is required.

**50.** Thus, the Landlord Defendants have collected at least $3,389.50 in excess of the legally collectible rent from Mr. and Mrs. Batista.

**Response:** The Landlord Defendants deny the allegations of paragraph 50 and assert that, without identifying a timeframe, the allegation is incoherent.

### Landlord Defendants Send Deceptive Rent Demands Seeking Money Not Owed by Mr. and Mrs. Batista

**51.** As noted earlier, Mr. and Mrs. Batista have consistently paid their tenant share throughout their time living in their apartment and have the bank records to prove it. Exhibit L (Bank Records of Payments). 15

**Response:** The Landlord Defendants admit that rent was paid, deny knowledge or information sufficient to form a belief as to whether the amount paid was always the legally required rent, and deny knowledge or information sufficient to form a belief as to what the Batistas' bank records show.

**52.** The Batistas have consistently received rent bills from 1915 Realty that show the monthly rent charge to be the total contract rent for their apartment; the rent bills, therefore, do not specify the amount that is paid by NYCHA Section 8 each month, and further, do not specify the reduced amount (the tenant portion) for which Mr. and Mrs. Batista are legally responsible. Exhibit C (1915 Realty Rent Bills).

**Response:** The Landlord Defendants deny the allegations of paragraph 52.

**53.** It is the practice of the Landlord Defendants to charge tenants the full contract rent in the event of a suspended Section 8 payment from NYCHA, even though the tenants are not responsible in such a scenario absent a lengthy termination process for which the landlord would have notice.

**Response:** The Landlord Defendants deny the allegations of paragraph 53.

**54.** It is also the practice of the Landlord Defendants to forward tenants' accounts for nonpayment eviction suits when balances arising from Section 8's failure to pay accrue on tenants' ledgers, even where—like the Batistas—the tenant continues to timely pay their share of the rent in full.

**Response:** The Landlord Defendants deny the allegations of paragraph 54.

**55.** After the partial collapse of the building and the vacate order, NYCHA stopped paying its tenant share. Exhibit E (02/02/26 Tenant Statement).

**Response:** The Landlord Defendants admit that NYCHA suspended certain payments, deny that what NYCHA stopped paying was a tenant share, and therefore deny the remaining allegations of paragraph 55.

**56.** As the arrears accumulated, the Batistas became concerned that they would be sued in housing court for rental debt that they could not pay; Mr. Batista contacted Section 8 multiple times and sent a letter to 1915 Realty to inform 1915 Realty that they needed to contact Section 8 so that payments could be restarted. Exhibit M (02/05/24 Letter to Landlord) and Exhibit N (02/10/24 Letter to Section 8).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 56.

**57.** Mr. Batista sent a second letter by certified mail on April 23, 2024, again requesting that 1915 Realty reach out to Section 8. Exhibit O (04/23/24 Letter to Landlord).

**Response:** The Landlord Defendants refer the Court to the letter cited in paragraph 57, which speaks for itself.

**58.** Upon information and belief, the Landlord Defendants knew or should have known why NYCHA had not paid its share of the rent. Mr. Kleiner, in his June 18, 2026 deposition testimony, stated that he is not familiar with the rules for the Section 8 program, despite 28 years as the head of a property management firm and despite signing a HAP contract in 2018 which includes all of said rules, including: The tenant is not responsible for paying the portion of rent to owner covered by the PHA [Public Housing Agency] housing assistance payment under the HAP contract between the owner and the PHA. A PHA failure to pay the housing assistance payment to the owner is not a violation of the lease. The owner may not terminate the tenancy for nonpayment of the PHA housing assistance payment.

**Response:** The Landlord Defendants assert that the allegations of paragraph 58 are incoherent and therefore deny them, and refer the Court to Mr. Kleiner's deposition transcript, which speaks for itself.

**59.** Despite the above rule, Mr. Kleiner testified that a tenant with Section 8 is responsible for the total contract rent if the government does not make its proper payments. Mr. Kleiner is responsible for inputting information in a software program, RentRiter, from which rent ledgers are generated. Mr. Kleiner then makes the decision to forward the account to the attorney to start a nonpayment suit based on the information he inputted into the RentRiter program. Mr. Kleiner then provides said ledgers to the attorneys to send rent demands and to bring nonpayment proceedings against tenants who are in arrears. Kleiner directed the attorneys in the name which of the various LLC buildings the DKCK portfolio to bring suit.

**Response:** The Landlord Defendants assert that the allegations of paragraph 59 are incoherent and therefore deny them.

**60.** The ledgers Kleiner generates and forwards to the attorneys do not differentiate between the Section 8 share of the rent and the tenant share of the rent, and hold the tenant responsible for the full balance less any Section 8 payments, including missed Section 8 payments in the tenant's putative balance to be forwarded to the tenant and to attorneys for potential nonpayment eviction suits.

**Response:** The Landlord Defendants deny the allegations of paragraph 60.

**61.** On or around February 19, 2025, Mrs. Batista was personally served with a Fourteen-Day Rent Demand dated February 18, 2025, claiming that the Batistas owed $8,339.60 in rental arrears. Exhibit A at p. 3 (LT Petition). The rent demand sought money that was not owed by Mr. and Mrs. Batista.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61.

**62.** The rent ledger provided by the Attorney Defendants in Bronx County Housing Court showed that Mr. and Mrs. Batista had timely made their Section 8 rental payments, and thus the Landlord Defendants clearly knew that the amounts they were trying to collect were not owed by Mr. and Mrs. Batista but instead had not been paid by NYCHA due to their own negligence in managing the building. Exhibit E (02/02/26 Tenant Statement).

**Response:** The Landlord Defendants assert that the allegations of paragraph 62 are incoherent and therefore deny them.

**The Landlord Defendants File a Lawsuit Seeking Rent Not Owed by Mr. and Mrs. Batista**

**63.** On or about March 31, 2025, 1915 Realty, through the Attorney Defendants, commenced a non-payment of rent proceeding against Mr. and Mrs. Batista in Bronx County Housing Court, captioned 1915 Realty LLC against Batista Damian, Batista Sandra, Index Number LT-310915-25/BX (the "LT Proceeding"). Exhibit A (LT Petition).The petition alleged rental arrears amounting to $9,132.76, comprised of $212.76 for May 2024, and $892.00 for each of the months from June 2024 through March 2025. Id. Attached to it was the Fourteen-Day Rent Demand alleging rental arrears amounting to $8,339.60, comprised of $1,121.73 for December 2023, $2,050.28 for January 2024, $1,002.67 for February 2024, $1,013.28 each for April 2024 and May 2024, $1,036.82 each for June 2024 and July 2024, and $64.72 for August 2024. Id. at p. 3.

**Response:** The Landlord Defendants admit the allegations of paragraph 63.

**64.** DKCK the property management company who sends the billing statements, and directly worked with the Attorney Defendants in non-payment action for rent not owed.

**Response:** The Landlord Defendants assert that the allegations of paragraph 64 are incoherent and therefore deny them.

**65.** Mr. Kleiner runs DKCK.

**Response:** The Landlord Defendants assert that Kleiner has managerial responsibility for DKCK, but deny that he unilaterally operates or unilaterally controls it.

**66.** According to his testimony, Kleiner is usually involved in the nonpayment petitions, he is the person who most of the time makes the decisions of how the non-payment petitions work, and that was true for the case against the Batistas.

**Response:** The Landlord Defendants assert that the allegations of paragraph 66 are incoherent and therefore deny them.

**67.** Kleiner is the one that makes the decision about whether to forward a tenant's account to the Attorney Defendants to file the non-payment petitions.

**Response:** The Landlord Defendants admit that Kleiner is involved in the process, but deny that he is solely responsible for legal proceedings against tenants.

**68.** Mr. Kleiner provided the Attorney Defendants the rent ledger upon which these alleged arrears are based.

**Response:** The Landlord Defendants deny the allegations of paragraph 68.

**69.** Mr. Kleiner contends the rent ledger indicates if the tenant has a Section 8 subsidy. Mr. Kleiner testified at one point he does not otherwise alert the attorney that the tenant is a Section 8 voucher holder, but at other points he testifies that he is involved in the non-payment litigation.

**Response:** The Landlord Defendants assert that the allegations of paragraph 69 are incoherent and therefore deny them.

**70.** Regardless, even a cursory review of the rent ledger would alert the Attorney Defendants to the Section 8 subsidy. For example, the top right corner of every page of the ledger shows the rent as of the date of the ledger, followed by the Section 8 portion of the rent and the tenant share. Furthermore, almost every month on the ledger shows a "S8 Payment."

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 70.

**71.** The Batistas' tenant share for the months included in the rent demand are as follows: December 2023 through May 2024: $1,038.00, June 2024 and July 2024: $1,076.00, and August 2024: $892.00. Exhibit D (NYCHA Tenant Share Letters). The arrears alleged for December 2023 and January 2024 are prima facie higher than Mr. and Mrs. Batista's tenant share. The Defendants' own ledger shows that Mr. and Mrs. Batista paid their share of the rent for all of the months in the rent demand prior to the commencement of the LT proceeding. Exhibit E (02/02/26 Tenant Statement).

**Response:** The Landlord Defendants assert that the allegations of paragraph 71 are incoherent and therefore deny them.

**72.** While the petition itself does not ask for more than the Batistas' portion of the rent (it seeks a balance of $212.76 for May 2024, and $892.00 for each month from June 2024 through March 2025), it does not correspond with the rent demand, rent ledger, or consider the payments they made satisfying their entire tenant portion. Exhibit A (LT Petition) and Exhibit E (02/02/26 Tenant Statement).

**Response:** The Landlord Defendants assert that the allegations of paragraph 72 are incoherent and therefore deny them.

**73.** The rent demand and petition also reflect an overcharge because the Landlord Defendants did not properly follow the DHCR rent reduction order following the partial collapse of the subject building, did not properly apply the $2,500.00 settlement credit, and did not submit certification to NYCHA to increase Mr. and Mrs. Batista's rent before doing so on their rent bills and tenant statement. (see ¶¶ 35-43, supra).

**Response:** The Landlord Defendants assert that the allegations of paragraph 73 are incoherent and therefore deny them.

**74.** Further, the petition failed to plead that Mr. and Mrs. Batista are NYCHA Section 8 voucher holders, fails to plead compliance with the Second Williams Consent Decree or refer to or include a required Certification of Basis for Eviction, and the affidavits of service fail to show that NYCHA was served with copies of the pleadings as required by federal law when the respondent is a Section 8 voucher holder. Id.

**Response:** The Landlord Defendants refer the Court to the petition cited in paragraph 74, which speaks for itself.

**75.** The failure to plead that the Batistas are NYCHA Section 8 voucher holders deprived them of substantive rights; the regulatory status is a fact vital to determining "the scope of the right of the parties[,]" and "the proceeding cannot be properly adjudicated" without the information. Westchester Gardens, L.P., v. Lanclos, 982 N.Y.S.2d 302, 306 (Civ. Ct. Bx. Co. 2014) (internal citations omitted); Cintron v. Pandis, 34 Misc.3d 152(A) (A.T. 9th and 10th Dist. 2012); see also Matter of Volunteers of America-Greater New York, Inc. v. Almonte, 886 N.Y.S.2d 46, 48 (2d Dept. 2009) (holding that the regulatory status of the building provided the tenant with potential defenses that could not have been properly adjudicated without a complete and accurate statement of the status in the petition).

**Response:** Paragraph 75 alleges a legal conclusion to which no response is required.

**76.** The failure to adhere to the Second Williams Consent Decree also deprived the Batistas of key rights and protections. The Attorney Defendants were required to certify to NYCHA the factual allegations underlying the proceeding, the total amount of rent owed and a breakdown of the source of the arrearage, and that the landlord is not seeking the subsidy portion of the rent. NYCHA would have then examined the certification to determine whether it accepted or objected. Because Mr. and Mrs. Batista have consistently paid their tenant share, and their payments are clearly reflected on the Landlord Defendants' ledger, it would have been clear that the landlord was in fact seeking the subsidy portion of the rent. This process could have spared the Batistas the anguish and stress of the ongoing housing court proceeding.

**Response:** Paragraph 76 alleges a legal conclusion to which no response is required.

**77.** Defendant Zev Schwartz verified the petition, affirming under penalty of perjury "that he has read the foregoing petition and knows the contents thereof; that the same are true to her knowledge except as to matter stated to be upon information and belief; and to those matters he believes them to be true." Id.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 77.

**78.** Attorney Defendants either misrepresented that they had performed a meaningful attorney review of the petition, or they performed a meaningful review, saw the ledgers showing the money owed was NYCHA's Section 8 subsidy rather than the portion to be

paid by Mr. and Mrs. Batista, and sued them anyway, knowing that Mr. and Mrs. Batista did not owe the money.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 78.

**79.** After receiving the pleadings, in April 2025, Mr. Batista went to Bronx County Housing Court to submit an answer to the petition and obtain a court date. Exhibit P (Pro se Answer). In his pro se answer, Mr. Batista indicated that the rent had been paid, that the Attorney Defendants were seeking the Section 8 part of the rent, and that there were conditions in the apartment that needed to be addressed. Mr. Batista did not become aware of additional defenses until he retained an attorney. Exhibit Q (Tenant Affirmation).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 79.

**80.** After the initial hearing in Intake Part 2, the case was calendared for July 1, 2025, and Mr. Batista attended court on that day and was connected with Bronx Legal Services to assist him with his housing court case. Exhibit Q (Tenant Affirmation). Mr. Batista had already communicated with his landlord multiple times to explain that his rent ledger included more than his share of the rent, and that he was not responsible for paying more than his tenant share. Id.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 80.

**81.** The case was adjourned to August 22, 2025, and then adjourned again to October 24, 2025.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 81.

**82.** Bronx Legal Services sent an email to Edelman Schwartz on September 23, 2025, explaining that Mr. and Mrs. Batista had made all of their payments for their share of the rent and requested that Edelman Schwartz dismiss the case with prejudice or a motion for summary judgment would be filed. Exhibit R (09/23/25 Email to Edelman Schwartz). The email referenced the Batistas' Section 8 subsidy, the $2,500 settlement, and the rent reduction orders resulting from the vacate order due to partial building collapse and from the reduction of services; it included bank transaction records showing the Batistas' payments and the rent reduction orders. Id. On September 26, 2025, Zev Schwartz responded to the email with: "in may [sic] 2025 he owed around 9200 in may [sic] and we have him 2500 credit in February 2024." Exhibit S (09/26/25 Response from Zev Schwartz).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 82.

**83.** Bronx Legal Services sent a second email to Edelman Schwartz on October 1, 2025, again requesting dismissal with prejudice along with summary of facts that showed that Mr. and Mrs. Batista do not owe any rent to their landlord. Exhibit T (10/01/25 Email to Edelman Schwartz). The email included a rent ledger, the Batistas' payment information, the rent reduction orders, and NYCHA tenant share letters. Id.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 83.

**84.** On October 21, 2025, Mr. and Mrs. Batista, via counsel, filed a motion for an amended answer and summary judgment, or, in the alternative, dismissal. Exhibit U (MtAA/MSJ/MtD). The motion was accompanied by an affirmation in support of the motion, as well as all of the documentation that would demonstrate that the Batistas did not owe any rental arrears, to again demonstrate to the Attorney Defendants that Mr. and Mrs. Batista do not owe any rental arrears. The exhibits included: a proposed amended answer, NYCHA tenant letters, a rent ledger dated August 20, 2025, a bank record of rent payment transactions, the DHCR rent reduction orders, emails that Bronx Legal Services sent to the Attorney Defendants, a copy of the Second Williams Consent Decree, and three housing court decisions that supported the arguments in the affirmation.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 84.

**85.** At the December 9, 2025 court appearance, Bronx Legal Services and an attorney of counsel to Edelman Schwartz adjourned the case by stipulation to December 22, 2025 for motion practice. Exhibit V (12/09/25 Stipulation).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 85.

**86.** On December 12, 2025, Bronx Legal Services sent a third email to Edelman Schwartz, referring to exhibits uploaded to NYSCEF to show that Mr. and Mrs. Batista did not owe any rent. Exhibit W (12/12/25 Emails to Edelman Schwartz). Zev Schwartz responded and requested copies of the referenced documents, and Bronx Legal Services provided copies of the NYCHA documents, payment information, and rent reduction orders on the same day. Id.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 86.

**87.** At the December 22, 2025 court appearance, Bronx Legal Services and an attorney of counsel to Edelman Schwartz adjourned the case to February 23, 2026 to give Edelman

Schwartz a final opportunity to file opposition to Bronx Legal Services' motion for an amended answer/summary judgment/dismissal. Exhibit X (12/22/25 Stipulation). Opposition was to be filed by January 26, 2026. Id.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 87.

**88.** On February 3, 2026, Bronx Legal Services sent a fourth email to Edelman Schwartz with a summary of the reasons why Mr. and Mrs. Batista do not owe any rent. Exhibit Y (02/03/26 Email to Edelman Schwartz). Zev Schwartz responded with "Let me review." Exhibit Z (02/03/26 Response from Zev Schwartz).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 88.

**89.** On February 23, 2026, the Bronx housing court was closed due to inclement weather; the case has been rescheduled to April 22, 2026.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 89.

**90.** At the April 22, 2026 appearance, the parties signed a stipulation of discontinuance that stated, "At Petitioner's request, proceeding is discontinued as Petitioner agrees that the Petition was satisfied. Respondent's motion withdrawn without prejudice." Exhibit AI.

**Response:** The Landlord Defendants refer the Court to the stipulation cited in paragraph 90, which speaks for itself.

**91.** The Batistas continue to receive billing statements that allege arrears that are a result of being charged the full contract rent; the most recent billing statement, for example, alleges $7,019.94 in arrears as a "Balance brought Forward" and a rent charge for July 2026 of $2,236.05 (the full contract rent) and an additional charge of $1,463.92 that is labeled as the "Section 8 Charge." Exhibit AJ. According to their most recent share letter, the Batistas are responsible for $982.00 each month. Exhibit D at p. 1.

**Response:** The Landlord Defendants deny the allegations of paragraph 91.

**Attorney Defendants' Pattern and Practice of Suing for Amounts Not Owed**

**92.** The Attorney Defendants failed to properly verify Mr. and Mrs. Batista's status as Section 8 participants and sued them for rent that they did not owe.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 92.

**93.** The Attorney Defendants systematically file lawsuits seeking the share of rent paid by NYCHA from consumers like Mr. and Mrs. Batista when NYCHA withholds its share of the rent, when the Landlord Defendants raise the rent before certifying it with NYCHA, or when DHCR issues a rent reduction.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 93.

**94.** Attorney Defendants have filed many cases in which the rent demands and/or petitions allege arrears that include or are entirely made up of the portion of the rent covered by the Section 8 subsidy and not due or owed by the tenant.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 94

**95.** In other words, the Attorney Defendants either systematically misrepresent that they have performed a meaningful attorney review of the lawsuit prior to filing, or they do perform such a review and fail to plead that the consumer is a Section 8 tenant and is not responsible for the rent owed, but nonetheless sue the consumer for the arrears.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 95

**96.** Zev Schwartz filed over 500 lawsuits seeking rent from tenants in the Bronx in 2025 alone. Accordingly, the Attorney Defendants' deceptive practice of seeking rent not owed has the potential to affect, and upon information and belief has affected, similarly situated consumers.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 96.

**97.** Three recent nonpayment petitions in particular illustrate that this conduct has harmed (and certainly has the potential to harm) consumers beyond Mr. and Mrs. Batista: (1) Arnow & Grace LLC v. Lashawn

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 97.

**Lucas**

**98.** On August 8, 2022, Attorney Defendants commenced a nonpayment proceeding against Lashawn Lucas on behalf of Arnow & Grace LLC. Exhibit AA (Lucas Petition).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 98.

**99.** The petition was executed by Defendant Zev Schwartz, representing to the court and to the tenant that he had performed a meaningful attorney review of the petition. Id., p. 2.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 99.

**100.** He also affirmed "under penalty of perjury…that he has read the foregoing petition and knows the contents thereof; that the same are true to his own knowledge except as to matters stated to be upon information and belief; and as to those matters he believes them to be true." Id.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 100.

**101.** The petition alleges arrears of $13,953.00, comprised of $921.00 for January 2022 and $2,172.00 for February 2022 through and including July 2022; the annexed Fourteen (14) Day Notice to Tenant alleges arrears of $12,253.00, comprised of $1,393.00 for January 2022 and $2,172.00 for February 2022 through and including June 2022. Id. at pp. 1 and 3.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 101.

**102.** According to a Decision / Order issued by the Honorable Judge Arlene Hahn on January 25, 2023, "[t]he file and records reflect all monies sought in this proceeding are the NYCHA Section 8 portion of the rent. The Petition alleges that the monthly rent for the premises is $2,172.00 per month, which is the Section 8 portion, and not the legal rent of $2,200.00." Exhibit AD (Lucas Decision / Order).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 102.

**Mijares**

**103.** On February 13, 2023, Attorney Defendants brought a nonpayment proceeding against Antonia Mijares on behalf of landlord Boston Corner Crotona LLC. Exhibit AB (Mijares Petition).

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 103.

**104.** The petition was executed by Defendant Zev Schwartz, representing to the court and to the tenant that he had performed a meaningful attorney review of the petition. Id. at p. 2.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 104.

**105.** He also affirmed "under penalty of perjury…that he has read the foregoing petition and knows the contents thereof; that the same are true to his own knowledge except as to matters stated to be upon information and belief; and as to those matters he believes them to be true." Id.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 105.

**106.** The Mijares petition annexed the Fourteen (14) Day Notice to Tenant that showed alleged arrears of $4,540.51, comprised of $871.39 for October 2022, and $1,223.04 for each of the months of November 2022, December 2022, and January 2023. Id. at p. 3. Yet the petition alleges arrears of $4,554.37, comprised of $102.37 for May 2021, and $212.00 for each of the months from June 2021 through and including February 2023, and it states that Mr. Mijares' rent is $212.00 each month. Id. at p. 1. The petition does not plead the Section 8 status of the subject premises. Id.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 106.

**107.** In a stipulation of discontinuance so ordered by the Honorable Judge Omer Shahid on June 29, 2023, Zev Schwartz and Mr. Mijares' counsel agreed that Mr. Mijares "is a NYCHA Section 8 recipient" and "[t]he balance left over, on Petitioner's breakdown... which represents the Section monies not paid [for non-compliance with HQS]... is not chargeable to Respondent." Exhibit AE at ¶¶ 1-3 (Mijares Stipulation). After the removal of late fees and legal fees, Mr. Mijares actually had a credit. Id. at ¶ 4.

**Response:** The Landlord Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 107.

## <u>Martinez</u>

**108.** On August 11, 2024, Attorney Defendants filed a nonpayment proceeding against Yerilin Martinez on behalf of East 187 Realty LLC. Exhibit AC (Martinez Petition).

**Response:** The Landlord Defendants admit the allegations of paragraph 108.

**109.** The petition was executed by Defendant Zev Schwartz, representing to the court and to the tenant that he had performed a meaningful attorney review of the petition. Id., p. 2.

**Response:** Paragraph 109 alleges a legal conclusion to which no response is required.

**110.** He also affirmed "under penalty of perjury…that he has read the foregoing petition and knows the contents thereof; that the same are true to his own knowledge except as to matters stated to be upon information and belief; and as to those matters he believes them to be true." Id.

**Response:** The Landlord Defendants refer the Court to the document cited in paragraph 110, which speaks for itself.

**111.** The petition alleged that $9,532.67 in arrears was owed, comprised of $17.35 for March 2024 and $2,378.83 for each of the months from April 2024 through and including July 2024. Id.

**Response:** The Landlord Defendants refer the Court to the document cited in paragraph 111, which speaks for itself.

**112.** In a stipulation of discontinuance so ordered by the Honorable Judge Agata Rumprecht-Behrens on April 10, 2025, an attorney of counsel for Edelman Schwartz and Ms. Martinez's counsel from Bronx Legal Services agreed that Ms. Martinez's "total current rent is $2,315.16 as registered with NYCHA and her tenant share is $1,505.00." Exhibit AF at ¶ 3 (Martinez Stipulation).

**Response:** The Landlord Defendants refer the Court to the document cited in paragraph 112, which speaks for itself.

**113.** As such, the stipulation of discontinuance demonstrates that the Petition, which alleged $2,378.83 for each month from April 2024 through and including July 2024, had asserted arrears that included significantly more than just the tenant share of the rent.

**Response:** The Landlord Defendants refer the Court to the documents cited in paragraph 113, which speak for themselves.

**Defendants' Illegal Lawsuit Caused Mr. And Mrs. Batista to Lose Sleep and Even Jeopardized Their Health**

**114.** As low-income tenants and Section 8 participants, Mr. and Mrs. Batista are precisely the type of vulnerable consumers the FDCPA was designed to protect.

**Response:** The Landlord Defendants deny the allegations of paragraph 114.

**115.** The mental and physical anguish and stress Mr. and Mrs. Batista have experienced as a result of the LT Proceeding has overwhelmed them since they learned of the lawsuit.

**Response:** The Landlord Defendants deny the allegations of paragraph 115.

**116.** The Batistas put paying their rent first and will skip other expenses to keep current on their share of the rent, yet their landlord has continued to harass them and is trying to evict their family, all the while keeping the apartment in substandard and unsafe conditions. The landlord's false allegations of nonpayment and relentless legal pursuit of this family is an enormous, constant source of stress and shame for Mr. and Mrs. Batista. They feel embarrassed, humiliated, and worn down by the constant harassment of the

landlord and their attorneys, and the persistent false allegations that the Batistas have not paid their share of rent. When Mr. Batista got home and saw the documents, he translated them himself and began to worry. To Mr. Batista, it felt like "the world came crashing down."

**Response:** The Landlord Defendants deny the allegations of paragraph 116.

**117.** Emotionally, Mr. Batista is not the same person as he was before receiving eviction papers, alleging nonpayment of rent he did not owe. Now, the threat of eviction and the false allegations of he owes over $9,000 in unpaid rent are a constant daily dread, fear and worry. He feels like he has had the weight of the world on his shoulders since finding out about the lawsuit and fighting it for nearly a year.

**Response:** The Landlord Defendants deny the allegations of paragraph 117.

**118.** As a result of the stress of the lawsuit, Mr. Batista began walking frequently to deal with the stress and eating less frequently, losing between 15 and 20 pounds and dropping several waist sizes. His wife and five siblings began to worry for his mental and physical state, and they continue to share those worries.

**Response:** The Landlord Defendants deny the allegations of paragraph 118.

**119.** Mr. Batista is so visibly stressed that relatives plead with him to go to a doctor. Mr. Batista is a devout Christian and puts his faith in God, but at the moment he feels powerless. He feels ashamed being continually dragged to court, as if he's a delinquent. He takes great pride in meeting his commitments and paying his bills, and the constant allegation that he does not weighs on him very heavily. He feels like he's being chased by the landlord.

**Response:** The Landlord Defendants deny the allegations of paragraph 119.

**120.** Mr. Batista works very late and gets home around 2:00 AM and normally tries to read to settle down; however, since being sued, most of the time he ends up too stressed to read anything other than the case documents, only making him more stressed and keeping him awake longer. Mr. Batista constantly has trouble falling asleep and trouble staying asleep Mr. Batista, a forklift driver, has to take more frequent breaks at work to ground himself and remain focused.

**Response:** The Landlord Defendants deny the allegations of paragraph 120.

**121.** Mr. Batista tries to stay strong for his wife and his daughter, but the case weighs on him constantly.

**Response:** The Landlord Defendants deny the allegations of paragraph 121.

**122.** Ever since the wrongful lawsuit began, Mr. Batista feels like he is not the same person he was before. The threat of eviction for a debt he does not owe has changed his life drastically.

**Response:** The Landlord Defendants deny the allegations of paragraph 122.

**123.** When Mrs. Batista found out she was being sued, she felt as if she could barely breathe. Ever since learning of the lawsuit, Mrs. Batista struggles to eat and sleep, and she cries frequently from the stress of the threat of eviction.

**Response:** The Landlord Defendants deny the allegations of paragraph 123.

**124.** They have also incurred expenses travel for travel back and forth to Bronx County Housing Court and to meetings and consultations with their attorneys solely for the purpose of defending against the meritless non-payment action; and have lost time from work.

**Response:** The Landlord Defendants deny the allegations of paragraph 124.

## FIRST CLAIM

### Violations of Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (Against Attorney Defendants)

**125.** Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

**Response:** The Landlord Defendants repeat and reallege their responses to paragraphs 1 through 124 and to Non-Enumerated Allegations 1 through 10 as if fully set forth herein.

**126.** The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also Hamilton v. United Healthcare of La., Inc. 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

**Response:** Paragraph 126 alleges a legal conclusion to which no response is required.

**127.** Congress designed the FDCPA to be enforced primarily through private parties, such as Plaintiff, acting as "private attorneys general." See S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance . . . ."); and Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the

FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

**Response:** Paragraph 127 alleges a legal conclusion to which no response is required.

**128.** The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the rental arrears were incurred for a residential apartment.

**Response:** Paragraph 128 alleges a legal conclusion to which no response is required.

**129.** Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt" as defined by 15 U.S.C. § 1692a(5).

**Response:** Paragraph 129 alleges a legal conclusion to which no response is required.

**130.** For the reasons set forth in the "Parties" section of this Complaint, the Attorney Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6).

**Response:** Paragraph 130 alleges a legal conclusion to which no response is required.

**131.** The Attorney Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation, Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; falsely representing or implying that a communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

**Response:** Paragraph 131 alleges a legal conclusion to which no response is required.

**132.** As a direct and proximate result of the Attorney Defendants' violations, Plaintiffs have suffered damages, including, inter alia, significant emotional distress, embarrassment, humiliation, increase of blood pressure, forgone wages because of missing work, and associated transportation costs.

**Response:** The Landlord Defendants deny the allegations of paragraph 132.

**133.** The injuries inflicted on Plaintiffs by the Attorney Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

**Response:** The Landlord Defendants deny the allegations of paragraph 133.

**134.** Plaintiffs suffered economic injuries that historically has provided a basis for lawsuits in American courts, including but not limited to foregone wages and costs of transportation.

**Response:** The Landlord Defendants deny the allegations of paragraph 134.

**135.** Plaintiffs' injuries are analogous to, inter alia, the following common law claims: wrongful litigation, negligence, invasion of privacy, intrusion upon seclusion, and abuse of process.

**Response:** Paragraph 135 alleges a legal conclusion to which no response is required.

**136.** The Attorney Defendants had a duty to exercise reasonable care in the collection of debts, including in ensuring that a debt is not linked to the wrong party.

**Response:** Paragraph 136 alleges a legal conclusion to which no response is required.

## <u>SECOND CLAIM</u>

### Violation of New York General Business Law § 349
### (Against All Defendants)

**137.** Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

**Response:** The Landlord Defendants repeat and reallege their responses to paragraphs 1 through 136 and to Non-Enumerated Allegations 1 through 10 as if fully set forth herein.

**138.** New York General Business Law § 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state." An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. L. § 349(h).

**Response:** Paragraph 138 alleges a legal conclusion to which no response is required.

**139.** As enumerated above, Defendants violated New York General Business Law § 349 by using deceptive acts and practices in the conduct of their businesses. These acts were done by Defendants systematically and, as such, have had a broad impact on consumers at large.

**Response:** The Landlord Defendants deny the allegations of paragraph 139.

**140.** Defendants committed the above-described acts willfully and/or knowingly.

**Response:** The Landlord Defendants deny the allegations of paragraph 140.

**141.** The Defendants' deceptive conduct towards Plaintiff is the type of conduct that has a broad impact on consumers at large.

**Response:** The Landlord Defendants deny the allegations of paragraph 141.

**142.** Defendants' violations were willful and knowing, or, at minimum, evidence a conscious and reckless disregard for basic fairness and for the law. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

**Response:** The Landlord Defendants deny the allegations of paragraph 142.

**143.** As a direct and proximate result of Defendants' violations, Plaintiff has suffered damages, including, inter alia, significant emotional distress, embarrassment, and humiliation.

**Response:** The Landlord Defendants deny the allegations of paragraph 143.

**144.** The injuries inflicted on Plaintiff by Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

**Response:** The Landlord Defendants deny the allegations of paragraph 144.

**145.** Plaintiff suffered economic injuries that historically have provided a basis for lawsuits in American courts, including but not limited to out of pocket expenses for forgone wages because of missing work, and associated transportation costs.

**Response:** The Landlord Defendants deny the allegations of paragraph 145.

**146.** Plaintiff's injuries are analogous to, inter alia, the following common law claims: wrongful litigation, negligence, invasion of privacy, intrusion upon seclusion, and abuse of process.

**Response:** The Landlord Defendants deny the allegations of paragraph 146.

**147.** Defendants had a duty to exercise reasonable care in the collection of debts, including in the selection of companies to attempt to collect the debt, in ensuring that a debt is not linked to the wrong party, and in furnishing agents with accurate information when those agents rely on and use that information in attempting to collect debts.

**Response:** Paragraph 147 alleges a legal conclusion to which no response is required.

**148.** Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

**Response:** The Landlord Defendants deny the allegations of paragraph 148.

**149.** As a direct and proximate result of those violations of N.Y. Gen. Bus. § 349, Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual and statutory damages, together with costs and attorney's fees.

**Response:** The Landlord Defendants deny the allegations of paragraph 149.

## THIRD CLAIM

### Violation of New York Judiciary Law § 487
### (Against Attorney Defendants)

**150.** Plaintiffs repeat and reallege each and every allegation set forth above as if reasserted and realleged herein.

**Response:** The Landlord Defendants repeat and reallege their responses to paragraphs 1 through 149 and to Non-Enumerated Allegations 1 through 10 as if fully set forth herein.

**151.** New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

**Response:** Paragraph 151 alleges a legal conclusion to which no response is required.

**152.** New York Judiciary Law § 487 is a traditional cause of action in American courts; it is "the modern-day counterpart of a statute dating from the first decades after Magna Carta; its language virtually (and remarkably) unchanged from that of a law adopted by New York's Legislature two years before the United States Constitution was ratified." Amalfitano v. Rosenberg, 12 N.Y.3d 8, 14 (2009).

**Response:** Paragraph 152 alleges a legal conclusion to which no response is required.

**153.** Plaintiffs are entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of New York Judiciary Law § 487, and Plaintiffs so seek.

**Response:** The Landlord Defendants deny the allegations of paragraph 153.

## FOURTH CLAIM

**Gross Negligence**
**(Against All Defendants)**

**154.** Plaintiffs repeat and reallege each and every allegation set forth above as if reasserted and realleged herein.

**Response:** The Landlord Defendants repeat and reallege their responses to paragraphs 1 through 153 and to Non-Enumerated Allegations 1 through 10 as if fully set forth herein.

**155.** Had Defendants exercised even slight diligence they would have known their conduct was unlawful.

**Response:** The Landlord Defendants deny the allegations of paragraph 155.

**156.** Defendants' failure to exercise even slight care or diligence amounts to gross negligence.

**Response:** Paragraph 156 alleges a legal conclusion to which no response is required.

**157.** Defendants' actions evince a reckless disregard for the rights of Plaintiff and others. The actions have the appearance of intentional wrongdoing. Defendants' conduct was part of a broader pattern of misconduct aimed at the public in general.

**Response:** The Landlord Defendants deny the allegations of paragraph 157.

**158.** Defendants' conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Plaintiff is entitled to a punitive damage award.

**Response:** The Landlord Defendants deny the allegations of paragraph 158.

**159.** Defendants owed Mr. and Mrs. Batista a duty pursuant to the FDCPA, which is designed to protect consumers in part by prohibiting debt collectors from using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; using false, deceptive or misleading representations or means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

**Response:** The Landlord Defendants deny the allegations of paragraph 159.

**160.** Creditors and debt collectors in general owe debtors a duty of reasonable care in collecting their debts. Hawkins-El v. First American Funding, LLC, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), aff'd 529 F. Appx. 45 (2d Cir. 2013).

**Response:** The Landlord Defendants deny the allegations of paragraph 160.

**161.** New York General Business Law § 349 also imposes on Defendants a duty to not engage in deceptive acts and unlawful practices in the conduct of their business.

**Response:** Paragraph 161 alleges a legal conclusion to which no response is required.

**162.** Defendants breached these duties.

**Response:** The Landlord Defendants deny the allegations of paragraph 162.

**163.** As a direct and proximate result of Defendants' breach of these duties, Mr. and Mrs. Batista suffered compensable harm, including actual damages and emotional distress.

**Response:** The Landlord Defendants deny the allegations of paragraph 163.

**164.** Defendants' conduct was so flagrant as to transcend mere carelessness and constitute willful negligence or recklessness. Upon information and belief, Defendants have engaged in a pattern and practice of similar behavior against other tenants. As a result, Mr. and Mrs. Batista are entitled to actual and punitive damages.

**Response:** The Landlord Defendants deny the allegations of paragraph 164.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(Lack of Standing)**

**165.** The Landlord Defendants repeat and reallege their responses to the Introductory Paragraph, Non-Enumerated Allegations 1 through 10, and paragraphs 1 through 165 of the Complaint as if fully set forth herein.

**166.** Plaintiffs have not suffered a concrete injury in fact sufficient to confer standing under Article III of the United States Constitution.

### SECOND AFFIRMATIVE DEFENSE
**(Statute of Limitations)**

**167.** The Landlord Defendants repeat and reallege their responses to the Introductory Paragraph, Non-Enumerated Allegations 1 through 10, and paragraphs 1 through 165 of the Complaint, and the allegations of paragraphs 166 through 167 of this Answer, as if fully set forth herein.

**168.** Plaintiffs' claims against the Landlord Defendants are barred, in whole or in part, under the applicable statutes of limitation.

**THIRD AFFIRMATIVE DEFENSE**
**(Waiver and Estoppel)**

**169.** The Landlord Defendants repeat and reallege their responses to the Introductory Paragraph, Non-Enumerated Allegations 1 through 10, and paragraphs 1 through 165 of the Complaint, and the allegations of paragraphs 166 through 169 of this Answer, as if fully set forth herein.

**170.** Plaintiffs' claims against the Landlord Defendants are barred, in whole or in part, under the doctrines of waiver and equitable estoppel.

**FOURTH AFFIRMATIVE DEFENSE**
**(Lack of Causation or Supervening Cause of Damages)**

**171.** The Landlord Defendants repeat and reallege their responses to the Introductory Paragraph, Non-Enumerated Allegations 1 through 10, and paragraphs 1 through 165 of the Complaint, and the allegations of paragraphs 166 through 171 of this Answer, as if fully set forth herein.

**172.** To the extent Plaintiffs have sustained damages as alleged in the Complaint, which the Landlord Defendants expressly deny, such damages were the result of Plaintiffs' own actions or inaction, or the result of intervening causes beyond the Landlord Defendants' control.

**FIFTH AFFIRMATIVE DEFENSE**
**(Conduct of Third Parties)**

**173.** The Landlord Defendants repeat and reallege their responses to the Introductory Paragraph, Non-Enumerated Allegations 1 through 10, and paragraphs 1 through 165 of the Complaint, and the allegations of paragraphs 166 through 173 of this Answer, as if fully set forth herein.

**174.** To the extent Plaintiffs have sustained damages as alleged in the Complaint, which the Landlord Defendants expressly deny, such damages were caused by third parties beyond the Landlord Defendants' control.

**175.** To the extent Plaintiffs have sustained damages as alleged in the Complaint, which the Landlord Defendants expressly deny, such damages were caused by the errors, negligence, omissions and mistakes of the New York City Housing Authority.

## DEMAND FOR JURY TRIAL

**176.** In accordance with Fed. R. Civ. P. 38(b), Mr. and Mrs. Batista demand a trial by jury on all issues so triable.

**Response:** Paragraph 176 is a demand for a jury trial to which no response is required.

## PRAYER FOR RELIEF

**Response:** The Prayer for Relief, including subparagraphs (a) through (k), does not contain allegations to which a response is required. The Landlord Defendants deny that Plaintiffs are entitled to any of the relief requested, or to any relief whatsoever, as against the Landlord Defendants.

WHEREFORE, the Landlord Defendants demand judgment dismissing the Complaint as against the Landlord Defendants with prejudice, together with costs and disbursements, and such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 13, 2026

Berry Law PLLC
/s/Eric W. Berry
By: ________________________
Eric W. Berry
*Attorneys for Defendants 1915 Realty LLC, Phelan Place Holdings LLC, DK & CK Management Corp., and David Kleiner*
745 Fifth Avenue, 5th Floor
New York, New York 10151
(212) 355-0777

TO: Ahmad Keshavarz, Esq.
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, New York 11241

Jaclyn Spencer, Esq.
Bronx Legal Services
369 E. 148th Street, 2nd Floor
Bronx, New York Y 10455

*Attorneys for Plaintiffs*